UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT JONES, Plaintiff | : | CIVIL ACTION NO. 2:18-CV-0503-JTM-JCW |
| | : | SECTION H(2) |
| v. | : | JUDGE JANE TRICHE MILAZZO |
| LEON CANNIZZARO, JR., and ABC INSURANCE COMPANIES 1-10, | : | MAGISTRATE JOSEPH C. WILKINSON, JR. |
| Defendants. | : | **JURY TRIAL DEMANDED** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT LEON CANNIZZARO, JR.**

Pursuant to Federal Rule of Civil Procedure 37, Plaintiff Robert Jones ("Mr. Jones") respectfully seeks an order compelling Defendant Leon Cannizzaro, Jr. to provide a full and complete response to the Requests for Production and Interrogatories identified below.

**BACKGROUND**

Mr. Jones was wrongfully convicted and imprisoned for over 23 years because the Orleans Parish District Attorney's office ("OPDA") withheld substantial favorable information from him that it was required to disclose under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. *See* Dkt. No. 1 ("Compl.") ¶¶ 1, 12. Specifically, in 1996, Mr. Jones was wrongfully convicted after trial of committing three robberies, a kidnapping, and a rape on April 6, 1992 in the French Quarter ("April 6 Crimes"). *Id*. ¶¶ 19, 40. OPDA then leveraged these wrongful convictions to extract a false guilty plea from him to two robberies and a murder that were also committed in the French Quarter, on April 14, 1992 ("April 14 Crimes"), as well as to the robbery of Curtis Boutte, who later signed an affidavit stating that he did not believe Mr. Jones had committed the robbery and that he had identified someone other than Mr. Jones as the perpetrator. *Id*. ¶¶ 20, 103–04; Ex. A

to Decl. of Erin Monju (Aff. of Curtis Boutte, dated Nov. 17, 2015). Only after Mr. Jones had spent over 20 years in prison, submitted numerous public records requests to OPDA and the New Orleans Police Department ("NOPD"), and filed several petitions for post-conviction relief, did the injustice that had been perpetrated against him become clear. Compl. ¶¶ 63–70.

Based on his assiduous efforts, Mr. Jones learned that OPDA had failed to disclose evidence that another man—*Lester* Jones (no relation to Mr. Jones)—had committed the April 6 and April 14 Crimes as part of a crime spree that took place in the French Quarter in April 1992. *Id*. He learned that *all* of the physical evidence from the crime spree was found with *Lester* Jones (not Mr. Jones). *Id*. ¶ 64. He learned that victims of the crime spree—including victims of the April 6 and April 14 Crimes—described a single perpetrator that looked like *Lester* Jones (not Mr. Jones). *Id*. He learned that the victims described a car used in *all* of the crimes that matched *Lester* Jones's car (not Mr. Jones's car). *Id*. And he learned that police officers investigating the crime spree had determined that *Lester* Jones (not Mr. Jones) was the sole perpetrator—a conclusion one officer shared with OPDA prior to Mr. Jones's trial. *Id*. ¶ 67.

Moreover, Mr. Jones learned that OPDA *knew* its case against him was deeply flawed. To explain to the jury how the car used in the April 6 Crimes and the physical evidence from those crimes were found with *Lester* Jones, and not Mr. Jones, OPDA argued to the jury that Lester Jones and Mr. Jones were "friends" and that Lester Jones had lent Mr. Jones his car in exchange for proceeds from the crimes. *Id*. ¶¶ 35–38. OPDA's sole basis for that theory was Lester Jones's post-arrest statement, made in custody and under duress, that Mr. Jones was involved in the April 14 Crimes. *Id*. ¶ 84. However, setting aside blatant inaccuracies in the statement itself (such as Lester Jones referring to Mr. Jones as "Larry," a name he has never used), OPDA was well aware that Lester Jones's statement was not reliable. *Id*. ¶¶ 78–91. A police officer investigating the

crime spree informed OPDA prior to Mr. Jones's trial that there was no credible evidence that Lester Jones and Robert Jones knew each other. *Id*. ¶ 78. In addition, Lester Jones himself *recanted* the statement to Fred Menner, the assistant district attorney prosecuting Mr. Jones, also prior to Mr. Jones's trial. *Id*. ¶¶ 87, 99. Mr. Menner documented that fact in a memorandum (the "Menner Memo") that made clear that OPDA had (1) no support for the theory that Lester Jones and Mr. Jones knew each other, let alone associated with each other in connection with the April 6 Crimes, and (2) no evidence whatsoever to prosecute Mr. Jones for the April 14 Crimes. *Id.* ¶¶ 87–88. OPDA concealed this memorandum for nearly 20 years—failing to disclose it until September 23, 2015—all while falsely stating in filings opposing Mr. Jones's petitions for post-conviction relief that Lester Jones (who recanted his statement under oath in 2007) was not credible because he had only recanted his statement a decade after Mr. Jones' trial. *Id*. ¶¶ 49(b), 84–85.

