UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT JONES,<br><br>    *Plaintiff*,<br><br>v.<br><br>LEON CANNIZZARO, JR., in his official capacity; ABC INSURANCE COMPANIES 1–10,<br><br>    *Defendants*. | Civil Action No. 18-503<br><br>Section H<br>Judge Jane Triche Milazzo<br><br>Division 2<br>Magistrate Judge Joseph Wilkinson, Jr. |

**<u>MEMORANDUM IN SUPPORT OF MOTION TO COMPEL MENTAL EXAMINATION</u>**

Leon Cannizzaro, Jr. (in his official capacity as Orleans Parish District Attorney ("OPDA")), through undersigned counsel, respectfully submits the following memorandum in support of his motion to compel a forensic psychological examination of Robert Jones under Federal Rule of Civil Procedure 35.

**BACKGROUND**

In this case, Mr. Jones asserts a claim under *Brady v. Maryland* and alleges that withholding of favorable evidence caused him to be wrongfully convicted. Among other injuries, Mr. Jones alleges that he has suffered "mental anguish, emotional distress" and "psychological damage" as a result. Doc. No. 1 at ¶ 96. On August 13, 2019, Mr. Jones submitted a report from an expert witness, Dr. Bhushan Agharkar, a psychiatrist, containing his findings and conclusions from an "evaluation of Mr. Robert Jones . . . . to assess the existence and extent of Mr. Jones's psychiatric difficulties as it relates to possible damages in his pending legal proceeding."[1] Dr. Agharkar

---

[1] Exhibit 1, Report of Dr. Agharkar, at 1.

1

concluded that "the traumas that Mr. Jones endured as a result of his conviction and incarceration have caused him to suffer from Post-Traumatic Stress Disorder (PTSD)." *Id.* at 2.

Mr. Jones also submitted a report from another expert witness, Dr. Allison Redlich, a psychologist.[2] Dr. Redlich offered her opinions on "1) the prevalence of, and psychological research on, false guilty pleas by innocent persons to crimes they did not commit, and 2) whether the factors known to experts to increase the risk of false guilty pleas by the innocent are present in Robert Jones's case, and how those factors may have impacted his own decision-making at the time he was faced with the prosecution's plea offer." *Id.* at 2. Dr. Redlich concluded that "Robert Jones's decision to plead guilty is consistent with the factors present in his case that are common to many of the hundreds of false guilty plea cases of other defendants who were later exonerated, and to those phenomena studied by experts in the field of psychology and related social sciences." *Id.* at 13.

OPDA has retained Dr. Mary Tramontin, a psychologist, as an expert to conduct a forensic psychological examination of Mr. Jones to assess and respond to (1) Mr. Jones's claims of mental anguish, emotional distress, and psychological damage, and (2) the findings and conclusions of Dr. Agharkar and Dr. Redlich. Mr. Jones requested that the examination be conducted on October 14, 2019, at the office of his counsel (Jones Walker), and OPDA agreed. Counsel for OPDA also answered various questions about the anticipated examination, explaining that the examination would last from 9:00 a.m. to 5:00 p.m. (with an anticipated one-hour lunch break and other breaks as needed by Mr. Jones) and would consist of an interview and various written psychological tests.[3]

---

[2] Exhibit 2, Report of Dr. Redlich.
[3] Exhibit 3, September 30–October 1, 2019 emails between Jack Nelson and Matthew Paul.

Counsel for OPDA also explained that the interview will be videotaped, and the video and other data from the examination will be provided to Mr. Jones.

However, Mr. Jones objects to any examination extending beyond four hours.[4] Mr. Jones also demands that his lawyers be given advance notice of the specific psychological tests to be given, reserving the right to object to the administration of any test.[5] Mr. Jones also demands, in advance, "a particularized list of the topics to be covered and the rationale for examining [him] on each of the topics."[6]

Mr. Jones's demands are unreasonable and should be rejected. His proposed four-hour limit appears to be arbitrary and without any scientific justification. He places great weight on the fact that he has previously been deposed and a video of his deposition is available to Dr. Tramontin, but a deposition is of course not equivalent to a psychological examination. In any event, Dr. Tramontin had not yet been retained at the time of Mr. Jones's deposition and had no input into the questions that were asked. Notably, Mr. Jones's expert, Dr. Agharkar, states that he spent four hours interviewing Mr. Jones.[7] Dr. Tramontin cannot reasonably be expected to interview Mr. Jones and conduct psychological testing in that same period. Particularly in light of the unknown variables, such as how long it will take Mr. Jones to complete written tests, and how forthcoming Mr. Jones will be in response to Dr. Tramontin's questions, it is difficult to understand Mr. Jones's confidence that four hours is the maximum time that would possibly be needed.

