UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT JONES, | : | CIVIL ACTION NO. 2:18-CV-0503-JTM-JCW |
| | : | |
| Plaintiff | : | SECTION H(2) |
| | : | |
| v. | : | JUDGE JANE TRICHE MILAZZO |
| | : | |
| LEON CANNIZZARO, JR., and | : | MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |
| ABC INSURANCE COMPANIES 1-10, | : | |
| | : | |
| Defendants. | : | **JURY TRIAL DEMANDED** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTIONS (1) *IN LIMINE* TO PRECLUDE ADMISSION OF EVIDENCE AND ARGUMENT, AND (2) FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANT'S FIFTH AFFIRMATIVE <u>DEFENSE</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

LEGAL STANDARD........................................................................................................... 2

ARGUMENT ....................................................................................................................... 3

I.      Evidence and Argument Concerning Alleged Ineffective Assistance of Counsel
Should Be Excluded Under the Doctrine of Judicial Estoppel ......................................... 4

II.     Evidence and Argument Concerning Alleged Ineffective Assistance of Counsel
Should Be Excluded as a Defense to Liability, Under Well-Established Tort
Principles Applicable to § 1983 Claims........................................................................... 9

      A.     Alleged Ineffective Assistance of Counsel Is Irrelevant to the Cause-in-
Fact and Proximate Cause Analysis...................................................................... 10

      B.     Alleged Ineffective Assistance of Counsel Is Not a Superseding Cause
Sufficient to Relieve OPDA of Liability .............................................................. 12

III.    Evidence and Argument Concerning Alleged Ineffective Assistance of Counsel
and the Conduct of Prison Officials and Inmates Cannot Be Offered as a Defense
to Damages, Because Comparative Fault Principles Do Not Apply to § 1983
Claims ............................................................................................................................. 16

CONCLUSION................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Alonso v. Westcoast Corp.*,
    No. 13-CV-00563, 2016 WL 3951331 (M.D. La. July 21, 2016) ............................................. 2

*Alvarez v. City of Brownsville*,
    No. 11-CV-78, 2014 WL 12600164 (S.D. Tex. June 19, 2014) ............................................. 12

*Babin v. Plaquemines Parish*,
    No. 18-CV-7378, 2019 WL 5084164 (E.D. La. Oct. 10, 2019) ................................................. 3

*Becker v. Tidewater, Inc.*,
    586 F.3d 358 (5th Cir. 2009) .................................................................................................. 13

*Black v. United States*,
    441 F.2d 741 (5th Cir. 1971) .................................................................................................. 14

*Blair v. Harris*,
    993 F. Supp. 2d 721 (E.D. Mich. 2014) .................................................................................. 18

*Board of Regents v. Tomanio*,
    446 U.S. 478 (1980) ................................................................................................................ 17

*Bowen v. Watkins*,
    669 F.2d 979 (5th Cir. 1982) .................................................................................................. 11

*Burge v. Par. of St. Tammany*,
    No. 91-CV-2321, 1995 WL 317125 (E.D. La. May 24, 1995) ......................................... 16, 18

*Burnett v. Grattan*,
    468 U.S. 42 (1984) .................................................................................................................. 17

*Cash v. Cty. of Erie*,
    654 F.3d 324 (2d Cir. 2011) ................................................................................................... 10

*Cordova v. City of Albuquerque*,
    816 F.3d 645 (10th Cir. 2016) ................................................................................................ 18

*Edmonds v. Compagnie Generale Transatlantique*,
    443 U.S. 256 (1979) .......................................................................................................... 12, 16

*Fox ex rel. Fox v. Barnes*,
    No. 09-CV-5453, 2013 WL 2111816 (N.D. Ill. May 15, 2013) ............................................. 19

*Gabarick v. Laurin Mar. (Am.) Inc.*,
    753 F.3d 550 (5th Cir. 2014) .................................................................................................... 4

*Gill v. St. Tammany Par. Hosp. Serv. Dist. No. 2*,
    No. 17-CV-5026, 2018 WL 6787440 (E.D. La. Mar. 2, 2018) ................................................. 3

*Goudy v. Cummings*,
    922 F.3d 834 (7th Cir. 2019) ..................................................... 18

*Grandstaff v. City of Borger, Tex.*,
    767 F.2d 161 (5th Cir. 1985) ..................................................... 16

*Gravelet-Blondin v. Shelton*,
    728 F.3d 1086 (9th Cir. 2013) ..................................................... 10

*Hall v. GE Plastic Pac. PTE Ltd.*,
    327 F.3d 391 (5th Cir. 2003) ..................................................... 4, 8

*Hand v. Gary*,
    838 F.2d 1420 (5th Cir. 1988) ..................................................... 14

*Hinshaw v. Doffer*,
    785 F.2d 1260 (5th Cir. 1986) ..................................................... 17

*Jackson v. City of White Plains*,
    No. 05-CV-0491, 2016 WL 234855 (S.D.N.Y. Jan. 19, 2016) ................................................. 18

*Jones v. Cain*,
    151 So. 3d 781 (La. Ct. App. Oct. 8, 2014) ..................................................... 5, 7

*Lefton v. City of Hattiesburg*,
    333 F.2d 280 (5th Cir. 1964) ..................................................... 17

*McHugh v. Olympia Entm't, Inc.*,
    37 F. App'x 730 (6th Cir. 2002) ..................................................... 17, 18

*Miller v. Schmitz*,
    No. 12-CV-0137, 2013 WL 5754945 (E.D. Cal. Oct. 23, 2013) ................................................. 19

*Mims v. Dallas Cty.*,
    No. 04-CV-2754, 2006 WL 398177 (N.D. Tex. Feb. 17, 2006) ................................................. 18

*Monroe v. Pape*,
    365 U.S. 167 (1961) ..................................................... 12

*Moran v. Summers*,
    No. 15-CA-769, 2016 WL 1610611 (W.D. Tex. Apr. 20, 2016) ................................................. 18

*Murray v. Earle*,
    405 F.3d 278 (5th Cir. 2005) ..................................................... 12

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ............................................................... 4, 8, 9

*Nichols v. Knox Cty., Tennessee*,
No. 11-CV-417, 2016 WL 9149585 (E.D. Tenn. June 13, 2016) .............................................. 18

