UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT JONES, | : | CIVIL ACTION NO. 2:18-CV-0503-JTM-JCW |
| | : | |
| Plaintiff | : | SECTION H(2) |
| | : | |
| v. | : | JUDGE JANE TRICHE MILAZZO |
| | : | |
| LEON CANNIZZARO, JR., and | : | MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |
| ABC INSURANCE COMPANIES 1-10, | : | |
| | : | |
| Defendants. | : | **JURY TRIAL DEMANDED** |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED ON ELEVENTH AMENDMENT (SOVEREIGN) IMMUNITY**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

LEGAL STANDARD...................................................................................................... 1

BACKGROUND .............................................................................................................. 1

ARGUMENT.................................................................................................................... 4

I.  Mr. Cannizzaro's Sovereign Immunity Defense is Foreclosed by Binding Fifth Circuit Precedent............................................................................................... 4

II. Mr. Cannizzaro Has Waived the Sovereign Immunity Defense as a Result of His Dilatory Tactics and Gamesmanship ................................................................. 9

III. If the Court Denies Mr. Cannizzaro's Motion and Mr. Cannizzaro Seeks an Interlocutory Appeal, the Court Should Certify the Appeal as Frivolous and Dilatory .............................................................................................................. 12

CONCLUSION............................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Apostol v. Gallion*,
   870 F.2d 1335 (7th Cir. 1989) .................................................................................................. 12

*BancPass, Inc. v. Highway Toll Admin., L.L.C.*,
   863 F.3d 391 (5th Cir. 2017) ............................................................................................. 12, 13

*Behrens v. Pelletier*,
   516 U.S. 299 (1996) .................................................................................................................. 12

*Brown v. Dep't of Pub. Safety & Corr. Servs.*,
   383 F. Supp. 3d 519 (D. Md. 2019) ........................................................................................ 11

*Burge v. Par. of St. Tammany*,
   187 F.3d 452 (5th Cir. 1999) ................................................................................................ 4, 6

*Burrell v. Adkins*,
   94 F. App'x 232 (5th Cir. 2004) .............................................................................................. 6

*Clark v. Tarrant Cty., Tex.*,
   798 F.2d 736 (5th Cir. 1986) .................................................................................................... 5

*Esteves v. Brock*,
   106 F.3d 674 (5th Cir. 1997) ......................................................................................... 5, 6, 7, 8

*Gruver v. Louisiana Through Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*,
   No. 18-CV-772, 2019 WL 6245421 (M.D. La. Nov. 22, 2019) ............................................ 13

*Hill v. Blind Indus. & Servs.*,
   179 F.3d 754 (9th Cir. 1999) .................................................................................................. 11

*Hudson v. City of New Orleans*,
   174 F.3d 677 (5th Cir. 1999) ............................................................................................ passim

*Jason v. Par. of Plaquemines*,
   No. 16-CV-2728, 2017 WL 993152 (E.D. La. Mar. 15, 2017) ............................................ 7, 8

*Johnson v. Bogalusa City*,
   No. 10-CV-3444, 2013 WL 4508058 (E.D. La. Aug. 22, 2013) .............................................. 9

*Johnson v. Louisiana*,
   No. 09-CV-55, 2010 WL 996475 (W.D. La. Mar. 16, 2010) .................................................. 8

*Kermode v. Univ. of Mississippi Med. Ctr.*,
   496 F. App'x 483 (5th Cir. 2012) ....................................................................................... 9, 10

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia*,
   535 U.S. 613 (2002) .................................................................................................................. 10

*Lefebure v. Boeker*,
   390 F. Supp. 3d 729 (M.D. La. 2019) .................................................................................. 7, 8

*McMillian v. Monroe County*,
    520 U.S. 781 (1997) ........................................................................................................ 5

*Meyers ex rel. Benzing v. Texas*,
    410 F.3d 236 (5th Cir. 2005) ..................................................................................... 9, 10

*Neinast v. Texas*,
    217 F.3d 275 (5th Cir. 2000) ........................................................................................... 9

*Providence Behavioral Health v. Grant Rd. Pub. Util. Dist.*,
    902 F.3d 448 (5th Cir. 2018) ........................................................................................... 5

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993) ........................................................................................................ 4

*Skelton v. Camp*,
    234 F.3d 292 (5th Cir. 2000) ...................................................................................... 1, 5