Based on much of the foregoing evidence, on October 8, 2014, the Louisiana Fourth Circuit Court of Appeal vacated Mr. Jones's convictions for the April 6 Crimes, citing OPDA's violation of Mr. Jones's *Brady* rights. *Id*. ¶¶ 69–70. Despite this ruling, OPDA continued to prosecute Mr. Jones for the April 6 Crimes. *Id*. ¶ 7. As a result, Mr. Jones was not released from prison until shortly after the disclosure of the Menner Memo, on November 20, 2015. *Id*. ¶¶ 92–93. Finally, on January 26, 2017, the day Mr. Cannizzaro was scheduled to testify in a hearing concerning Mr. Jones's motion to dismiss the charges against him, OPDA agreed to the vacatur of his remaining convictions and the dismissal of all charges against him. *Id*. ¶ 95. By that time, Mr. Jones had been subjected to wrongful prosecution by OPDA for nearly 25 years. *Id*. ¶¶ 93–94.

Mr. Jones filed the instant suit on January 16, 2018, naming Mr. Cannizzaro as a defendant in his official capacity, as the District Attorney for OPDA. *Id*. ¶ 17. Mr. Jones seeks damages under 42 U.S.C. § 1983 for the injuries he suffered as a result of OPDA's violation of his *Brady*

rights, injuries he alleges were a "direct and proximate result of OPDA's longstanding policy or custom of violating" defendants' *Brady* rights—the standard required for establishing municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *Id.* ¶ 8.

The district court denied Mr. Cannizzaro's motion to dismiss Mr. Jones's complaint on prescription grounds on June 6, 2018, and denied Mr. Cannizzaro's motion to reconsider and motion for interlocutory appeal on August 29, 2018. *See* Dkt. Nos. 30, 51. Mr. Jones, by his counsel, served his discovery requests on Mr. Cannizzaro on August 16, 2018. *See* Monju Decl. at ¶¶ 6–7. Following two requests for extensions, to which Mr. Jones consented, Mr. Cannizzaro provided his written answers and objections to Mr. Jones on October 5, 2018 and produced documents to Mr. Jones on October 11, 2018. *Id.* at ¶¶ 8–9. Mr. Jones, by his counsel, responded in writing to Mr. Cannizzaro's objections on October 10, 2018, and Mr. Cannizzaro responded in writing on October 15, 2018. *Id.* at ¶¶ 12–13. The parties spoke telephonically regarding Mr. Cannizzaro's outstanding objections on October 15, 2018. *Id.* at ¶ 13. Based on the parties' resolution of several objections during that call, Mr. Cannizzaro submitted additional written answers to Mr. Jones's discovery requests on October 22, 2018. *Id.* at ¶ 15. Despite these efforts, the parties did not reach agreement as to several of Mr. Cannizzaro's objections. *Id.* at ¶ 16.

For the reasons set forth below, Mr. Jones respectfully submits that Mr. Cannizzaro should be compelled to respond to the Requests for Production and Interrogatories specified below.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26 authorizes "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This standard is "to be accorded broad and liberal treatment to effect [the] purpose of adequately informing the litigants in civil trials." *Fairley v. Wal-Mart Stores*,

*Inc.*, No. CV 15-462, 2016 WL 9582711, at *4 (E.D. La. Oct. 26, 2016) (quoting *Herbert v. Lando*, 441 U.S. 153, 177 (1979)). Thus, while "[r]elevance focuses on the claims and defenses in the case, not its general subject matter," *e.g.*, *Sines v. Kessler*, 325 F.R.D. 563, 566 (E.D. La. 2018), relevance is "to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense," *see, e.g.*, *Dotson v. Edmonson*, No. CV 16-15371, 2017 WL 4619739, at *3 (E.D. La. Oct. 16, 2017) (internal quotation marks removed); *Greater New Orleans Fair Hous. Action Ctr., Inc. v. Dorian Apartments, LLC*, No. CV 15-6406, 2016 WL 6157534, at *10 (E.D. La. Oct. 24, 2016) (same). In addition, "[w]hen the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance." *Fairley*, 2016 WL 9582711, at *4 (internal quotation marks removed). Finally, proportionality turns on "various factors, including the importance of the issues at stake, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issue, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Sines*, 325 F.R.D. at 566.