Mr. Jones's demand for advance notice (to his lawyers) of the tests to be administered and topics to be addressed should also be rejected. Dr. Agharkar conducted his examination of Mr.

---

[4] Exhibit 3, October 2, 2019 email from Jack Nelson.

[5] *Id.*

[6] *Id.*

[7] Exhibit 1, Agharkar Report at 2.

Jones and provided his report without any input or review from opposing counsel, and OPDA is entitled to its own similar opportunity to evaluate Mr. Jones without interference from counsel. Dr. Tramontin is a trained and licensed professional, and Mr. Jones has given no reason to believe that she will conduct an inappropriate examination. And in any event, the transparency of the process will allow Mr. Jones to make any objection he finds appropriate to the use of the examination and its conclusions. Although Mr. Jones has suggested that pre-examination litigation of the appropriateness of the specifics of the examination is necessary to protect him from prejudice, he has not explained what sort of incurable prejudice could potentially occur.

## LEGAL STANDARD

"The court where the action is pending may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." FED. R. CIV. P. 35(a)(1). The order may be made "only on motion for good cause" and must "specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." FED. R. CIV. P. 35(a)(2). "Rule 35(a) is to be construed liberally in favor of granting discovery." *Jackson v. Entergy Operations, Inc.*, No. 97-0943, 1998 WL 28272 (E.D. La. Jan. 26, 1998).

The Court conducts a two-part test when evaluating a motion to compel: first, whether the physical or mental state of a party is in controversy and, second, whether the moving party has shown good cause as to why the motion should be granted. *Shawler v. Ergon Asphalt & Emulsions, Inc.*, No. 15-2599, 2016 WL 9412671, at *2 (E.D. La. Feb. 11, 2016). The U.S. Supreme Court has held that a plaintiff "who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Schlagenhauf v. Holder*, 379 U.S. 104,

119 (1964). "In determining whether good cause exists, courts also frequently look to whether the plaintiff has retained his own experts, and whether he intends to prove his claims through their testimony at trial." *Thomas v. Edison Chouest Offshore, LLC*, No. 15-3487, 2017 WL 467680, at *1 (E.D. La. Feb. 3, 2017); *see also Ferrell v. Shell Oil Co.*, No. 95-0568, 1995 WL 688795, at *1 (E.D. La. Nov. 20, 1995).

While the court may impose limits on an examination, it should not do so if the proposed limits "would subvert the truth finding function inherent in Rule 35 examinations." *Hasan v. McCormack Baron Management, Inc.*, No. 18-7779, 2019 WL 2122978, at *2 (E.D. La. May 15, 2019). Courts should especially be hesitant to place such limits absent any evidence that the proposed examination would be "dangerous, harmful, or unduly invasive." *Id*. In fact, this Court has upheld a magistrate judge's decision not to limit the scope of a psychiatrist's questioning during an examination because it was "neither clearly erroneous nor contrary to law." *Haensel v. Chrysler Corp.*, 96–1103, 1997 WL 537995, at *1 (E.D. La. Aug. 25, 1997); *see id.* ("The [magistrate judge's] order noted that to the extent these examination encompass, in plaintiffs' opinion, inappropriate subjects, plaintiffs may seek to exclude such evidence via a motion in limine."). Further, courts have frequently held that a party seeking a psychological examination need not disclose the questions to be asked or tests to be performed prior to the examination. *See, e.g., Daigle v. Nabors Drilling USA, LP*, No. 05–0336, 2007 WL 580781, at *2 (W.D. La. Feb. 15, 2007); *Ragge v. MCA/Universal Studies*, 165 F.R.D. 605, 609 (C.D. Cal. 1995).

Finally, this Court has recognized that there is "is no substitute for an in-person examination by a doctor." *Hasan*, 2019 WL 2122978 at *2. Thus, this Court has denied plaintiffs' requests to shorten the duration of an examination because the physician has access to other sources of information, such as a plaintiff's medical records, deposition testimony, or the

upcoming depositions of the plaintiff's experts. *See id.*; *Ferrell*, 1995 WL 688795 at *1; *Shawler*, 2016 WL 9412671 at *2.