*Nnodimele v. Derienzo*,
No. 13-CV-3461, 2016 WL 3561708 (E.D.N.Y. June 27, 2016) ............................... 13, 14, 15

*Oklahoma City v. Tuttle*,
471 U.S. 808 (1985) ............................................................... 11

*Powers v. Hamilton Cty. Pub. Def. Comm'n*,
501 F.3d 592 (6th Cir. 2007) ............................................... 10

*Randle v. Tregre*,
147 F. Supp. 3d 581 (E.D. La. 2015) ................................... 2

*Republic of Ecuador v. Connor*,
708 F.3d 651 (5th Cir. 2013) ............................................... 9

*Resolution Tr. Corp. v. Pardo*,
980 F.2d 1445 (5th Cir. 1992) .............................................. 3

*Robertson v. Wegmann*,
436 U.S. 584 (1978) ............................................................ 17

*Rodriguez v. City of Houston*,
No. 06-CV-2650, 2009 WL 10679669 (S.D. Tex. June 8, 2009) .................................... 11, 15

*Sams v. City of Milwaukee, Wis.*,
117 F.3d 991 (7th Cir. 1997) ............................................... 11

*Sanford v. Russell*,
No. 17-CV-13062, Doc. No. 330 (E.D. Mich. Jun. 30, 2019) ................................................. 15

*Sheppard v. Liberty Mut. Ins. Co.*,
No. 16-CV-2401, 2016 WL 6803530 (E.D. La. Nov. 17, 2016) ........................................... 11

*Smith v. District of Columbia*,
413 F.3d 86 (D.C. Cir. 2005) ............................................... 11

*Staub v. Proctor Hosp.*,
562 U.S. 411 (2011) ...................................................... 11, 12

*Thompson v. Connick*,
No. 03-CV-2045, Doc. No. 140 (E.D. La. Feb. 9, 2007) ................................................. 10, 11

*United States v. McCaskey*,
    9 F.3d 368 (5th Cir. 1993) ....................................................................... 8

*Wanken v. Wanken*,
    No. 12-CV-2107, 2013 WL 1828840 (N.D. Tex. May 1, 2013) ............................... 9

*Whitlock v. Brueggemann*,
    682 F.3d 567 (7th Cir. 2012) ........................................................... 11, 12

*Williams v. Hampton*,
    797 F.3d 276 (5th Cir. 2015) ........................................................... 10, 12

*Zapata Gulf Marine Corp. v. Puerto Rico Mar. Shipping Auth.*,
    731 F. Supp. 747 (E.D. La. 1990) .................................................................. 8

**Statutes**

42 U.S.C. § 1988 .......................................................................................... 17

La. Civ. Code art. 2323 ................................................................................ 17

**Other Authorities**

Fifth Cir. Pattern Jury Instructions (Civil Cases), §§ 10.1 (2014) ........................... 10

**Rules**

Fed. R. Civ. P. 56 ......................................................................................... 3

Fed. R. Evid. 402 .................................................................................... 10, 16

**Treatises**

Stephanie H. Lee & David N. Finley, Fed. Motions in Limine, § 1:3 (West 2018) ....................... 3

**INTRODUCTION**

Throughout discovery, Defendant Leon Cannizzaro, Jr. ("Mr. Cannizzaro") has made clear that he will seek to escape responsibility for Plaintiff Robert Jones's ("Mr. Jones") *Brady*-tainted wrongful convictions, and his resulting injuries and damages, by shifting blame to others—specifically, to Mr. Jones's trial counsel and to prison officials or inmates. *See, e.g.*, Doc. No. 47 at 16 (asserting in answer, as Mr. Cannizzaro's Fifth Affirmative Defense, that "Mr. Jones's alleged damages, if any, were caused, either in whole or in part, by the errors, acts, omissions, negligence, or fault of third parties for whom Mr. Cannizzaro is not responsible," specifically, by "the 'incompetent performance' of his trial counsel" or "third parties, such as prison officials or fellow inmates"); Ex. 1 (Report of Frank DeSalvo, Oct. 21, 2019) to Monju Decl. (opining that Mr. Jones's trial counsel was incompetent). Mr. Cannizzaro cannot assert these defenses, for several reasons.

*First*, Mr. Cannizzaro should be precluded from introducing any evidence or argument concerning alleged ineffective assistance of counsel under the doctrine of judicial estoppel. That is because the Orleans Parish District Attorney's Office ("OPDA") advocated for years before courts that Mr. Jones's trial counsel was *not* ineffective—and those courts accepted OPDA's position. As a result, Mr. Cannizzaro cannot be allowed to assert a contrary position here.

*Second*, under well-established tort principles applicable to § 1983 claims, Mr. Jones's trial counsel's performance is irrelevant to the question of OPDA's liability for Mr. Jones's *Brady*-tainted wrongful convictions and resulting injuries. That is because Mr. Jones need only prove that OPDA's misconduct was *a* cause, and not the *sole* cause, of his injuries, and because ineffective assistance is not an independent, unforeseeable superseding cause sufficient to sever the causal link between OPDA's violation of Mr. Jones's rights and Mr. Jones's injuries.

*Third*, if OPDA's liability for Mr. Jones's *Brady*-tainted wrongful convictions and resulting injuries is established, the conduct of Mr. Jones's trial counsel and prison officials or inmates would be irrelevant to the question of Mr. Cannizzaro's responsibility for Mr. Jones's damages. This is because Mr. Cannizzaro would be jointly and severally liable for all damages Mr. Jones incurred as a result of his injuries, regardless of whether third-party conduct contributed to those damages.