*Spikes v. Phelps*,
    131 F. App'x 47 (5th Cir. 2005) ...................................................................................... 7

*Swint v. Chambers Cty. Comm'n*,
    514 U.S. 35 (1995) .......................................................................................................... 5

*Union Pac. R. Co. v. Louisiana Pub. Serv. Comm'n*,
    662 F.3d 336 (5th Cir. 2011) ......................................................................................... 10

*United States v. Dunbar*,
    611 F.2d 985 (5th Cir. 1980) ......................................................................................... 12

*Wisconsin Dep't of Corr. v. Schacht*,
    524 U.S. 381 (1998) ........................................................................................................ 9

**Rules**

Fed. R. Civ. P. 56 ...................................................................................................................... 1

**Constitutional Provisions**

La. Const. art. 5, § 26 ...................................................................................................... 5, 6, 7

**Other Authorities**

Cheney C. Joseph, Jr., *Capital Sentencing Hearing—Plain Error*, 41 La. L. Rev. 625 (1981) .... 9

## INTRODUCTION

After more than two years of active and extensive litigation, Defendant Leon Cannizzaro, Jr. ("Mr. Cannizzaro") now asserts—for the first time—that Plaintiff Robert Jones's ("Mr. Jones") claim against him should be dismissed on the basis of Eleventh Amendment, or sovereign, immunity. Mr. Cannizzaro's motion is foreclosed by binding Fifth Circuit precedent and smacks of a last-ditch effort to delay trial. This motion is also inexcusably tardy. His motion, therefore, must be denied. Further, if Mr. Cannizzaro then, as expected, pursues an interlocutory appeal, Mr. Jones respectfully requests that the Court certify the appeal as frivolous and dilatory, and retain jurisdiction so the parties may proceed to trial as scheduled.

## LEGAL STANDARD

A motion for summary judgment may be granted only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party asserting an Eleventh Amendment defense bears the burden of establishing its entitlement to sovereign immunity. *Skelton v. Camp*, 234 F.3d 292, 297 (5th Cir. 2000).

## BACKGROUND

Mr. Jones filed this suit over two years ago, on January 16, 2018. *See* Doc. No. 1. Two months later, Mr. Cannizzaro filed a motion to dismiss the complaint, under Federal Rule of Civil Procedure 12(b)(6)—solely on the grounds of prescription and absolute and qualified immunity. *See* Doc. No. 14. The Court denied that motion after argument, but Mr. Cannizzaro pressed his prescription argument again in a motion for reconsideration and filed a motion for leave to appeal, both of which the Court denied. *See* Doc. Nos. 30–32, 51. On June 27, 2018, Mr. Cannizzaro filed his answer—nowhere asserting a sovereign immunity defense. *See* Doc. No. 47.

In the year-and-a-half since then, the parties have engaged in extensive discovery. Specifically, the parties have reviewed and produced over *128,000* pages of documents. *See* Decl. of Erin Monju, dated Feb. 12, 2020 ("Monju Decl."), at ¶ 3. They have served and responded to nearly *150* Interrogatories, Requests for Production, and Requests for Admission, with over *100* subparts concerning dozens of cases prosecuted by the Orleans Parish District Attorney's office ("OPDA") involving the suppression of favorable evidence. *Id.* at ¶ 4. They have overseen the preparation of and served *8* expert reports. *Id.* at ¶ 5. They have conducted *8* expert depositions and *24* fact witness depositions—including depositions of Mr. Jones; Mr. Cannizzaro; former Orleans Parish District Attorney Harry Connick, Sr.; former New Orleans Police Department detectives; current and former OPDA attorneys and staff; a former Orleans Parish Criminal Court judge; a crime victim; Mr. Jones's family members and attorneys; and Lester Jones. *Id.* at ¶ 6. Those depositions took place across the country—in New Orleans; New York City; Fairfax, Virginia; Atlanta, Georgia; Naples, Florida; and the Louisiana State Penitentiary. *Id.* at ¶ 7. Yet, as is evident from his motion, Mr. Cannizzaro did not develop a *single* fact in discovery that is relevant to this motion. *See* Doc. No. 223-2 (asserting, in his statement of uncontested material facts, the sole fact that OPDA prosecuted Mr. Jones under state law).