Pursuant to Federal Rule of Civil Procedure 37, courts may, in accordance with these standards, compel responses to discovery requests if a party fails to respond. *See* Fed. R. Civ. P. 37(a)(3)(B). Under Rule 37, "evasive or incomplete" disclosures, answers, or responses "must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

In addition, because analysis of Mr. Jones's discovery requests will turn on their relevance and proportionality to the needs of his claim, the legal standard underlying his claim is relevant to this motion. To establish municipal liability under *Monell*, Mr. Jones must offer evidence proving that (1) OPDA had an unconstitutional policy, practice, or custom of withholding *Brady* information; (2) OPDA was deliberately indifferent to the risk its policy, practice, or custom posed

to defendants' rights; and (3) OPDA's policy, practice, or custom resulted in Mr. Jones's injuries. *See, e.g.*, *Alvarez v. City of Brownsville*, 904 F.3d 382, 389–90 (5th Cir. 2018) (en banc). Mr. Jones may meet this standard in several ways.

For example, Mr. Jones may prove that OPDA had an unconstitutional written *Brady* policy. *See, e.g.*, *id*. (citing *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009)). As an alternative, he may prove that OPDA had an unconstitutional practice or custom of withholding *Brady* information, based on, *inter alia*, proof of a pattern of *Brady* violations at OPDA. *See, e.g.*, *id*. (citing *James*, 577 F.3d at 617); *see also Mitchell v. City of New Orleans*, 184 F. Supp. 3d 360, 371 (E.D. La. 2016) (noting plaintiffs may satisfy *Monell* by "prov[ing] other similar incidents" resulting from an unconstitutional practice). Mr. Jones may also rely on proof of a pattern of *Brady* violations to establish that OPDA was on notice of its unconstitutional policy, practice, or custom, and that OPDA was deliberately indifferent to defendants' rights, based on its failure to correct that unconstitutional policy, practice, or custom. *See, e.g.*, *Mitchell*, 184 F. Supp. 3d at 373 ("A pattern of [violations] can evidence not only the existence of a policy but also deliberate indifference."). In addition, Mr. Jones may show that OPDA failed to adequately train, supervise, or discipline its employees regarding *Brady*, to prove the existence of an unconstitutional policy, practice, or custom and to prove OPDA's deliberate indifference to defendants' rights. *See, e.g.*, *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Finally, Mr. Jones may rely on information specific to his case to prove a "direct causal link between [OPDA's] policy or custom and the alleged constitutional deprivation." *See, e.g.*, *Aly v. City of Lake Jackson*, 605 F. App'x 260, 262 (5th Cir. 2015) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). For example, Mr. Jones may show that OPDA personnel involved in his case were not trained, or were given faulty direction, as to their *Brady* obligations.

Mr. Jones may also rely on information regarding his wrongful convictions and years of imprisonment, and the impact of OPDA's conduct on him, to support his damages claim.

**ARGUMENT**

First, Mr. Cannizzaro objects that he should not be required to produce information post-dating Mr. Jones's 1996 convictions, because that information is irrelevant to Mr. Jones's claims. Second, Mr. Cannizzaro objects that several of Mr. Jones's discovery requests are disproportionate to the needs of his claim, because they are "not reasonably limited in time." Finally, Mr. Cannizzaro has declined to verify his interrogatory responses, or to have a representative from OPDA do so. For the reasons set forth below, Mr. Cannizzaro's objections should be rejected, and he should be compelled to fully and promptly respond to Mr. Jones's discovery requests.

## I. Mr. Cannizzaro Must Be Compelled to Produce Information Post-Dating Mr. Jones's 1996 Convictions (*Interrogatory Nos. 1–3, 11–13, 15, and 17; Request for Production Nos. 3, 7, 11, 13, 17–27, and 30–33*)[1]

Mr. Cannizzaro asserts in response to several of Mr. Jones's discovery requests that information specific to Mr. Jones's criminal case is irrelevant if that information post-dates Mr. Jones's 1996 convictions because "the *Brady* obligation to disclose favorable evidence does not extend beyond the time of a defendant's conviction." *See* Ex. G to Monju Decl. (Responses to Request for Production Nos. 3, 7, 11, 13, 17–27, and 30–33); Ex. H to Monju Decl. (Responses to

[1] Mr. Cannizzaro raised similar objections to Interrogatory Nos. 5, 6 and 14, and Request for Production Nos. 4, 8, 15, 16, and 28. Because Mr. Cannizzaro's counsel has represented that OPDA is not aware of information responsive to Interrogatory No. 6 prior to 2014, it would be too burdensome to compile a response to Interrogatory No. 14, and there are no non-privileged documents responsive to Interrogatory No. 5 or Request for Production Nos. 4, 8, 15, 16, and 28, we have not moved to compel production of this information. *See* Ex. H to Monju Decl. (Response to Interrogatory No. 14); Ex. G to Monju Decl. (Response to Request for Production No. 16); Ex. J to Monju Decl. (Letter from Matthew Paul, Oct. 15, 2018) at "Point 8"; Ex. K to Monju Decl. (Email from Matthew Paul, Oct. 17, 2018) at "point 2" and "point 3." We also do not seek to compel production of privileged documents responsive to Request for Production Nos. 3, 7, and 11.