## DISCUSSION

**I.  Mr. Jones's claims of PTSD and falsely pleading guilty are clearly in controversy, and OPDA has demonstrated good cause for why the examination is necessary.**

Mr. Jones's allegations of PTSD and falsely pleading guilty to manslaughter and armed robbery are clearly in controversy, as required for a mental examination under Rule 35. *See* FED. R. CIV. P. 35(a). Not only has Mr. Jones brought this 42 U.S.C. § 1983 action against OPDA alleging "mental anguish, emotional distress" and "psychological damage," Doc. No. 1 at ¶ 96, but Mr. Jones has also hired an expert psychiatrist who diagnosed him with PTSD and an expert psychologist who concluded that he falsely pleaded guilty to manslaughter and armed robbery after his rape conviction in 1996. Because Mr. Jones is alleging mental, emotional and psychological injuries and seeking to introduce psychological evidence to argue that he falsely entered into guilty pleas, he has clearly placed these issues in controversy in this case. *See Schlagenhauf*, 379 U.S. at 119.

Further, OPDA has demonstrated good cause for why the examination is necessary. The plaintiff's hiring of an expert and intent to present the expert's testimony at trial constitutes good cause for an opposing party to conduct a Rule 35 examination. *See Thomas*, 2017 WL 467680 at *1; *Ferrell*, 1995 WL 688795 at *1. Here, OPDA has good cause to evaluate Mr. Jones's claims of PTSD and falsely pleading guilty and to respond to Mr. Jones's experts. Further, each of these claims will be presented by Mr. Jones's experts in psychiatry and psychology, necessitating OPDA's psychologist to conduct her own examination of Mr. Jones. Finally, the information is not able to be obtained elsewhere, because only an examination with Mr. Jones will suffice since there is "no substitute for an in-person examination by a doctor." *Hasan*, 2019 WL 2122978 at *2.

## II.    Mr. Jones has no legitimate reason to limit the examination to four hours.

OPDA is entitled to examine Mr. Jones for a reasonable amount of time, which Dr. Tramontin has proposed to be eight hours *including a one-hour lunch break and any other necessary breaks*. This Court has allowed a defendant to conduct a mental evaluation of a plaintiff for a similar amount of time. For example, in *Shawler*, 2016 WL 9412671 at *3, this Court allowed eight hours of neuropsychological testing over a two-day period. In *Jackson*, 1998 WL 28272 at *3, this Court allowed eight hours of combined testing by a psychiatrist and a psychologist. Going one step further, this Court in *Thomas*, 2017 WL 467680 at *3, declined to place any limitations on the duration of the examination since "there [was] no basis to believe that [the] examination would be excessively long or intrusive," even though the plaintiff was concerned the testing might go for "multiple days." *See also id.* ("The Court finds that the only appropriate limitations on the scope of questioning and tests are those imposed by Dr. Roniger himself based [on] his professional experience.").

Here, the proposed examination by Dr. Tramontin from 9 a.m. to 5 p.m. including lunch and other breaks is reasonable based on the facts of this case. First, as just stated, the eight-hour time period includes any breaks Mr. Jones needs throughout the day, including a one-hour lunch break. Second, Dr. Tramontin is evaluating and responding to the findings and conclusions of two of Mr. Jones's proposed experts, namely his alleged PTSD as asserted by Dr. Agharkar and his alleged false guilty pleas as asserted by Dr. Redlich. Therefore, this case is most analogous to *Jackson*, in which this Court allowed eight hours of combined testing by a psychologist and a psychiatrist so that the defendant could fully respond to the plaintiff's alleged injuries. 1998 WL 28272 at *3. Finally, this Court has expressly rejected the argument that a Rule 35 examination should be prohibited or shortened because the defendant already has access to plaintiff's medical records, deposition testimony, or the upcoming depositions of his own mental health professionals,

7

so the fact that Mr. Jones has undergone a video deposition or may soon supply medical records to OPDA is irrelevant to the appropriate length of the examination. *See Ferrell*, 1995 WL 688795 at *1; *Hasan*, 2019 WL 2122978 at *2; *Shawler*, 2016 WL 9412671 at *3. Accordingly, the proposed length of the examination is reasonable, and Mr. Jones is not entitled to have the examination limited to four hours.

**III.     Robert Jones is not entitled to advance notice of the specific tests to be administered or specific topics to be addressed.**

OPDA is not required to provide Mr. Jones with a list of topics to be addressed or tests to be administered during his examination. Although Mr. Jones has suggested that he is entitled to know the "scope" of the examination, *see* FED. R. CIV. P. 35(a)(2), the scope of the examination has already been adequately described: it will be a forensic psychological examination consisting of an interview and written tests, to assess the claims about Mr. Jones's mental, emotional, and psychological state advanced in his complaint and in the reports of Dr. Agharkar and Dr. Redlich.