For these reasons, Mr. Jones moves (1) *in limine* to preclude the admission of evidence and argument concerning alleged ineffective assistance of Mr. Jones's trial counsel, (2) *in limine* to preclude the admission of evidence and argument concerning prison officials' and inmates' conduct as a defense to damages, and (3) for partial summary judgment dismissing Mr. Cannizzaro's Fifth Affirmative Defense, which asserts ineffective assistance and prison officials' and inmates' conduct as a defense to damages.[1]

## **LEGAL STANDARD**

"[M]otions in limine help to streamline a case, because such motions enable a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial." *Alonso v. Westcoast Corp.*, No. 13-CV-00563, 2016 WL 3951331, at *2 (M.D. La. July 21, 2016) (citation and internal quotation marks omitted). The preclusion of evidence and argument are issues this Court may resolve on a motion *in limine*. *See, e.g.*, *Randle v. Tregre*, 147 F. Supp. 3d 581, 596 (E.D. La. 2015) ("[N]umerous federal courts have

---

[1] Because Mr. Cannizzaro asserted this third-party conduct as an affirmative defense to damages only, *see* Doc. No. 47 at 16, Mr. Jones limited his motion for partial summary judgment to damages, mindful of the Court's guidance that such motions are not the proper vehicle to resolve evidentiary issues, *see* Doc. Nos. 182 at 3, 187 at 5–6. However, because Mr. Jones's motion *in limine* concerns the same third-party conduct that is the subject of his partial summary judgment motion, and is based on similar legal principles, he included it here so that these related motions may be considered by the Court at the same time, if it so chooses.

found that motions in limine may be used to secure a pretrial ruling that certain evidence is admissible or inadmissible." (citation and internal quotation marks omitted)); Stephanie H. Lee & David N. Finley, Fed. Motions in Limine, § 1:3 (West 2018) ("A motion [*in limine*] can also be brought to limit the scope of a party's argument.").

In addition, summary judgment is an appropriate vehicle to dispose of an affirmative defense. *See, e.g.*, Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); *Babin v. Plaquemines Parish*, No. 18-CV-7378, 2019 WL 5084164, at *3 (E.D. La. Oct. 10, 2019) (collecting cases). If a defendant asserts an affirmative defense that is not legally cognizable or is insufficient as a matter of law, a motion for partial summary judgment must be granted as to that defense. *See, e.g.*, *Resolution Tr. Corp. v. Pardo*, 980 F.2d 1445, at *5 (5th Cir. 1992) (unpublished) (affirming grant of summary judgment as to affirmative defense); *Gill v. St. Tammany Par. Hosp. Serv. Dist. No. 2*, No. 17-CV-5026, 2018 WL 6787440, at *2 (E.D. La. Mar. 2, 2018) (granting motion for summary judgment and dismissing affirmative defense).

## ARGUMENT

Mr. Cannizzaro cannot escape responsibility for Mr. Jones's *Brady*-tainted wrongful convictions, and his resulting injuries and damages, by shifting blame to Mr. Jones's trial counsel or to prison officials and inmates, for three reasons. *First*, OPDA previously, successfully argued to multiple courts that Mr. Jones's counsel *was* effective, and Mr. Cannizzaro cannot reverse course here. *Second*, Mr. Jones's trial counsel's performance cannot create a legally cognizable defense to Mr. Cannizzaro's liability for Mr. Jones's *Brady*-tainted wrongful convictions and resulting injuries. *Third*, Mr. Jones's trial counsel's performance and the conduct of prison officials and inmates are irrelevant to Mr. Cannizzaro's responsibility for damages because, if Mr. Cannizzaro's liability is established at trial, he will be jointly and severally liable for *all* of the

damages Mr. Jones incurred as a result of his *Brady*-tainted wrongful convictions and resulting injuries.

## I.  Evidence and Argument Concerning Alleged Ineffective Assistance of Counsel Should Be Excluded Under the Doctrine of Judicial Estoppel

The doctrine of judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *E.g.*, *Gabarick v. Laurin Mar. (Am.) Inc.*, 753 F.3d 550, 553 (5th Cir. 2014) (citation omitted); *see also New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (similar).  The doctrine is intended "to prevent litigants from playing fast and loose with the courts," in order to protect "the integrity of the judicial process." *E.g.*, *Gabarick*, 753 F.3d at 553 (citation omitted).  Accordingly, judicial estoppel applies where a party's current position is "clearly inconsistent with its previous one" and "that party . . . convinced the court to accept that previous position." *E.g.*, *id.* (citation omitted).  Moreover, application of the doctrine is particularly appropriate where "'the party seeking to assert the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *See, e.g.*, *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 399 (5th Cir. 2003) (quoting *New Hampshire*, 532 U.S. at 751).

Judicial estoppel plainly applies here.  Mr. Jones persistently sought relief from his wrongful convictions and imprisonment for decades, including by asserting in multiple post-conviction relief applications that his trial counsel had been ineffective. *See* Monju Decl. at ¶ 4.  For example, in his 2010 application, Mr. Jones asserted that he was entitled to relief because he "was convicted in large part because he did not receive anything close to the effective assistance

of counsel guaranteed by the Sixth Amendment" due to his counsel's "incompetent performance"—a position he litigated in courts for years.[2]

OPDA, in turn, persistently opposed Mr. Jones's claim, arguing in briefs and in court that Mr. Jones's trial counsel *had* been effective.[3] For example, in response to Mr. Jones's 2010 application, OPDA argued that Mr. Jones's trial counsel had "presented a clear theory of [witness] misidentification"[4]; "presented five [alibi] witnesses at trial"[5]; permitted Mr. Jones to testify to his innocence and "methodically la[y] out his alibi" such that Mr. Jones could "not show any deficien[cy] in . . . [counsel]'s performance in preparing him to testify at trial or examining him threat"[6]; "investigate[d] . . . the fact that Jones differed physically from the victims' initial descriptions of the perpetrator [and] evidence tending to show that Lester Jones was the likely

---

[2] *See* Ex. 2 (*Jones v. Cain*, No. 356-745, Appl. for Post-Conviction Relief (Orleans Crim. Dist. Ct. Aug. 9, 2010)) to Monju Decl. at 43.