In addition, the parties have fully briefed and submitted *12* motions for decision by this Court or Magistrate Judge Joseph Wilkinson, prior to the additional *eight* substantive motions that have recently been filed. *See* Doc. Nos. 14, 31, 32, 52, 72, 74, 83, 118, 138, 145, 150, 159, 183, 216, 217, 222, 225, 226, 227, 230. Those prior motions included the aforementioned motions to dismiss, for reconsideration, and for leave for appeal; three motions for partial summary judgment; a motion *in limine*; four discovery motions; and one motion appealing a discovery order. *See id.* Six of those motions were argued orally before this Court or Magistrate Judge Wilkinson. *See*

2

Doc. Nos. 30, 60, 99, 115, 201. Notably, Mr. Cannizzaro filed two of the aforementioned partial summary judgment motions, in which he requested dispositive rulings that OPDA had not violated Mr. Jones's *Brady* rights after his convictions or in connection with his guilty pleas. *See* Doc. Nos. 118, 145. Those motions were both denied. *See* Doc. Nos. 182, 187. Yet, despite filing these partial summary judgment motions in June and September 2019, respectively, Mr. Cannizzaro waited until January 2020—just 11 weeks before trial—to file the instant motion. *See* Doc. No. 223-1 ("Br.").

While trial in this matter was initially scheduled for October 7, 2019, *see* Doc. No. 50, undersigned counsel sought to accelerate that trial date due to a scheduling conflict. Mr. Cannizzaro's counsel objected that an acceleration would not be possible, and the parties agreed to a new trial date of January 13, 2020. *See* Doc. No. 116. As the end of fact discovery approached, in August 2019, Mr. Cannizzaro filed a motion seeking to postpone the trial to permit him additional time to complete discovery. *See* Doc. No. 140. The Court granted Mr. Cannizzaro's motion and rescheduled the trial for April 13, 2020—but only after Mr. Cannizzaro's counsel unsuccessfully pressed Mr. Jones's counsel to accept a trial date in June 2020. *See* Doc. No. 144; Monju Decl. at ¶ 8. Finally, during the parties' December 20, 2019 status conference, Mr. Cannizzaro's counsel again expressed skepticism that discovery could be completed in time for the April 13, 2020 trial, but the Court made explicit that the trial date would not be moved. *See* Doc. No. 207; Monju Decl. at ¶ 9.

Despite this intensive litigation over the past two years, Mr. Cannizzaro has only now filed a motion that (1) required *no* factual development, *see* Doc. No. 223-2, (2) asserts a sovereign immunity defense that has been rejected by the Fifth Circuit and district courts in Louisiana at least *nine* times, *see supra* Part I, pp. 4–9, and (3) seeks to re-litigate the *same* arguments OPDA itself

3

already *raised* and *lost* before the Fifth Circuit in a prior case, *see id*. Yet, as Mr. Cannizzaro is presumably aware, denial of his motion may permit an immediate interlocutory appeal. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993). Thus, while Mr. Cannizzaro has almost certainly expended hundreds of thousands or more of taxpayer dollars defending Mr. Jones's case to this point, Mr. Jones's counsel have spent thousands of hours and substantial sums in costs and expert fees developing and pressing the merits of his claim, and both this Court and Magistrate Judge Wilkinson have expended significant resources overseeing this case for two years, Mr. Cannizzaro now seeks, on the eve of trial, to force the parties into an extended appeal, on a meritless defense, before the parties can try this case before a jury.

## ARGUMENT

Mr. Cannizzaro's motion must be denied, for two reasons. First, by his own admission, Mr. Cannizzaro's motion directly conflicts with Fifth Circuit precedent that the Court is bound to follow. Second, Mr. Cannizzaro has waived any sovereign immunity defense as a result of his delay and gamesmanship in filing the motion. For these same reasons, if the Court denies the motion and Mr. Cannizzaro seeks an interlocutory appeal, the Court should certify the appeal as frivolous and dilatory, and retain jurisdiction of this case so that the parties may proceed to trial.