Interrogatory Nos. 1–3, 11–13, 15, and 17). Mr. Cannizzaro's objection misstates the standard for relevance with respect to discoverable information; contradicts even his own view of OPDA's *Brady* obligation; and overlooks the numerous ways in which Mr. Jones's requests for information post-dating his convictions are relevant to supporting his claim. The objections must therefore be rejected.

First, Mr. Cannizzaro's objection appears to confuse the standard for when *Brady* material must be disclosed in a criminal case with the standard for what information may be discoverable in a civil lawsuit alleging a *Brady* violation. Specifically, while *Brady* material must be disclosed in a criminal case prior to a defendant's conviction (indeed, prior to trial), information sought in a civil lawsuit based on a *Brady* violation need only "bear[] on, or . . . could lead to other matter that could bear on" the claim to be discoverable—regardless of its relation in time to the plaintiff's conviction. *See, e.g., Dotson*, 2017 WL 4619739, at *3. Thus, information that may show, *inter alia*, (1) what *Brady* material was withheld from Mr. Jones; (2) why it was withheld; (3) by whom; (4) whether OPDA had a policy, practice, or custom of withholding such material; (5) whether OPDA demonstrated deliberate indifference to the risk its policy, practice, or custom posed to defendants' rights; and (6) what causal link existed between OPDA's policy, practice, or custom, the *Brady* violations in Mr. Jones's case, and Mr. Jones's injuries, would all be relevant to Mr. Jones's claim, regardless of whether that information post-dated Mr. Jones's convictions.

Second, Mr. Cannizzaro's objection runs directly counter to Mr. Cannizzaro's sworn account of what disclosures are required by *Brady*. Mr. Cannizzaro's objection would mean that OPDA's conduct following Mr. Jones's convictions is entirely irrelevant to Mr. Jones's claim, including OPDA's failure to disclose the Menner Memo until 2015—a bombshell development in Mr. Jones's criminal case. But Mr. Cannizzaro has testified that *Brady* does require such

disclosures. Specifically, Mr. Cannizzaro testified that the obligation to disclose *Brady* material "absolutely" continues after trial, because if a prosecutor "learn[s] about exculpatory information after the trial, there is still a responsibility to turn that over because it could assist the defendant in motions for a new trial or postconviction applications." *See* Ex. B to Monju Decl. (Dep. of Leon Cannizzaro at 109:9-19, Feb. 17, 2017). Moreover, Mr. Cannizzaro has publically stated that OPDA was "tardy" in revealing the Menner Memo and "should have revealed it earlier at the post-conviction (process) we were involved in." *See* Ex. C to Monju Decl. (John Simerman, *Newly Revealed Memo Shows Orleans Parish DA's Office Can't Handle 1992 French Quarter Kidnapping and Rape Case*, *Defense Argues*, NEW ORLEANS ADVOCATE, Oct. 5, 2015); Compl. ¶ 91. At a minimum, Mr. Cannizzaro has admitted that OPDA's obligation to disclose *Brady* material, such as the Menner Memo, to Mr. Jones was not extinguished upon his convictions. Therefore, Mr. Cannizzaro should not be permitted to take a conflicting position here, to shield his office from discovery.

Finally, as specified below, Mr. Cannizzaro's objection ignores the numerous ways in which the specific requests for post-conviction information are relevant to Mr. Jones's claim:

*Interrogatory Nos. 1 and 3; Request for Production Nos. 3 and 7*

Mr. Cannizzaro asserts that the names of OPDA personnel who worked on or played a role in Mr. Jones's criminal case following his convictions, as well as their roles and the dates of their involvement, are irrelevant to Mr. Jones's claim. *See* Ex. H to Monju Decl. (Responses to Interrogatory Nos. 1 and 3). Mr. Cannizzaro's objection strains belief. Plainly, such OPDA personnel may have knowledge of, *inter alia*, when and how OPDA became aware of *Brady* material in Mr. Jones's case; why *Brady* material was not turned over prior to Mr. Jones's trial; and who at OPDA was aware of the existence of undisclosed *Brady* material in Mr. Jones's case

and when. Such information could lead to the discovery of evidence that OPDA failed to obtain information relevant to Mr. Jones's case from NOPD prior to Mr. Jones's trial—a finding that would be highly relevant given the United States Supreme Court's decision just one year prior to Mr. Jones's trial—in a case involving OPDA's failure to disclose *Brady* material—that prosecutors are responsible for obtaining and disclosing such information. *See Kyles v. Whitley*, 514 U.S. 419 (1995). It could also lead to the discovery of evidence that *Brady* material in Mr. Jones's case was not disclosed to him based on a policy, practice, or custom at OPDA of not disclosing *Brady* material without being ordered to do so by a court, in contravention of *Brady* and its progeny. And it may lead to the discovery of evidence that OPDA personnel were aware of the *Brady* material in Mr. Jones's case, but did not disclose it due to OPDA's deliberate indifference to defendants' constitutional rights.