Nothing in the Federal Rules of Civil Procedure requires a defendant to disclose the tests a qualified professional plans to conduct in advance of a mental examination, and most of the cases addressing the issue have denied similar requests by plaintiffs. *See, e.g., Daigle*, 2007 WL 580781, at *2 (holding that there is "no authority for [the] conclusion that a list of tests is required before a psychological examination can be conducted under Rule 35"); *Ragge*, 165 F.R.D. at 609 (holding that "[i]t would serve no purpose to require [defendant's expert] to select, and disclose, the specific tests to be administered in advance of the examination. A detailed report of the mental examination, including the tests administered, will be provided to plaintiff under Rule 35(b)."); *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 626 (D. Kan. 1999) (holding

that "[p]laintiff has shown no good cause . . . for prior disclosure of questions or tests," despite plaintiff having severe Post Traumatic Stress Disorder).[8]

Here, Mr. Jones has not demonstrated good cause for why Dr. Tramontin should disclose a list of tests or "particularized" topics before the examination. Counsel for Mr. Jones have indicated that they seek a list of the tests so that they may object to certain tests before the examination. Similarly, his counsel request a list of specific topics "so that [they] may determine whether the scope of the proposed examination is acceptable."[9] However, such objections are appropriately handled through *Daubert* motions or other motions *in limine* after the examination. *See Thomas*, 2017 WL 467680 at *3 ("If the report includes conclusions . . . outside the scope of [the examiner's] expertise, [plaintiff] is free to move to exclude such evidence from presentation at trial."); *Haensel*, 1997 WL 537995, at *1 ("[T]o the extent these examinations encompass, in plaintiffs' opinion, inappropriate subjects, plaintiffs may seek to exclude such evidence via a motion in limine."). While Mr. Jones has suggested that he may be prejudiced in some incurable manner if he is unable to object to certain tests before the examination, he has not explained what sort of prejudice he would suffer or why it could not be cured in a pre-trial motion *in limine*. Dr. Tramontin is a qualified, licensed professional who should be allowed to ask any questions and

---

[8] Counsel for OPDA are aware of one case from this district, *Morris v. Barideaux*, No. 07–9751, 2009 WL 10679048 (E.D. La. Jan. 5, 2009), in which a magistrate judge ordered a defendant to submit a list of tests in advance of the continuation of an IME that was interrupted after one hour and to limit testing to four-and-a-half hours. But that case arose from an automobile accident; the plaintiff's limited physical injuries had resolved, but the plaintiff was claiming severe PTSD resulting from the accident. The dispute over the examination and the court's concern centered on whether the testing would be limited to the PTSD issue. This case is very different. In addition to PTSD that allegedly resulted from multiple events that Mr. Jones has not specifically identified, Mr. Jones is putting forward expert testimony that he falsely pleaded guilty to a high-profile murder and multiple armed robberies.

[9] Exhibit 3, October 2, 2019 email from Jack Nelson.

administer any tests she finds necessary to conduct her examination, without being bound by a prior list and without the examination being contaminated by preparation on Mr. Jones's part.[10]

## CONCLUSION

For the reasons explained above, OPDA respectfully requests that the Court grant its motion to compel and require Plaintiff Robert Jones to attend a forensic psychological examination by Dr. Mary Tramontin on October 14, 2019, from 9 a.m. to 5 p.m. (with a one-hour break for lunch and other breaks as needed by Mr. Jones), at the offices of Jones Walker, or at some other time ordered by the Court or agreed to by the parties.

Respectfully Submitted,

| | |
|---|---|
| | */s/ Matthew J. Paul* |
| Robert L. Freeman, Jr., 21596 | Richard C. Stanley, 8487 |
| Donna R. Andrieu, 26441 | W. Raley Alford, III, 27354 |
| Office of the District Attorney, | Matthew J. Paul, 37004 |
| Parish of Orleans | STANLEY, REUTER, ROSS, THORNTON |
| 619 South White Street | & ALFORD, LLC |
| New Orleans, Louisiana 70119 | 909 Poydras Street, Suite 2500 |
| Telephone: (504) 822-2414, ext. 2877 | New Orleans, Louisiana 70112 |
| Facsimile: (504) 827-6393 | Telephone: (504) 523-1580 |
| | Facsimile: (504) 524-0069 |
| Thomas J. Barbera, 18719 | rcs@stanleyreuter.com |
| 4645 Carthage Street | wra@stanleyreuter.com |
| Metairie, Louisiana 70002 | mjp@stanleyreuter.com |
| Telephone: (504) 931-0662 | |

*Counsel for Leon Cannizzaro (in his official capacity as Orleans Parish District Attorney)*

---

[10] Alternatively, if the Court requires OPDA to disclose the list of tests to be performed before the examination, OPDA respectfully requests the Court order that the list not be shared with Mr. Jones before the examination and that Mr. Jones not receive any coaching from his counsel, medical providers, therapists, or retained experts with the aim of influencing his performance on the tests.