[3] *See, e.g.*, Ex. 3 (*State v. Jones*, No. 356-745, Resp. to Petitioner's Appl. for Post-Conviction Relief (Orleans Crim. Dist. Ct. May 15, 2013)) to Monju Decl. at 12–23 (arguing at length against Mr. Jones's ineffective assistance claim); Ex. 4 (*State v. Jones*, No. 356-745, Tr. of Post-Conviction Hr'g (Orleans Crim. Dist. Ct. Sept. 26, 2013)) to Monju Decl. at 109–13 (questioning Mr. Jones's trial counsel regarding his strategy and referring to his approach as a "pretty good defense"); Ex. 5 (*State v. Jones*, No. 356-745, Tr. of Post-Conviction Hr'g (Orleans Crim. Dist. Ct. Oct. 8, 2013)) to Monju Decl. at 89–96 (cross-examining Mr. Jones's ineffective assistance expert concerning Mr. Jones's trial counsel's strategy); *id.* at 169–87 (arguing at length that Mr. Jones had received a fair trial, including due to his trial counsel's performance); Ex. 6 (*State v. Jones*, No. 2014-K-0226, State's Opp'n to Supervisory Writs (La. Ct. App. July 17, 2014)) to Monju Decl. at 35–53 (arguing at length against Mr. Jones's ineffective assistance claim); *see also Jones v. Cain*, 151 So. 3d 781, 806 (La. Ct. App. Oct. 8, 2014) (noting, in its decision rejecting Mr. Jones's ineffective assistance claim, OPDA's "long explanation" concerning Mr. Jones's trial counsel's effectiveness).

[4] *See* Ex. 3, *supra* note 3, at 21.

[5] *See id.* at 14; *see also* Ex. 5, *supra* note 3, at 180; Ex. 6, *supra* note 3, at 51.

[6] *See* Ex. 3, *supra* note 3, at 22–23.

perpetrator"[7]; "gained admissions from [a police witness] that the vehicle in which the victims' possessions had been found belonged to Lester, not Robert, Jones[,] that Lester, not Robert, Jones had been seen in possession of the stolen items[,] that a search of Robert Jones' residence failed to turn up any evidence connecting him to the stolen items[,] that police had never seen Robert and Lester Jones together[,] and that no forensic evidence linked Robert Jones to Lester Jones' vehicle"[8]; "present[ed] evidence" of Lester Jones's guilt through questioning that was "markedly more thorough than the State's"[9]; paid "ample attention . . . to the theory that Robert Jones had been wrongly identified as the perpetrator of a crime committed by Lester Jones"[10]; "emphasized both Lester Jones's connection and Robert Jones's lack of connection to physical evidence of the instant crimes during his closing argument"[11]; "presented a consistent theory throughout trial that *Lester* Jones was the true culprit"[12]; and otherwise made "reasonable strategic decisions," including choices that were a "consummate exercise" and "example of trial strategy."[13]

OPDA not only lauded Mr. Jones's trial counsel's performance—it also pointedly and repeatedly attacked the validity of Mr. Jones's ineffective assistance claim. For example, OPDA argued before multiple courts that the arguments supporting the ineffective assistance claim in Mr. Jones's 2010 application were, *inter alia*, "foolish," "unfounded," "weak," and "baseless"[14]; that

---

[7] *See* Ex. 6, *supra* note 3, at 47 (stating that "the record fully supports the district court's conclusion that [counsel] did not fail to investigate" these points).

[8] *See* Ex. 3, *supra* note 3, at 20.

[9] *See* Ex. 6, *supra* note 3, at 48–49.

[10] *See id.* at 46–47.

[11] *See id.* at 49–50.

[12] *See id.* at 51.

[13] *See id.* at 44, 47.

[14] *See id.* at 49–52.

Mr. Jones had "entirely fail[ed] to meet his burden" to prove ineffective assistance[15]; and that Mr. Jones had not "substantiate[d] his claim that [his counsel's] performance . . . was professionally deficient or that, the complained-of deficiencies . . . undermined confidence in the jury's verdict."[16]

Ultimately, OPDA's vigorous defense of Mr. Jones's trial counsel's performance prevailed. Mr. Jones's ineffective assistance claim was dismissed with prejudice by the Orleans Criminal District Court, which held that Mr. Jones had "failed to show that [his] counsel's representation fell below an objective standard of reasonableness."[17] And the Louisiana Fourth Circuit Court of Appeal affirmed, on the ground that Mr. Jones's "ineffective assistance claim [did] not clearly have merit, and the trial court did not err by denying relief on this ground."[18]

Mr. Cannizzaro's current effort to shift blame to Mr. Jones's trial counsel is nothing more than an opportunistic about-face from these years of contrary arguments. Tellingly, to assert his Fifth Affirmative Defense on the ground of ineffective assistance, Mr. Cannizzaro *expressly* relied on Mr. Jones's *failed* 2010 ineffective assistance claim, stating that:

> Mr. Jones himself has argued in his 2010 application for post-conviction relief that he "was convicted in large part because he did not receive anything close to the effective assistance of counsel guaranteed by the Sixth Amendment." Thus, Mr. Jones's alleged damages were caused by the "incompetent performance" of his trial counsel, Curklin Atkins.[19]

This, of course, is the *precise* claim that OPDA argued against for years before courts, and the *precise* claim that OPDA persuaded those courts to reject. And this was no mere error in

---

[15] *See* Ex. 3, *supra* note 3, at 23.

[16] *See* Ex. 6, *supra* note 3, at 52–53.

[17] *See* Ex. 7 (*State v. Jones*, No. 356-745, Tr. of Ruling (Orleans Crim. Dist. Ct. Jan. 24, 2014)) to Monju Decl. at 17.

[18] *See Jones*, 151 So. 3d at 807.

[19] *See* Doc. No. 47 at 16 (quoting Ex. 2, *supra* note 3, at 43).

pleading—Mr. Cannizzaro has continued to press this inconsistent position throughout discovery here. For example, Mr. Cannizzaro's proffered expert in this case, Frank DeSalvo, testified in his deposition that, in his opinion, Mr. Jones's trial counsel had been ineffective—an opinion that is expressly at odds with OPDA's prior position and court rulings adopting that position.[20] Accordingly, there is no question that Mr. Cannizzaro's current position is inconsistent (and starkly so) with the position on this issue that OPDA successfully asserted over the last decade.