**I.    Mr. Cannizzaro's Sovereign Immunity Defense is Foreclosed by Binding Fifth Circuit Precedent**

Mr. Cannizzaro "acknowledges" that his motion is "contrary to" the Fifth Circuit's holding in *Hudson v. City of New Orleans*, 174 F.3d 677 (5th Cir. 1999). *See* Br. at 1. But his begrudging concession vastly understates the weight of this precedent. As an initial matter, in *Hudson*, the Fifth Circuit expressly held that OPDA is not entitled to sovereign immunity. *See Hudson*, 174 F.3d at 691; *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) (noting that *Hudson*

4

sets forth this rule in the Fifth Circuit).  Because *Hudson* provides the binding rule of law here, the Court must deny Mr. Cannizzaro's motion on that ground alone.

However, it also bears mention that OPDA raised the *same* arguments in *Hudson* that Mr. Cannizzaro raises here—and those arguments were rejected.  Specifically, the gravamen of Mr. Cannizzaro's motion is that the *Hudson* court erred by failing to adopt the functional analysis in *McMillian v. Monroe County*, 520 U.S. 781 (1997), which he asserts is similar to the analysis the Fifth Circuit conducted in *Esteves v. Brock*, 106 F.3d 674 (5th Cir. 1997).  *See* Br. at 2–7.  But the *Hudson* court expressly rejected that argument—on the ground that *McMillian* governs county liability under 42 U.S.C. § 1983, *not* sovereign immunity under the Eleventh Amendment—and distinguished *Esteves* on the same ground.  *See Hudson*, 174 F.3d at 681 n.1; *see also Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 43 (1995) (distinguishing liability and immunity); *Skelton v. Camp*, 234 F.3d at 297 (same).  Instead, the *Hudson* court applied the same six-factor test that the Fifth Circuit has used to assess arm-of-the-state sovereign immunity since 1986.  *See Hudson*, 174 F.3d at 679–91 (applying the six-factor test of *Clark v. Tarrant Cty., Tex.*, 798 F.2d 736 (5th Cir. 1986)); *see also, e.g.*, *Providence Behavioral Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 456 (5th Cir. 2018) ("To determine whether a unit of government belongs to state or local government, we employ the six-factor test developed in *Clark v. Tarrant Cty., Tex.* . . . .").  In addition, while Mr. Cannizzaro makes much of the alleged similarity between a single sentence of Texas and Louisiana law, *see* Br. at 4 (citing LA. CONST. art. 5, § 26)—while altogether ignoring the extensive survey of Louisiana law the court conducted in *Hudson*, *see Hudson*, 174 F.3d at 683–91—he conspicuously fails to acknowledge that the Fifth Circuit considered that very law in holding that OPDA was *not* entitled to sovereign immunity, *see id.* at 683 (discussing LA. CONST. art. 5, § 26).  Not only were OPDA's arguments rejected by the Fifth Circuit panel, OPDA also

5

lost its subsequent motion for rehearing *en banc* and its petition for a writ of *certiorari* to the United States Supreme Court was denied. *See Hudson*, 174 F.3d 677; Ex. 1 to Monju Decl. (*Hudson v. Hughes*, No. 96-30964 (5th Cir.), docket entries at June 3 and 17, Sept. 23, and Nov. 19, 1999).

Further, the *Hudson* court is not alone. The Fifth Circuit has reaffirmed the ruling in *Hudson* at least *three* times—*twice* considering and rejecting the *same* arguments Mr. Cannizzaro makes here. First, in *Burge v. Parish of St. Tammany*, the Fifth Circuit held that the St. Tammany Parish district attorney's office was not entitled to sovereign immunity because "[t]he rule in this circuit is that a Louisiana district attorney, sued in his or her official capacity, is a local government official who is not entitled to Eleventh Amendment immunity." 187 F.3d at 466, 469 (5th Cir. 1999).

Second, in *Burrell v. Adkins*, the Fifth Circuit affirmed the district court's denial of sovereign immunity to the Union Parish district attorney "for the reasons stated by the district court," which had adopted the magistrate's opinion that *Esteves* did not compel a finding of immunity because "the *Esteves* case interprets Texas law, not Louisiana law, and is therefore not controlling in this case." *See* Exs. 2–3 to Monju Decl. (*Burrell*, No. 01-CV-2679, Doc. No. 65, at 4–5 (W.D. La. Nov. 26, 2002), *report and recommendation adopted by*, Doc. No. 90, at 1–2 (W.D. La. Mar. 31, 2003), *aff'd in relevant part*, 94 F. App'x 232 (5th Cir. 2004)); *see also* Ex. 4 to Monju Decl. (*Burrell*, No. 03-30487, 2003 WL 25656031, Br. for Def.-Appellant, at 10–15 (5th Cir. Oct. 22, 2003) (Union Parish district attorney's brief, arguing for sovereign immunity on the basis of, *inter alia*, *Esteves* and LA. CONST. art. 5, § 26)). The Fifth Circuit denied a petition for rehearing *en banc*. *See* Ex. 5 to Monju Decl. (*Burrell*, No. 03-30487 (5th Cir.), docket entry at June 8, 2004).