Mr. Cannizzaro also asserts that all documents related to Mr. Jones's post-conviction proceedings are irrelevant to his claim. *See* Ex. G to Monju Decl. (Responses to Request for Production Nos. 3 and 7). To the contrary: such information is plainly relevant for the same reasons stated above: it may show when and how OPDA became aware of *Brady* material in Mr. Jones's case; why the *Brady* material was not timely disclosed; who at OPDA was aware of the material; and when they became aware of the material.

The Menner Memo is just one example of why the foregoing information is highly relevant to Mr. Jones's claim: The Menner Memo was prepared *after* Mr. Jones's conviction, but contained information that was plainly relevant to *Brady* violations committed *prior to* and *during* Mr. Jones's trial. In addition, the memorandum was available to OPDA personnel during the course of Mr. Jones's post-conviction proceedings—when OPDA filed brief after brief falsely denying the existence of the information in the memorandum—and was purportedly discovered in the

course of Mr. Jones's post-conviction proceedings. As such, documents relevant to the Menner Memo (which may post-date Mr. Jones's convictions) and individuals with knowledge of the Menner Memo (which knowledge may also post-date Mr. Jones's convictions) may include or lead to relevant evidence of *who* knew about the memorandum, *when*, and *why* it was not disclosed. Such information would be relevant not only to why Mr. Jones was wrongfully convicted in the first place, but also to why he remained in prison for nearly 20 years while the memorandum went undisclosed.

Therefore, (1) the identities of OPDA personnel involved in or with knowledge of Mr. Jones's case following his convictions, (2) their roles in his case, (3) the dates of their involvement in his case, (4) the identities of OPDA personnel aware of the Menner Memo, (5) how and when those individuals became aware of the Menner Memo, and (6) documents related to the post-conviction proceedings in Mr. Jones's case all plainly "bear on, or could lead to other matter that could bear on" Mr. Jones's claim, and Mr. Cannizzaro should be compelled to produce it.

*Interrogatory No. 2; Request for Production No. 11*

Similarly, Mr. Cannizzaro asserts that information regarding OPDA's prosecution of *Lester* Jones that post-dates Mr. Jones's convictions is irrelevant. *See* Ex. G to Monju Decl. (Response to Request for Production No. 11); Ex. H to Monju Decl. (Response to Interrogatory No. 2). But that objection ignores the close nexus between Lester Jones's and Mr. Jones's cases. Mr. Jones and Lester Jones were investigated, arrested, and convicted for committing crimes in the same crime spree. Notably, Mr. Jones discovered *Brady* material in Lester Jones's files held by other government agencies that was never disclosed to him by OPDA. In addition, OPDA has made conflicting statements in filings in both Lester Jones's and Mr. Jones's cases concerning the men's culpability in these crimes. As such, information concerning OPDA's handling of Lester

Jones's case is clearly relevant to Mr. Jones's claim for the same reasons as stated above—proving the who, what, when, and why of the *Brady* violations in Mr. Jones's case. The information may also be relevant to showing, *inter alia*, that OPDA had no procedure for assuring that *Brady* information in one case was shared with defendants in other related cases. It may show that OPDA was acting to conceal its *Brady* violations in Mr. Jones's case by making misleading statements in both Lester Jones's and Mr. Jones's cases, with deliberate indifference to Mr. Jones's constitutional rights. And, if the history of Mr. Jones's criminal case is any guide, it may well lead to the discovery of *Brady* material that OPDA has not yet disclosed to Mr. Jones. As such, the requested information is plainly relevant to Mr. Jones's claim and Mr. Cannizzaro should be compelled to produce it.

*Request for Production No. 13*

Mr. Cannizzaro asserts that documents concerning OPDA's receipt of and response to public record requests concerning Mr. Jones's case are irrelevant to the extent they post-dated his convictions. *See* Ex. G to Monju Decl. (Response to Request for Production No. 13). Again, Mr. Cannizzaro is mistaken. Such requests and responses are relevant given that they may support, *inter alia*, that OPDA failed to reveal *Brady* material to Mr. Jones or falsely informed him that no favorable material existed. The information may also support that OPDA had no reliable system for filing or locating information in its cases, or that OPDA's records custodian denied requests for favorable information on privilege grounds, even if the files contained *Brady* material. As such, Mr. Cannizzaro should be compelled to produce this information as well.

*Interrogatory Nos. 11–13, 15, and 17; Request for Production Nos. 17–27 and 30–33*

Finally, Mr. Cannizzaro asserts that information concerning OPDA's *Brady* policy, practice, or custom is irrelevant to the extent the information post-dates Mr. Jones's convictions.