Mr. Cannizzaro should not be allowed to assert a contrary position now, merely because it is in his self-interest to do so. Permitting such a defense would impugn the integrity of the judicial process, signaling that OPDA may tout trial counsel's performance in post-conviction proceedings to defend a conviction, secure in the knowledge that it may later reverse course if circumstances were to change. Such opportunistic abuse of the judicial process is not permissible. *See, e.g.*, *New Hampshire*, 532 U.S. at 749–50, 755 (noting that judicial estoppel protects the integrity of the judicial process by "'prohibiting parties from deliberately changing positions according to the exigencies of the moment'") (quoting *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)); *Hall*, 327 F.3d at 400 (similar); *Zapata Gulf Marine Corp. v. Puerto Rico Mar. Shipping Auth.*, 731 F. Supp. 747, 749 (E.D. La. 1990) (similar).

Moreover, application of judicial estoppel would prevent a profound unfairness. OPDA persistently sought to prevent Mr. Jones's release from prison for *years* based, in part, on its opposition to his ineffective assistance claims—and OPDA succeeded. Mr. Cannizzaro cannot adopt an inconsistent position now, in a transparent effort to avoid responsibility for OPDA's

---

[20] *See* Ex. 8 (Dep. of Frank DeSalvo, Dec. 10, 2019) to Monju Decl. at 88:20–23.

violation of Mr. Jones's *Brady* rights.[21]  *See, e.g.*, *New Hampshire*, 532 U.S. at 749 ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . . ." (citation omitted)); *Republic of Ecuador v. Connor*, 708 F.3d 651, 658 (5th Cir. 2013) (estopping a litigant from changing its position on discovery, to avoid an unfair result); *Wanken v. Wanken*, No. 12-CV-2107, 2013 WL 1828840, at *6 (N.D. Tex. May 1, 2013) (estopping a defendant from reversing its position on the plaintiff's employment status, to prevent unfair evasion of the plaintiff's claims).

In short, Mr. Cannizzaro's palpable gamesmanship threatens the integrity of the judicial process and invites an unfair result.  Because OPDA "has previously persuaded a court to adopt a clearly contrary position to the disadvantage of an opponent," *see Republic of Ecuador*, 708 F.3d at 654, Mr. Cannizzaro should be estopped from now asserting that Mr. Jones's trial counsel was ineffective.  Accordingly, Mr. Jones's motion *in limine* to preclude Mr. Cannizzaro from introducing evidence or argument concerning alleged ineffective assistance of counsel, and Mr. Jones's motion for summary judgment seeking dismissal of the portion of Mr. Cannizzaro's Fifth Affirmative Defense asserting ineffective assistance, should be granted.

## II.  Evidence and Argument Concerning Alleged Ineffective Assistance of Counsel Should Be Excluded as a Defense to Liability, Under Well-Established Tort Principles Applicable to § 1983 Claims

Mr. Cannizzaro also cannot introduce evidence or argument concerning alleged ineffective assistance of counsel as a defense to liability, for the independent reason that such third-party

---

[21] That Mr. Jones previously—and unsuccessfully—asserted ineffective assistance of counsel is immaterial to this analysis, because Mr. Jones does not assert a contrary position now and, "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations."  *See New Hampshire*, 532 U.S. at 750–51 (citations omitted).

conduct cannot, as a matter of law, provide a legally cognizable defense to liability. That is because, under well-established tort principles applicable to § 1983 claims, Mr. Jones need only prove that OPDA's violation of his *Brady* rights was *a* cause in fact and proximate cause of his *Brady*-tainted wrongful convictions and resulting injuries—not the *sole* cause. If such causation is established, Mr. Cannizzaro may escape liability *only* by pointing to an independent, unforeseeable *superseding* cause that broke the chain of causation between OPDA's misconduct and Mr. Jones's resulting injuries—and ineffective assistance of counsel, as a matter of law, cannot be a superseding cause of a *Brady*-tainted conviction. It is thus irrelevant whether ineffective assistance was, at most, an *additional* cause of Mr. Jones's injuries, and Mr. Cannizzaro should be precluded from introducing evidence and argument concerning the same under Federal Rule of Evidence 402. *See* Fed. R. Evid. 402 (permitting the admission of only "relevant" evidence).

### A. Alleged Ineffective Assistance of Counsel Is Irrelevant to the Cause-in-Fact and Proximate Cause Analysis

To establish that OPDA is liable for his injuries, Mr. Jones must prove, among other elements, that OPDA's *Brady* violation was a cause in fact and proximate cause of his wrongful convictions and resulting injuries. *See, e.g.*, Fifth Cir. Pattern Jury Instructions (Civil Cases), §§ 10.1 n.3 (2014) (noting cause-in-fact and proximate cause requirements for § 1983 claims generally); *Williams v. Hampton*, 797 F.3d 276, 296 (5th Cir. 2015) (Elrod, J., concurring) (same); *Thompson v. Connick*, No. 03-CV-2045, Doc. No. 140 at 28 (E.D. La. Feb. 9, 2007) (stating, in jury instructions for *Brady*-based § 1983 claim against OPDA, that the plaintiff was required to prove cause in fact and proximate causation).[22]

---

[22] Numerous circuit courts have also adopted this standard in the context of a § 1983 claim brought against a municipal defendant. *See, e.g.*, *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013); *Cash v. Cty. of Erie*, 654 F.3d 324, 342 (2d Cir. 2011); *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007); *Smith v. District of Columbia*, 413 F.3d 86, 102

Under this causation standard, Mr. Jones's trial counsel's performance is irrelevant to the question of whether OPDA's *Brady* violation caused Mr. Jones's injuries. That is because, to prevail, Mr. Jones is not required to prove that OPDA's *Brady* violation was the *sole* cause of his injuries. Instead, he need only prove that OPDA's *Brady* violation was *a* cause in fact and proximate cause of his injuries. *See, e.g.*, *Sheppard v. Liberty Mut. Ins. Co.*, No. 16-CV-2401, 2016 WL 6803530, at *4 (E.D. La. Nov. 17, 2016) ("Courts have long recognized that when a plaintiff is subjected to multiple tortious events, and each is independently sufficient to cause plaintiff's injury, the [cause-in-fact] test will not work to excuse any single causative factor."); *Bowen v. Watkins*, 669 F.2d 979, 985 & n.7 (5th Cir. 1982) (applying this principle in a § 1983 case); *Staub v. Proctor Hosp.*, 562 U.S. 411, 420 (2011) (noting that "it is common for injuries to have multiple proximate causes"); *Whitlock v. Brueggemann*, 682 F.3d 567, 582–85 (7th Cir. 2012) (applying this principle in a § 1983 case and noting that "it does not matter that other acts are also proximate causes of the ultimate violation").