6

Third, in *Spikes v. Phelps*, the Fifth Circuit affirmed a decision by the district court rejecting these same arguments by the Winn Parish district attorney's office, on the ground that "*Esteves* should be viewed as an interpretation of Texas law." 131 F. App'x 47, 48–49 (5th Cir. 2005) (unpublished). The Fifth Circuit made clear that "this court has held, contrary to *Esteves*, and based on Louisiana law, that a parish district attorney is not entitled to Eleventh Amendment immunity." *Id.* at 49; *see also* Ex. 6 to Monju Decl. (*Spikes*, No. 04-30224, 2004 WL 3589526, Corrected Brief for Def.-Appellant, at 23–27 (5th Cir. July 6, 2004) (Winn Parish district attorney's office's brief arguing for sovereign immunity based on, *inter alia*, *Esteves* and LA. CONST. art. 5, § 26)); Ex. 7 to Monju Decl. (*Spikes*, No. 03-CV-642, Doc. No. 79, at 8–10 (W.D. La. Feb. 23, 2004) (district court order rejecting these arguments and citing, *inter alia*, *Hudson*)). The Fifth Circuit again denied petitions for rehearing and rehearing *en banc*. *See* Ex. 8 to Monju Decl. (*Spikes*, No. 04-30224 (5th Cir.), docket entry at July 11, 2005).

Federal district courts in Louisiana have also repeatedly rejected the same arguments. *See Lefebure v. Boeker*, 390 F. Supp. 3d 729, 758 (M.D. La. 2019) (rejecting 20th Judicial District district attorney's "strained attempt at arguing that an official capacity claim against him is barred by Eleventh Amendment sovereign immunity" based on *Esteves*, because "the Fifth Circuit has held to the contrary in several cases" and "[t]he law is well-settled that district attorney offices in Louisiana are local government entities and thus not entitled to Eleventh Amendment sovereign immunity"), *appeal docketed sub nom.*, *Lefebure v. D'Aguila*, No. 19-90032 (5th Cir.); Ex. 9 to Monju Decl. (*Lefebure*, No. 17-CV-1791, Doc. No. 57-1, at 19–20 & nn.11–12 (M.D. La. July 24, 2018) (20th Judicial District district attorney's motion to dismiss, arguing for sovereign immunity on the basis of, *inter alia*, *Esteves* and LA. CONST. art. 5, § 26)); *Jason v. Par. of Plaquemines*, No. 16-CV-2728, 2017 WL 993152, at *4–5 (E.D. La. Mar. 15, 2017) (rejecting 25th Judicial District

7

district attorney's assertion of sovereign immunity based on *Esteves* as "meritless" because *Esteves* "was based on the treatment of district attorneys' offices under Texas law," such that "there is no conflict between [*Esteves*] and *Hudson*, and *Hudson* controls"); Ex. 10 to Monju Decl. (*Jason*, No. 16-CV-2728, Doc. No. 44-1 at 13 nn.6–7 (E.D. La. Jan. 4, 2017) (25th Judicial District district attorney's motion to enforce settlement or, in the alternative, to dismiss, asserting a sovereign immunity argument nearly identical to the one later raised and rejected in *Lefebure*)); *Johnson v. Louisiana*, No. 09-CV-55, 2010 WL 996475, at *10 & n.18 (W.D. La. Mar. 16, 2010) (rejecting 11th Judicial District district attorney's sovereign immunity argument under *Esteves* because "it is now well-established that Louisiana district attorneys are considered representatives of the state's political subdivisions rather than of the state itself and are not entitled to Eleventh Amendment immunity"); Ex. 11 to Monju Decl. (*Johnson*, No. 09-CV-55, Doc. No. 24-1, at 18–19 & nn.14–15 (W.D. La. July 13, 2009) (11th Judicial District district attorney's motion to dismiss, asserting a sovereign immunity argument nearly identical to the one later raised and rejected in *Jason* and *Lefebure*)).