*See* Ex. G to Monju Decl. (Responses to Request for Production Nos. 17–27, 30–33); Ex. H to Monju Decl. (Responses to Interrogatory Nos. 11–13, 15, 17). This objection must also be rejected.

First, OPDA's *Brady* policy, practice, or custom in the years following Mr. Jones's convictions is relevant to Mr. Jones's claim because OPDA *continued to violate his* Brady *rights through at least September 2015*. Pursuant to Mr. Cannizzaro's own understanding of *Brady*, OPDA was required—but failed—to produce all *Brady* material in its possession to Mr. Jones through at least that date. Indeed, during the pendency of Mr. Jones's lengthy post-conviction proceedings, OPDA never disputed in its filings that it was obligated to turn over any previously undisclosed *Brady* material; instead, OPDA falsely denied that such material existed. As such, OPDA's *Brady* policy, practice, or custom is relevant to showing why OPDA did not reveal the Menner Memo (or the information contained in it) until September 2015, leaving Mr. Jones to languish for over 23 years in prison.

Second, OPDA's *Brady* policy, practice, or custom in the years following Mr. Jones's convictions is also relevant to proving the elements of Mr. Jones's claim under *Monell*. It is widely recognized that information post-dating an alleged constitutional violation may be relevant to proving a policy, practice, or custom, and deliberate indifference under *Monell*.[2] Indeed, multiple

[2] *See, e.g.*, *Groark v. Timek*, 989 F. Supp. 2d 378, 398 (D.N.J. 2013) ("Subsequent incidents . . . may be relevant to show a continuous pattern that supports a finding of an accepted custom or policy."); *Starks v. City of Waukegan*, No. 09 C 348, 2013 WL 5874563, at *2 (N.D. Ill. Oct. 31, 2013) ("[A] *Monell* claim may rest on alleged constitutional violations that occur after misconduct at issue in that case."); *Lewis v. E. Baton Rouge Par.*, No. CV 16-352 (JWD) (RLB), 2018 WL 3862044, at *4 (M.D. La. Aug. 13, 2018) ("[D]ocuments [concerning post-violation events] may identify relevant individuals and clarification on what policies and practices existed at the time of [the violation]."); *Chepilko v. City of New York*, No. 06-CV-5491, 2012 WL 398700, *15 (E.D.N.Y. Feb. 6, 2012) ("Subsequent or contemporaneous conduct can be circumstantial evidence of the existence of preceding municipal policy or custom."); *Henry v. Cty. of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997), *opinion amended on denial of reh'g*, 137 F.3d 1372 (9th Cir. 1998) ("[P]ost-

defendants in this district have been compelled to produce information concerning *Brady* policies, practices, and customs that post-dated a plaintiff's conviction, on the ground that such information was relevant to the plaintiff's claim. *See Adams v. City of New Orleans*, No. 15 Civ. 1543, 2017 WL 713853, at *3 (E.D. La. Feb. 23, 2017); *Williams v. Connick*, Civ. A. No. 12-1274, 2014 WL 1246771, at *6 (E.D. La. Mar. 25, 2014). As such, discovery in this case cannot be "limited to acts that occurred only before the incident in question." *Williams*, 2014 WL 1246771, at *6.

Thus, Mr. Cannizzaro's objection to disclosing post-conviction information regarding OPDA's *Brady* policy, practice, or custom (*Interrogatory Nos. 11, 13, and 17; Request for Production Nos. 18, 19, 20, and 21*); *Brady* training at OPDA (*Interrogatory No. 12; Request for Production No. 23*); discipline for *Brady* violations at OPDA (*Interrogatory No. 15*); OPDA District Attorneys' understanding of *Brady* (*Request for Production No. 17*); reports or lawsuits regarding OPDA's *Brady* policies, practices, and customs (*Request for Production Nos. 22 and 30*); instances in which OPDA, a court, or a disciplinary body determined that OPDA had violated *Brady* (*Request for Production Nos. 24, 25, 26, and 27*); and other documents concerning OPDA's compliance with *Brady* (*Request for Production Nos. 31, 32, and 33*) should be rejected, and he should be compelled to respond to each of these requests fully and promptly.

---

event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but is highly probative with respect to that inquiry."); *id.*, 137 F.3d 1372 (noting, with respect to post-event evidence, that when a municipal defendant "continues to turn a blind eye" to violations—"despite having received notice of such violations—a rational fact finder may properly infer the existence of a previous policy or custom of deliberate indifference"); *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (finding post-incident conduct may be relevant when considering "whether the City and policymakers had a pattern of tacitly approving" unconstitutional practices); *Bordanaro v. McLeod*, 871 F.2d 1151, 1167 (1st Cir. 1989) ("Post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right."); *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 171 (5th Cir. 1985) (holding that post-violation conduct can support a finding of deliberate indifference in a *Monell* suit).