Thus, even assuming that Mr. Jones's trial counsel was ineffective (which multiple courts have found he was not), the mere fact that his conduct may have *also* caused Mr. Jones injury would be insufficient to relieve Mr. Cannizzaro of liability—a conclusion in line with other courts' rulings on this very issue. *See, e.g.*, *Rodriguez v. City of Houston*, No. 06-CV-2650, 2009 WL 10679669, at *18–20 (S.D. Tex. June 8, 2009) (holding that "[t]here is no requirement that Plaintiff prove 'sole causation'" in a *Brady*-based § 1983 case); *Thompson*, Doc. No. 140 at 28 (noting, in jury instructions in a *Brady*-based § 1983 case, that proof of sole causation is not necessary); *see also Alvarez v. City of Brownsville*, No. 11-CV-78, 2014 WL 12600164, at *9 n.7 (S.D. Tex. June

(D.C. Cir. 2005); *Sams v. City of Milwaukee, Wis.*, 117 F.3d 991, 994 (7th Cir. 1997); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 833 n. 9 (1985) (Brennan, J., concurring) (recognizing the application of "[o]rdinary principles of causation" to *Monell* claims).

19, 2014), *rev'd on other grounds*, 904 F.3d 382 (5th Cir. 2018) (noting that, even if a third party failed to act to "possibly avoid[] a *Brady* violation, . . . the fact that it did not do so does not negate municipal liability for a policy that causes a constitutional violation"). Accordingly, Mr. Jones's trial counsel's performance is irrelevant to the cause-in-fact and proximate cause analysis.

### B.  Alleged Ineffective Assistance of Counsel Is Not a Superseding Cause Sufficient to Relieve OPDA of Liability

If Mr. Jones establishes that OPDA's *Brady* violation was a cause of his *Brady*-tainted wrongful convictions and resulting injuries, Mr. Cannizzaro cannot avoid liability by pointing to another, foreseeable cause of those injuries. That is because § 1983 claims are construed against the "background of tort liability that makes a person liable for the natural consequences of his actions." *See Murray v. Earle*, 405 F.3d 278, 290 (5th Cir. 2005) (citing *Monroe v. Pape*, 365 U.S. 167, 187 (1961) (overruled on other grounds)). As a result, defendants in § 1983 cases are liable for the foreseeable consequences of their tortious acts, *see, e.g.*, *id.* at 292–93 & n.51 (collecting cases); *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 n.8 (1979) (noting that "[a] tortfeasor is not relieved of liability for the entire harm he caused just because another's negligence was also a factor in effecting the injury"), and they may escape liability *only* if they identify an independent, unforeseeable superseding cause of the claimant's injuries, *see, e.g.*, *Staub*, 562 U.S. at 420 (noting that "[a] cause can be thought 'superseding' only if it is a cause of independent origin that was not foreseeable" (citation omitted)); *Williams*, 797 F.3d at 298 & n.76 (Elrod, J., concurring) (applying the superseding cause doctrine in a § 1983 case, and noting that the doctrine "cuts off the liability of an actor when the plaintiff's injury was actually brought about by a later cause of independent origin that was not foreseeable" (citation omitted)); *Whitlock*, 682 F.3d at 584 ("A superseding cause is something culpable that intervenes

. . . , some action of a third party that makes the plaintiff's injury an unforeseeable consequence of the defendant's negligence." (omission in original and citation omitted)) (collecting cases).

Simply put, under Fifth Circuit precedent and several court opinions concerning the very question at issue here, ineffective assistance cannot constitute a superseding cause sufficient to relieve a *Brady* tortfeasor of liability for injuries resulting from a *Brady*-tainted conviction.

As an initial matter, in the Fifth Circuit, intervening acts of a third party cannot constitute a superseding cause when (1) the tortfeasor "should have realized that a third person might so act," (2) the third-party act "would not [be] regard[ed] as highly extraordinary" by a reasonable person, or (3) "the intervening act is a normal consequence of a situation created by the [tortfeasor's] conduct and the manner in which it is done is not extraordinarily negligent." *E.g.*, *Becker v. Tidewater, Inc.*, 586 F.3d 358, 372 (5th Cir. 2009) (citation omitted). Each of these factors *independently* bars Mr. Cannizzaro from asserting ineffective assistance as a defense to liability.

*First*, OPDA "should have realized" when it maintained a deficient *Brady* policy, practice, or custom that defendants' attorneys who lacked access to all favorable information might perform inadequately. Indeed, contrary to being an unforeseeable event in a *Brady*-tainted prosecution, ineffective assistance of counsel is instead a "natural and foreseeable consequence[]" of a *Brady* violation. *See Nnodimele v. Derienzo*, No. 13-CV-3461, 2016 WL 3561708, at *12 (E.D.N.Y. June 27, 2016) (finding that ineffective assistance was not a superseding cause in a *Brady*-based § 1983 action, and excluding evidence and argument concerning the same, because "it is reasonably foreseeable that . . . withholding evidence . . . could set in motion" a weakened defense). That is certainly the case here, where the Fourth Circuit concluded in its *Brady* ruling that the information OPDA suppressed in Mr. Jones's case could have been used to mount a more effective defense. *See, e.g.*, *Jones*, 151 So. 3d at 796, 798, 800–02.

*Second*, even assuming that Mr. Jones's trial counsel was ineffective (which, according to courts, he was not), a reasonable person would not consider that fact to be "highly extraordinary." The Fifth Circuit has made clear that the bar for a "highly extraordinary" event is extremely high—and that bar cannot be met here, given the foreseeability that a defense attorney deprived of favorable information might perform deficiently. *Compare Nnodimele*, 2016 WL 3561708, at *12 (deeming ineffective assistance to be a "natural and foreseeable consequence[]" of a *Brady* violation); *with Black v. United States*, 441 F.2d 741, 745–46 (5th Cir. 1971) (finding that a pilot's knowing decision to fly into a visible storm was "so highly extraordinary" as to be a superseding cause of his passengers' deaths).