Further, Mr. Cannizzaro does not cite any intervening change in law or fact that would support a departure from this uniform and overwhelming precedent. Indeed, the *only* development Mr. Cannizzaro even weakly gestures toward is this Court's finding, in the context of Mr. Jones's motion for partial summary judgment seeking recognition that the Louisiana Fourth Circuit Court of Appeal's *Brady* ruling is *res judicata*, that OPDA was in privity with Mr. Jones's prison custodian for purposes of post-conviction litigation. *See* Br. at 7 (citing Doc. No. 117 at 6–7). But that finding changed nothing. As the Court observed in its ruling, it is a mere "'fiction that the custodian is the opposing party'" because "'the prosecutor who sought and secured the challenged conviction is really the opposing party.'" *See* Doc. No. 117 at 7 (quoting Cheney C. Joseph, Jr.,

8

*Capital Sentencing Hearing—Plain Error*, 41 LA. L. REV. 625, 635 (1981)); *see also Johnson v. Bogalusa City*, No. 10-CV-3444, 2013 WL 4508058, at *5 (E.D. La. Aug. 22, 2013) (same). Mr. Cannizzaro's assertion that this fictional pleading construct—which long pre-dates *Hudson*— "significantly tilts the balance" toward sovereign immunity, *see* Br. at 7, is specious and should be rejected.

Accordingly, and while the merits of Mr. Cannizzaro's motion are flawed for additional reasons not addressed in this memorandum, Mr. Jones respectfully submits that his motion should be denied solely due to the unambiguous, long-standing Fifth Circuit precedent that OPDA is not entitled to sovereign immunity.

## II. Mr. Cannizzaro Has Waived the Sovereign Immunity Defense as a Result of His Dilatory Tactics and Gamesmanship

Even if binding Fifth Circuit precedent did not clearly require the denial of Mr. Cannizzaro's motion (which it does), the Court should find that Mr. Cannizzaro has waived the opportunity to invoke a sovereign immunity defense through his dilatory tactics and gamesmanship.

An Eleventh Amendment sovereign immunity defense can be waived through litigation conduct that "evidenced an intent to defend the suit . . . on the merits." *See, e.g.*, *Neinast v. Texas*, 217 F.3d 275, 279 (5th Cir. 2000); *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 245–46 (5th Cir. 2005) (observing that the United States Supreme Court has "unanimously held that the Eleventh Amendment . . . grants the state a legal power to assert a sovereign immunity defense, which it may raise *or waive*") (emphasis added) (citing *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381 (1998)); *Kermode v. Univ. of Mississippi Med. Ctr.*, 496 F. App'x 483, 489 (5th Cir. 2012) (unpublished) (noting that "a state's delay in raising the defense of sovereign immunity at the trial level may constitute waiver if it evidences an intent to defend the case on the merits"

9

because "a state entity might have an unfair advantage if it could wait until the eve of trial to assert its immunity" (citations omitted)).

When assessing whether a sovereign immunity defense had been waived, the United States Supreme Court has considered the "'judicial need to avoid . . . unfairness,'" and not the defendant's "'actual preference or desire,'" given that defendants may assert Eleventh Amendment immunity "'selective[ly] . . . to achieve litigation advantages.'" *Meyers*, 410 F.3d at 243–44 (quoting *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 620 (2002)); *id.* at 248 (collecting cases). Thus, while failure to raise immunity early in a case will not always result in waiver, a delayed assertion indicating "gamesmanship" or the "attempt[] to use immunity to void an unfavorable judgment" supports a finding of waiver. *See Union Pac. R. Co. v. Louisiana Pub. Serv. Comm'n*, 662 F.3d 336, 341 (5th Cir. 2011) (holding that the defendant did not waive sovereign immunity defense by failing to raise it until appeal; defendant successfully moved to dismiss the action on other grounds and there was no evidence of "gamesmanship"); *Kermode*, 496 F. App'x at 489–90 (stating the rule in *Union Pacific* and noting that the Fifth Circuit has not addressed whether waiver occurs when immunity is raised for the first time in a motion for summary judgment).