## II. Mr. Jones's Discovery Requests Are Proportional to the Needs of His Case (*Request for Production Nos. 17, 24, 25, 26, 27, 31, 32, and 33*)

Mr. Cannizzaro objects that Mr. Jones's requests for statements by Mr. Cannizzaro and his predecessors reflecting their understanding of *Brady* and its progeny (*Request for Production No. 17*); documents discussing each instance where OPDA, a court, a tribunal, or Louisiana attorney disciplinary body determined OPDA had violated *Brady* (*Request for Production Nos. 24, 25, and 26*); documents discussing remedial steps OPDA took in light of these violations (*Request for Production No. 27*); and documents discussing OPDA's compliance with *Brady*, and its supervision and discipline of OPDA personnel regarding their compliance with *Brady* (*Request for Production Nos. 31, 32, and 33*) are disproportionate to the needs of Mr. Jones's claim, because the requests are "not reasonably limited in time." *See* Ex. G to Monju Decl. (Responses to Request for Production Nos. 17, 24, 25, 26, and 27). Mr. Cannizzaro's objection should be rejected, for several reasons.

First, the sole basis OPDA cited to object to the proportionality of Mr. Jones's requests is that the requests are "not reasonably limited in time." However, OPDA has not identified why the scope of Mr. Jones's request is disproportionate, given that the requests are necessarily limited by the publication of *Brady* itself, and that OPDA's understanding of *Brady*, its violations of *Brady*, and its supervision and discipline of OPDA personnel regarding *Brady* are all relevant to Mr. Jones's claim and proportionate to his need to prove that OPDA had a policy, practice, or custom of withholding *Brady* information that resulted in the *Brady* violations in his case.

To the extent OPDA is objecting based on the age of the requested information, that objection should be rejected. "[T]he age of [incidents supporting the allegation of a policy, practice, or custom] does not render the records less likely to lead to relevant or admissible evidence." *See Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (concerning

allegations of pattern of police misconduct). That is because older incidents may be relevant "to establish a pattern or knowledge, and should not be barred from discovery based solely on their age." *Id.* (rejecting time limit on discovery); *see also, e.g.*, *Groark*, 989 F. Supp. 2d at 398–99 (rejecting time limit on discovery that could show notice and "how entrenched and longstanding" a custom was); *Frails v. City of New York*, 236 F.R.D. 116, 118 (E.D.N.Y. 2006) (rejecting ten-year limit on discovery relevant to *Monell* claim). Here, a time limit would be particularly inappropriate given the striking pattern of *Brady* violations at OPDA relevant to Mr. Jones's claim: Mr. Jones asserts in his complaint that OPDA acknowledged or a court found that OPDA had committed at least 34 *Brady* violations prior to Mr. Jones's convictions and 11 *Brady* violations following his convictions. Compl. ¶¶ 120–23. Because Mr. Jones may rely on this pattern of violations to prove that OPDA had a long-standing policy, practice, or custom of withholding *Brady* information, and that OPDA was deliberately indifferent to the risk its policy, practice, or custom posed to defendants' rights, discovery on these issues in the years before and after Mr. Jones's convictions will be crucial. *See, e.g.*, *Bradley v. City of New York*, No. 04 Civ. 8411 (RWS) (MHD), 2005 WL 2508253, at *2–3 (S.D.N.Y. Oct. 3, 2005) (finding that "striking pattern" of complaints of violations over twenty-year period was "very relevant" to *Monell* claim and compelling production of related information); *see also, e.g.*, *Nunez v. City of New York*, No. 11 Civ. 5845 (LTS) (JCF), 2013 WL 2149869, at *4 (S.D.N.Y. May 17, 2013) (rejecting time limit on discovery of information because the "plaintiff is required to prove a pattern or practice").

In addition, any objection by Mr. Cannizzaro based on the age of the requested information is suspect, given that OPDA has voluntarily produced documents from former OPDA District Attorney Harry Connick's tenure, which spanned nearly 30 years of the time since *Brady* was published, from 1974 through 2003. *See* Ex. G to Monju Decl. (Responses to Request for

Production Nos. 18, 19, 20, 21, 22, 23, and 30). Similarly, any objections based on volume would be suspect given that Mr. Cannizzaro's production—which consisted of only 640 documents purportedly spanning this 30-year period and several decades-long criminal cases—was remarkably small relative to complex cases of this nature, and the review and production of additional documents from a shorter time period will not impose an undue burden. *See Williams*, 2014 WL 1246771, at *2 (noting that the Jefferson Parish District Attorney's office produced "approximately 100,000 documents" in the course of a suit alleging *Brady* violations). However, to the extent it would address Mr. Cannizzaro's objection, Mr. Jones would be willing to limit his requests to documents from or post-dating Mr. Connick's tenure as District Attorney.