*Third*, even assuming deficient performance (which, again, courts have rejected), such performance would be far more akin to "a normal consequence" of OPDA's deficient *Brady* policy, practice, or custom than a "highly extraordinary occurrence," such that counsel's performance could not be considered "extraordinarily negligent." *See Nnodimele*, 2016 WL 3561708, at *12. Thus, under each of the factors set out by the Fifth Circuit, ineffective assistance of counsel cannot constitute a superseding cause of a *Brady*-tainted conviction.

Moreover, the Fifth Circuit has repeatedly held that an independent intermediary *cannot* act as a superseding cause if the initial tortfeasor withheld relevant information from the intermediary. *See, e.g.*, *Hand v. Gary*, 838 F.2d 1420, 1427–28 (5th Cir. 1988). While this doctrine has typically been applied to intervening decision-makers such as judges and grand juries, *see id.*, the animating principle—that an initial tortfeasor cannot escape responsibility when an intermediary's conduct was hampered by deception—applies with equal force to a defense attorney hampered by a prosecutor's suppression of *Brady* material. Accordingly, under Fifth Circuit precedent, Mr. Cannizzaro cannot point to alleged ineffective assistance to escape liability.

Notably, that outcome is consistent with the several courts that have already considered this very question—and determined that ineffective assistance is *not* a legally cognizable defense to a *Brady*-based § 1983 claim. Specifically, in *Nnodimele v. Derienzo*, the court excluded evidence and argument concerning ineffective assistance in a *Brady*-based § 1983 case, based on its finding that ineffective assistance is a "natural and foreseeable consequence[]" of a *Brady* violation, "rather than [a] superseding cause[]," because "intervening acts that were neither independent of, nor uninfluenced by, the alleged misconduct fail to break the chain of causation." 2016 WL 3561708, at *12–13. Similarly, in *Rodriguez v. City of Houston*, a court in this circuit granted the plaintiff's motion for partial summary judgment in a *Brady*-based § 1983 case, and dismissed the defendant's ineffective assistance defense, because "[i]f the [defendant was] found, via municipal customary policy, to have directly caused a violation of Plaintiff's constitutional rights that then caused Plaintiff's purported injuries, any failure by [the Plaintiff's attorney] to effectively expose those violations does not break the chain of causation between the [defendant's] conduct and Plaintiff's injury." 2009 WL 10679669, at *20. And, in *Sanford v. Russell*, the court held that "no circumstances of the criminal proceedings, including alleged ineffective assistance by plaintiff's trial counsel, severed the causal link between the defendants' [*Brady* violation and] the plaintiff's conviction." No. 17-CV-13062, Doc. No. 330 at 4–5 (E.D. Mich. June 30, 2019). As a result, the court excluded evidence and argument concerning ineffective assistance. *Id.*

In sum, under Fifth Circuit precedent, and in accordance with the several cases rejecting ineffective assistance defenses in *Brady*-based § 1983 actions, Mr. Cannizzaro cannot—as a matter of law—assert ineffective assistance of counsel as a superseding cause of Mr. Jones's injuries in order to relieve himself of liability for those injuries. Thus, as a matter of law, Mr. Jones's trial

counsel's performance cannot break the chain of causation between OPDA's violation of Mr. Jones's *Brady* rights and his *Brady*-tainted wrongful convictions and resulting injuries.

*     *     *

Because Mr. Jones is not required to prove sole causation, and because ineffective assistance of counsel cannot be a superseding cause, whether Mr. Jones's trial counsel was ineffective is irrelevant to the question of liability, and Mr. Cannizzaro should be precluded from introducing evidence and argument concerning ineffective assistance as a defense to liability. *See* Fed. R. Evid. 402. Accordingly, Mr. Jones's motion *in limine* to preclude the admission of evidence and argument concerning alleged ineffective assistance should be granted.

**III.  Evidence and Argument Concerning Alleged Ineffective Assistance of Counsel and the Conduct of Prison Officials and Inmates Cannot Be Offered as a Defense to Damages, Because Comparative Fault Principles Do Not Apply to § 1983 Claims**

If Mr. Cannizzaro is found liable for Mr. Jones's *Brady*-tainted, wrongful convictions and resulting injuries, Mr. Cannizzaro will be liable for *all* of the damages OPDA proximately caused to Mr. Jones—regardless of whether third-party conduct also contributed to those damages. *See, e.g.*, *Edmonds*, 443 U.S. at 260 n.8 (noting that "[a] tortfeasor is not relieved of liability for the entire harm he caused just because another's negligence was also a factor in effecting the injury. Nor are the damages against him diminished." (citation omitted)). That is because the doctrine of comparative fault (under which damages are apportioned among tortfeasors on a percentage basis according to relative fault) does not apply to § 1983. *See, e.g.*, *Burge v. Par. of St. Tammany*, No. 91-CV-2321, 1995 WL 317125, at *3 (E.D. La. May 24, 1995); *see also Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 168 (5th Cir. 1985) (affirming "joint and several judgment" in a § 1983 case). Accordingly, the conduct of Mr. Jones's trial counsel and prison officials or inmates is also irrelevant to the quantum of damages for which Mr. Cannizzaro may be liable.

Specifically, because § 1983 is silent as to the division of damages among tortfeasors, courts may look to state law to provide the appropriate rule, *unless* state law conflicts with federal law or policies. *See, e.g.*, 42 U.S.C. § 1988(a); *Burnett v. Grattan*, 468 U.S. 42, 47 (1984) (Rehnquist, J., concurring) (stating that, while federal courts may look to state law when federal civil rights statutes "do[] not provide a rule of decision," such laws apply only when they are not "inconsistent with the Constitution of the laws of the United States"); *Lefton v. City of Hattiesburg*, 333 F.2d 280, 284 (5th Cir. 1964) (similar). The policies underlying § 1983 are "deterrence and compensation." *See, e.g.*, *McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 736 n.4 (6th Cir. 2002) (citing *Board of Regents v. Tomanio*, 446 U.S. 478, 489 (1980)). Thus, state laws that conflict with those policies—including state comparative fault laws, such as Louisiana's, *see* La. Civ. Code art. 2323—"must be disregarded [as] inconsistent with [those] polic[ies]." *See McHugh*, 37 F. App'x at 736 n. 4 (rejecting application of state comparative fault law to § 1983 claim).