It is plain that Mr. Cannizzaro's eleventh-hour motion is far too delayed, and the circumstances far too suspect, to permit him to now assert a sovereign immunity defense. Mr. Cannizzaro filed a motion to dismiss—raising both absolute and qualified immunity defenses—but did not raise sovereign immunity. He filed an answer—asserting six affirmative defenses—but did not assert sovereign immunity. He moved for partial summary judgment on the merits of Mr. Jones's claim—twice, unsuccessfully—but did not move on the basis of sovereign immunity. He permitted the parties to expend extensive resources on discovery—consuming not only their

10

resources, but also the deponents' and experts' time—but did not develop a single fact relevant to sovereign immunity. And he permitted this Court and Magistrate Judge Wilkinson to supervise this case for two years—including issuing written decisions resolving 12 motions, and presiding over many oral arguments and conferences—without seeking dismissal on the basis of sovereign immunity. Instead, he seeks dismissal based on sovereign immunity only now, after losing several key motions and faced with an impending trial, on the ground that the Fifth Circuit should reconsider the *very* arguments OPDA *made* and *lost* 20 years ago and which the Fifth Circuit has rejected several times since. *See supra* Part I, pp. 4–9.

Mr. Cannizzaro's belated motion is an obvious gambit to delay trial and a potentially adverse judgment. It cannot be that OPDA—less than three months before trial—may re-assert an argument that the courts have repeatedly rejected, full well knowing that doing so may precipitate an interlocutory appeal and an extended delay. If there is no waiver here, there will be nothing to stop similarly situated entities from using the same tactic—endlessly raising immunity, well into a case, at a substantial cost and inconvenience to the court, the parties, the witnesses, the taxpayers, and others—once it is clear they cannot otherwise avoid trial. *See Hill v. Blind Indus. & Servs.*, 179 F.3d 754, 756–57 (9th Cir. 1999) (noting that a delay in raising an Eleventh Amendment immunity defense "undermines the integrity of the judicial system," "wastes judicial resources," and "imposes substantial costs upon the litigants"). Because Mr. Cannizzaro's motion is far too delayed and smacks of gamesmanship, he has waived the sovereign immunity defense and his motion should be denied on that ground as well. *See Brown v. Dep't of Pub. Safety & Corr. Servs.*, 383 F. Supp. 3d 519, 553–54 (D. Md. 2019) (noting that the defendants' "delayed assertion of sovereign immunity," "dilatory tactics," "numerous appearances before magistrate judges," and

11

"activities before this Court constitute[d] affirmative acts signaling [their] consent to suit," resulting in waiver).

### III. If the Court Denies Mr. Cannizzaro's Motion and Mr. Cannizzaro Seeks an Interlocutory Appeal, the Court Should Certify the Appeal as Frivolous and Dilatory

The Fifth Circuit has expressly held that a district court may "maintain jurisdiction" of a case notwithstanding "an interlocutory appeal of an immunity denial after certifying that the appeal is frivolous or dilatory." *BancPass, Inc. v. Highway Toll Admin., L.L.C.*, 863 F.3d 391, 400 (5th Cir. 2017) (adopting certification procedure announced in *Apostol v. Gallion*, 870 F.2d 1335 (7th Cir. 1989)); *see id.* at 398–400 (collecting circuit cases doing the same); *Behrens v. Pelletier*, 516 U.S. 299, 310–11 (1996) (noting approvingly the certification procedure adopted by the *Apostol* court and other circuits, and observing that "[i]t is well within the supervisory powers of the courts of appeals to establish summary procedures and calendars to weed out frivolous claims").

This certification procedure exists to protect against meritless or merely tactical appeals, filed by defendants "seek[ing] to stall because they gain from delay at plaintiffs' expense." *See Apostol*, 870 F.2d at 1338. Accordingly, "[i]f the claim of immunity is a sham . . . the notice of appeal does not transfer jurisdiction to the court of appeals, and so does not stop the district court in its tracks." *Id.* at 1339. Instead, "a district court may certify to the court of appeals that the appeal is frivolous and get on with the trial." *Id.* (citing, *inter alia*, *United States v. Dunbar*, 611 F.2d 985 (5th Cir. 1980) (*en banc*)). Similarly, if a defendant employs dilatory tactics and "use[s] claims of immunity in a manipulative fashion, [he] surrender[s] any entitlement to obtain an appellate decision before trial." *Id.* That is because, while an immunity defense typically encompasses "the right not to pay damages and the right to avoid trial," those rights are "distinct"—with dilatory, manipulative conduct permitting "a district court [to] certify that a defendant has surrendered the entitlement to a pre-trial appeal and proceed with trial." *See id.*