Finally, these discovery requests are proportional to the needs of Mr. Jones's case under the standard set forth in Federal Rule of Civil Procedure 26(b)(1): The importance of the issue at stake in the action is substantial—Mr. Jones seeks to remedy 25 years of injuries he suffered as a result of OPDA's unconstitutional policy, practice, or custom of withholding *Brady* material from defendants, a policy Mr. Jones alleges has similarly impacted at least dozens of individuals across New Orleans. *See* Fed. R. Civ. P. 26(b)(1). The amount in controversy is also substantial; Mr. Jones seeks damages to remedy his injuries suffered during decades of wrongful prosecution and imprisonment. *Id*. OPDA has sole access to relevant information, to the extent OPDA has not released the information to Mr. Jones or the public. *Id*. Mr. Jones's personal resources are minimal—he has received no compensation for his wrongful imprisonment. *Id*.; *see also* Monju Decl. at ¶ 17. The discovery, for the reasons set forth above, may be crucial to resolving Mr. Jones's claim, given his burden to prove an unconstitutional policy, practice, or custom at OPDA. *See* Fed. R. Civ. P. 26(b)(1). And Mr. Cannizzaro has not asserted that responding to these requests

would be unduly burdensome. As such, Mr. Cannizzaro's objection to the scope of Mr. Jones's discovery requests must be rejected.

## III. Mr. Cannizzaro or a Representative from OPDA Must Be Compelled to Verify the Interrogatory Answers

Pursuant to Federal Rule of Civil Procedure 33, "[t]he person who makes the answers" to interrogatories "must sign them, and the attorney who objects must sign any objections." Fed. R. Civ. P. 33(b)(5). As such, "[c]ourts in the Fifth Circuit have determined that a Rule 33(b) verification is required of the corporate entities, signed under oath by an authorized representative of the corporate entity and not by its counsel." *See Laborde v. SGS N. Am., Inc.*, No. CIV.A. 11-544-JJB, 2012 WL 5304534, at *2 (M.D. La. Oct. 25, 2012); *see also, e.g.*, *Wallace v. Chevron U.S.A., Inc.*, No. CV 09-4202, 2010 WL 11549578, at *1 (E.D. La. Dec. 1, 2010); *Singleton v. RPM Pizza, Inc.*, No. CIV.A. 03-2219, 2004 WL 169802, at *2 (E.D. La. Jan. 26, 2004); *Maloney v. Universalcom, Inc.*, No. Civ. A. 00-529, 2001 WL 8589, at *2 (E.D. La. Jan. 3, 2001); *Newpark Environ. Ser. v. Admiral Ins. Co.*, No. CIV.A.99-331 E, 2000 WL 136006, at *6 (E.D. La. Feb. 3, 2000); *Entergy Louisiana, Inc. v. Nat'l Union Fire Ins. Co.*, No. CIV. A. 98-219, 1999 WL 239511, at *2 (E.D. La. Apr. 21, 1999). That includes a case in which the City of New Orleans was required to verify its own interrogatory answers. *See Complete Prop. Res., L.L.C. v. City of New Orleans*, No. CIV.A. 04-3267 (JCW), 2006 WL 118722, at *3 (E.D. La. Jan. 13, 2006).

Despite this precedent, Mr. Cannizzaro has declined to verify his answers, or to have a representative from OPDA verify the answers. *See* Ex. J to Monju Decl. (Email from Matthew Paul, dated Oct. 15, 2018). Mr. Cannizzaro or another representative from OPDA should be compelled to do so.

**CONCLUSION**

For the reasons stated above, Plaintiff Robert Jones's Motion to Compel Discovery from Defendant Leon Cannizzaro, Jr., should be granted.

Respectfully submitted,

*/s/ Erin Monju*

Alan Vinegrad* (T.A.) (N.Y. 1967140)
Erin Monju* (N.Y. 5160908)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, N.Y. 10018
Phone: (212) 841-1000
Email: avinegrad@cov.com,
emonju@cov.com

with

Mark A. Cunningham (La 24063)
JONES WALKER LLP
201 St. Charles Avenue, Ste. 5100
New Orleans, LA 70170
Phone: (504) 582-8536
Email: mcunningham@joneswalker.com

and

Nina Morrison* (N.Y. 3048691)
INNOCENCE PROJECT
40 Worth Street
Suite 701
New York, N.Y. 10013
Phone: (212) 364-5340
Email: nmorrison@innocenceproject.org

**Admitted pro hac vice*

*Attorneys for Plaintiff Robert Jones*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing document has been served upon all counsel of record by using the CM/ECF system, this 30th day of October, 2018.

*/s/ Erin Monju*