The Fifth Circuit engaged in a similar analysis in *Hinshaw v. Doffer*. *See* 785 F.2d 1260, 1268–69 (5th Cir. 1986). In that case, the Fifth Circuit rejected the application of comparative fault principles in a § 1983 case and held that the defendant was liable for all damages, even though the jury had found him to be only 65% at fault. *See id.* While the state law in *Hinshaw* itself called for joint and several liability, the court also reached its ruling on the ground that it was "require[d] . . . to determine whether the remedy provided by the state is consistent with the Constitution," and thus assessed whether the state law satisfied this requirement. *Id.* Through that assessment, the court concluded that joint and several liability did "comport[] with the goals of section 1983," because it would allow the plaintiff to "receiv[e] full compensation for his injuries" and "prevent[] abuses by those acting under color of state law"—the twin aims of § 1983. *Id.* (citing *Robertson v. Wegmann*, 436 U.S. 584, 591 (1978)). In keeping with *Hinshaw*, courts in the Fifth Circuit have

*rejected* the application of state comparative fault laws to § 1983 claims, and instead required joint and several liability, to satisfy the policy goals of § 1983. *See Moran v. Summers*, No. 15-CA-769, 2016 WL 1610611, at *1–2 (W.D. Tex. Apr. 20, 2016) (declining to apply Texas comparative fault law to apportion damages between a municipal defendant, whose jail staff left a prisoner "in a confused and unsteady state" at a hospital door, and a non-party, who hit the plaintiff with a vehicle, because shifting liability to the non-party would prevent a full recovery and "diminish[] the deterrent effect of § 1983," "outcomes [that] are in direct conflict with the policies underlying federal civil rights claims"); *Mims v. Dallas Cty.*, No. 04-CV-2754, 2006 WL 398177, at *6–7 (N.D. Tex. Feb. 17, 2006) (declining to apply Texas comparative fault law to apportion damages between municipal defendants and a non-party because "benefit[ting] the [defendants], the parties whose conduct is regulated by [§ 1983], not plaintiffs, the parties protected by the statute" would run counter to the policy goals of § 1983); *see also Burge*, 1995 WL 317125, at *3 (noting that "comparative fault is not a defense to a civil rights claim under 42 U.S.C. § 1983").

Numerous courts in other circuits have reached the same conclusion. *See, e.g.*, *Goudy v. Cummings*, 922 F.3d 834, 843 (7th Cir. 2019) ("Section 1983 liability must be understood against the background of the ordinary principles of tort law, where joint and several liability is the norm."); *Cordova v. City of Albuquerque*, 816 F.3d 645, 659 (10th Cir. 2016) ("Comparative negligence is not applied in suits for violations of federal constitutional rights."); *McHugh*, 37 F. App'x at 736 n.4 ("Comparative negligence . . . does not apply to damages for federal constitutional rights violations."); *Nichols v. Knox Cty., Tennessee*, No. 11-CV-417, 2016 WL 9149585, at *2 (E.D. Tenn. June 13, 2016) (similar); *Jackson v. City of White Plains*, No. 05-CV-0491, 2016 WL 234855, at *5 (S.D.N.Y. Jan. 19, 2016) (similar); *Blair v. Harris*, 993 F. Supp. 2d 721, 727 (E.D. Mich. 2014) (similar); *Miller v. Schmitz*, No. 12-CV-0137, 2013 WL 5754945, at

*5 (E.D. Cal. Oct. 23, 2013) (similar); *Fox ex rel. Fox v. Barnes*, No. 09-CV-5453, 2013 WL 2111816, at *7 (N.D. Ill. May 15, 2013) ("[U]nder § 1983, liability is joint and several, rather than comparative, so there is ordinarily no need to allocate fault among the defendants.").

All of these cases compel the conclusion that Mr. Cannizzaro cannot shift responsibility for Mr. Jones's damages to non-parties, including Mr. Jones's trial counsel and prison officials or inmates, because doing so would upend the policy goals of § 1983 by denying Mr. Jones a full recovery and minimizing the deterrent effect of any award. Because conduct by Mr. Jones's trial counsel and prison officials or inmates is thus irrelevant to the question of Mr. Cannizzaro's responsibility for Mr. Jones's damages, Mr. Cannizzaro's Fifth Affirmative Defense is irrelevant to the issues to be tried in this case and Mr. Jones's motion for partial summary judgment seeking its dismissal should be granted, as should Mr. Jones's motion *in limine* to preclude the admission of evidence and argument concerning ineffective assistance and prison officials' and inmates' conduct as a defense to damages.

## CONCLUSION

For the foregoing reasons, Mr. Jones's respectfully requests that the Court enter an order granting his (1) motion *in limine* to preclude the admission of evidence and argument concerning his trial counsel's alleged ineffective assistance, (2) motion *in limine* to preclude the admission of evidence and argument concerning prison officials' and inmates' conduct as a defense to damages, and (3) motion for partial summary judgment, seeking dismissal of Mr. Cannizzaro's Fifth Affirmative Defense.

Respectfully submitted,

*/s/ Erin Monju*
Erin Monju* (N.Y. 5160908)
Alan Vinegrad* (T.A.) (N.Y. 1967140)
Benjamin Cain* (C.A. 325122)
Mary Swears* (N.Y. 5677687)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, N.Y. 10018
Phone:  (212) 841-1000
Email: avinegrad@cov.com,
        emonju@cov.com,
        bcain@cov.com,
        mswears@cov.com

*with*

Mark A. Cunningham (La. 24063)
JONES WALKER LLP
201 St. Charles Avenue, Ste. 5100
New Orleans, L.A. 70170
Phone:  (504) 582-8536
Email: mcunningham@joneswalker.com

*and*

Nina Morrison* (N.Y. 3048691)
INNOCENCE PROJECT
40 Worth Street
Suite 701
New York, N.Y.  10013
Phone: (212) 364-5340
Email: nmorrison@innocenceproject.org

*Admitted pro hac vice*

*Attorneys for Plaintiff Robert Jones*

20

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served upon all counsel of record by using the CM/ECF system, this 27th day of January, 2020.

*/s/ Erin Monju*