12

Courts in this circuit have expressly found that an appeal may be certified as frivolous if (as in this case) the defendant's argument conflicts with binding Fifth Circuit precedent. For example, in a case concerning the *same* arguments Mr. Cannizzaro asserts here, a district court certified, as frivolous, a Louisiana district attorney's interlocutory appeal of an order denying him sovereign immunity because the appeal was meritless under the "clear and controlling" Fifth Circuit precedent outlined above. *See* Exs. 12–14 to Monju Decl. (*Burrell v. Adkins*, No. 01-CV-2679, Doc. No. 102, at 4 (W.D. La. Aug. 11, 2003) (certifying appeal as frivolous, citing *Burge*), *aff'd*, Doc. No. 108, at 2 (W.D. La. Oct. 6, 2003), *aff'd*, Doc. No. 114, at 2 (5th Cir. Dec. 2, 2003) (Fifth Circuit's order denying district attorney's motion for stay of discovery pending interlocutory appeal)). Similarly, in another sovereign immunity case, the district court concluded that the plaintiff's motion to certify a Louisiana university's interlocutory appeal as frivolous under binding Fifth Circuit precedent was "well-taken" but denied the motion only because the defendant had cited an intervening holding by the United States Supreme Court that potentially undermined that precedent. *See Gruver v. Louisiana Through Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. 18-CV-772, 2019 WL 6245421, at *4 (M.D. La. Nov. 22, 2019).

In order to maintain jurisdiction under this procedure, a district court need only find that the appeal is frivolous or dilatory. *See BancPass, Inc.*, 863 F.3d at 400. Mr. Jones respectfully submits that, if the Court denies Mr. Cannizzaro's motion and he seeks an interlocutory appeal, the Court should make such a finding here. As an initial matter, any such appeal would be plainly frivolous. By his own admission, Mr. Cannizzaro's motion conflicts with binding Fifth Circuit precedent—precedent that has been reaffirmed again and again by the Fifth Circuit and recognized as binding and well-settled by several Louisiana district courts. Moreover, Mr. Cannizzaro has

13

not cited *any* intervening change in the law (much less a change in the law issued by the United States Supreme Court) that would lend any merit to his motion.

In addition, any such appeal would be plainly dilatory. Mr. Cannizzaro could have brought this motion at any time in the last two years, before the courts, parties, fact witnesses, experts, and taxpayers expended enormous resources bringing this case to the brink of trial. Because he did not, and because his eleventh-hour motion is a transparent gambit to delay the trial, the Court should find that Mr. Cannizzaro has forfeited his ability to divest this Court of jurisdiction while he pursues his appeal.

## CONCLUSION

For the foregoing reasons, Mr. Jones respectfully requests that the Court deny Mr. Cannizzaro's motion and, if Mr. Cannizzaro seeks an interlocutory appeal, certify that appeal as frivolous and dilatory.

Respectfully submitted,

*/s/ Erin Monju*
Alan Vinegrad* (T.A.) (N.Y. 1967140)
Erin Monju* (N.Y. 5160908)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, N.Y. 10018
Phone: (212) 841-1000
Email: avinegrad@cov.com,
   emonju@cov.com

*with*

Mark A. Cunningham (La. 24063)
JONES WALKER LLP
201 St. Charles Avenue, Ste. 5100
New Orleans, L.A. 70170
Phone: (504) 582-8536
Email: mcunningham@joneswalker.com

14

*and*

Nina Morrison* (N.Y. 3048691)
INNOCENCE PROJECT
40 Worth Street
Suite 701
New York, N.Y.  10013
Phone: (212) 364-5340
Email: nmorrison@innocenceproject.org

*\*Admitted pro hac vice*

*Attorneys for Plaintiff Robert Jones*

15

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served upon all counsel of record by using the CM/ECF system, this 12th day of February, 2020.

<u>/s/ Erin Monju</u>