## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ROBERT JONES,

     *Plaintiff*,

v.

LEON CANNIZZARO, JR., in his official capacity; ABC INSURANCE COMPANIES 1–10,

     *Defendants*.

Civil Action No. 18-503

Section H
Judge Jane Triche Milazzo

Division 2
Magistrate Judge Joseph Wilkinson, Jr.

## OPPOSITION TO PLAINTIFF'S MOTION (1) *IN LIMINE* TO PRECLUDE ADMISSION OF EVIDENCE AND ARGUMENT, AND (2) FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANT'S FIFTH AFFIRMATIVE DEFENSE

Leon Cannizzaro, Jr. (in his official capacity as Orleans Parish District Attorney ("OPDA")), through undersigned counsel, respectfully submits this memorandum in opposition to the Plaintiff's motion (1) *in limine* to preclude admission of evidence and argument, and (2) for partial summary judgment on Defendant's fifth affirmative defense.

## INTRODUCTION

In his motion, Mr. Jones acknowledges that he must prove that OPDA's alleged misconduct was an actual and proximate cause of his conviction. Despite acknowledging his burden, however, Mr. Jones asks the Court through the motion to preclude OPDA from contesting the causation elements through the introduction of contrary proof. Simply stating the relief requested reveals the motion's fatal flaw. OPDA is entitled to defend itself with evidence showing that any alleged suppression of evidence was not the cause of Mr. Jones's conviction. Mr. Jones's rhetoric and tired accusations of "gamesmanship" are not credible considering that nobody has argued more

1

forcefully than Mr. Jones that his trial counsel's deficient performance led to his 1996 trial convictions and subsequent guilty pleas. The motion should be denied.

## BACKGROUND

Plaintiff Robert Jones has brought this § 1983 action against OPDA for allegedly withholding material, exculpatory evidence ("*Brady* evidence") during Mr. Jones's March 11-12, 1996 criminal trial for aggravated rape, second-degree kidnapping, aggravated crime against nature, and three counts of armed robbery. Mr. Jones was arrested on April 18, 1992, on suspicion of the aforementioned crimes and was subsequently also charged with the murder of Julie Stott, as well as the armed robberies of Bethany Acosta, Patrick van Hoorebeck, and Curtis Boutte. On April 2, 1996, Mr. Jones pleaded guilty to the manslaughter of Julie Stott, and the armed robberies of Bethany Acosta, Patrick van Hoorebeck, and Curtis Boutte. From shortly after his arrest in 1992 until he pleaded guilty in April 1996, Mr. Jones was represented by an attorney named Curklin Atkins.

After his 1996 convictions, Mr. Jones spent nearly twenty years arguing that Mr. Atkins did not adequately represent him. In Mr. Jones's most recent application for post-conviction relief, he went so far as to call his counsel's performance at his 1996 trial "shockingly bad." Doc. No. 225-6 at 47. In fact, Mr. Jones's counsel was so confident in his ineffective assistance of counsel claims that she was shocked that the Louisiana Fourth Circuit vacated his conviction on *Brady* grounds rather than ineffective assistance of counsel grounds:

> It's one of those things that appear to be thorough, but a fact-check would result in red pen all over every page. And whilst it ultimately granted Robert a new trial, it still doesn't understand the depth of the evidence that suggests he was mistakenly identified in this case. Most astonishingly, it does not find that Curklin Atkins was ineffective! We always felt that was Robert's strongest claim, though we pled things in the alternative, i.e., either the State violated Brady or Mr. Atkins was

ineffective because somehow this very important information about Lester Jones didn't get to the jury.[1]

At the end of his application for post-conviction relief, Mr. Jones asked the court to vacate his conviction and grant him a fair trial rather than one that was a "constitutional disaster." Doc. No. 225-6 at 69-70. Further, Mr. Jones's guilty pleas to manslaughter and armed robbery were ultimately vacated for not being knowing and voluntary when he successfully argued that Mr. Atkins provided ineffective assistance of counsel prior to his pleas.

In this action, ironically, Mr. Jones is not advocating for a fair trial in which the jury has the benefit of the truth and the opportunity to evaluate all relevant evidence to decide questions of fact. And despite his own changes in position, Mr. Jones decries alleged "gamesmanship" and changes of position by OPDA. He protests too much. By choosing to re-litigate the issues concerning his convictions, Mr. Jones has caused those issues to be re-examined, and it would be fundamentally unfair and unlawful to preclude OPDA from defending against Mr. Jones's claims and current theories.

Mr. Jones first asserts in this motion that OPDA is barred from presenting any evidence or argument regarding Mr. Atkins's trial performance by judicial estoppel. But Mr. Jones ignores that (1) OPDA's position in this case is not "clearly inconsistent" with any prior positions it maintained during Mr. Jones's post-conviction proceedings, (2) a court has not "accepted" any positions that are inconsistent with OPDA's positions in this case, and (3) generally courts should not apply judicial estoppel to governmental entities. Based on Mr. Jones's previous assertions and the relevant issues involved in this case, it would be legally improper to apply judicial estoppel to OPDA and prevent the jury from hearing evidence of Mr. Atkins's trial performance and strategy.

---

[1] *See* Alford Declaration, Ex. 1 (November 24, 2015 E-mail from Emily Maw).

Mr. Jones next seeks to exclude any evidence and argument regarding Mr. Atkins's performance by arguing that such evidence is irrelevant to the causation inquiry before the jury. But as Mr. Jones himself acknowledges, he must prove that any alleged *Brady* violation by OPDA was the cause-in-fact and proximate cause of his conviction and incarceration—*i.e.*, that he would not have been convicted and incarcerated if the allegedly suppressed evidence had been disclosed. *See* Doc. No. 225-2 at 16. Mr. Atkins's trial performance and strategy are directly relevant to that inquiry. That is because the question of whether suppression of evidence changes the outcome of Mr. Jones's trial is inseparable from the questions of (1) what Curklin Atkins would have done if he had received the evidence that was allegedly suppressed; (2) how that would have affected the outcome of Mr. Jones's trial; and (3) whether Mr. Atkins could have put forward a defense that was just as effective using the evidence that was actually available to him.

Finally, Mr. Jones seeks summary judgment on OPDA's Fifth Affirmative Defense by claiming that such evidence is irrelevant to the amount of damages for which OPDA may be liable. But this entire argument misconstrues the defense and hinges on Mr. Jones's first prevailing at trial. OPDA's liability, however, has not been established at trial; accordingly, granting relief that would preclude OPDA from presenting relevant evidence before such liability is established would be fundamentally improper. Even if Mr. Jones is correct that OPDA is jointly and severally liable for all damages Mr. Jones has allegedly suffered, that does not prevent OPDA from placing evidence of third-party fault before the jury in order to address fundamental tort principles of causation.

## LEGAL STANDARD

While motions *in limine* are a proper vehicle for the court to rule on the admissibility of evidence pre-trial, "evidence should not be excluded before trial unless it is clearly inadmissible on all potential grounds." *Auenson v. Lewis*, No. 94–2734, 1996 WL 457258, *1 (E.D. La. Aug.

12, 1996). "Evidentiary rulings, especially those addressing broad classes of evidence, should be deferred until trial so that questions of foundation, relevancy, and potential prejudice can be resolved in the proper context." *Jones v. Board of Supervisors of Univ. of Louisiana System*, No. 14–2304, 2016 WL 9405315, *2 (E.D. La. Feb. 29, 2016).

Further, a motion for summary judgment should be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it would affect the outcome of the case, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Warren v. Federal National Mortgage Assoc.*, 932 F.3d 378, 382-83 (5th Cir. 2019). "When reviewing summary judgment decisions, we construe all facts and inferences in the light most favorable to the non-moving party." *Levy Gardens Partners 2007, L.P. v. Commonwealth Title Land Ins. Co*., 706 F.3d 622, 628 (5th Cir. 2013)

## ANALYSIS

I.   **Mr. Jones improperly invokes judicial estoppel: OPDA has not taken any inconsistent positions that have been accepted by a court, and judicial estoppel should not be applied to a governmental entity.**

Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001); *see also Gabarick v. Laurin Maritime (America) Inc*., 753 F.3d 550, 554 (5th Cir. 2014) (noting that a party taking a clearly inconsistent position "may" be estopped in a subsequent court proceeding). To avoid abuse of that discretion, the Fifth Circuit has held that a party must "at least" have taken a position that is "clearly inconsistent" with its prior position and the party must have convinced the court to accept its prior position. *Gabarick v. Laurin Maritime (America), Inc*., 753 F.3d 550, 553 (5th Cir. 2014). But the United States Supreme Court has held that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *New Hampshire v.*

*Maine*, 532 U.S. 742, 750 (2001) (alteration in original). Accordingly, the Supreme Court has identified other factors that courts should consider in appropriate circumstances, such as "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped" and whether the party against whom estoppel is sought is a governmental entity. *New Hampshire*, 532 U.S. at 750, 755.

The Supreme Court also has cautioned, however, that "[i]n enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *Id*. at 751. Because the doctrine can be harsh and impair the truth-seeking function of the Court, the doctrine should be applied "only to avoid a miscarriage of justice" and if "no lesser sanction" is appropriate. *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp*., 337 F.3d 314, 319 (3rd Cir. 2003).

### A. OPDA has not taken any "clearly inconsistent" positions in this litigation from its positions in Mr. Jones's 2010 application for post-conviction relief.

Contrary to Mr. Jones's suggestion, OPDA has never affirmatively taken the position that his counsel's representation and performance satisfied the professional standard of care in every respect. Rather, in response to Mr. Jones's 2010 application for post-conviction relief, OPDA merely argued (as counsel for the respondent) that Mr. Jones had not met his burden of showing his entitlement to a new trial due to constitutionally ineffective assistance of counsel that prejudiced his defense. *See* Doc. No. 225-7 at 24 (in response to Mr. Jones's 2010 PCR application, arguing that "[o]n the showing made, Jones entirely fails to meet his burden under *Strickland* and Article 930.2 of proving his entitlement to relief based on a theory of ineffective assistance of counsel"). Subsequently, in opposing Mr. Jones's appeal of the district court's judgment denying his claim, OPDA argued that "[t]he district court did not abuse its discretion or commit plain error

in concluding that Jones had failed to prove that he received ineffective assistance of counsel before or during trial." Doc. No. 225-10 at 36.

The question before the court in the post-conviction proceeding was "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To succeed in his goal of overturning his convictions, Mr. Jones had to prove "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. A court considering a constitutional ineffective-assistance claim must apply a "highly deferential" standard in reviewing counsel's performance and "must indulge a ***strong presumption*** that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689 (emphasis added); *see also id.* at 690 ("[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.").

Importantly, the Supreme Court explained in *Strickland* that the question of ineffectiveness for Sixth Amendment purposes is ***not*** equivalent to whether defense counsel complied with prevailing professional standards: "Prevailing norms of practice as reflected in American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4–1.1 to 4–8.6 (2d ed. 1980) ('The Defense Function'), are guides to determining what is reasonable, ***but they are only guides***." *Strickland*, 466 U.S. at 688 (emphasis added); *see also id.* at 689 ("[T]he purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although this is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.").

Mr. Jones *also* had to prove that "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. "Even if a defendant shows that particular errors of counsel were unreasonable, . . . the defendant must show that they actually had an adverse effect on the defense." *Id.* at 693.

There is no inconsistency at between OPDA's former position—that Mr. Jones had not made an adequate showing that his counsel rendered constitutionally ineffective assistance that prejudiced him at trial—and its current position that Mr. Jones's counsel breached the professional standard of care in certain specific ways that are relevant to the causation element of Mr. Jones's § 1983 claim for damages. As the Fifth Circuit has explained, even apparently inconsistent positions that "may seem paradoxical" will not give rise to judicial estoppel if they are taken in different legal contexts. *See Hopkins v. Cornerstone America*, 545 F.3d 338, 347 (5th Cir. 2008). In *Hopkins*, one of the plaintiffs in a Fair Labor Standards Act case argued that he was an "employee," despite having previously argued in a sexual-harassment suit that he was an "independent contractor." *See id.* The Fifth Circuit reversed the district court's application of judicial estoppel, explaining that "[d]espite the semantic inconsistency, it is legally possible to be an employee for purposes of the FLSA and an independent contractor under most other statutes." *Id.*[2] Similarly, it is entirely possible (indeed, even likely) that a criminal defendant may be unable

---

[2] *See also Brown v. Watters*, 599 F.3d 602, 615 (7th Cir. 2010) (holding the State of Wisconsin was not judicially estopped from "asserting [antisocial personality disorder] as the basis for civil commitment when it has refused to allow criminal defendants to raise the disorder as part of an insanity plea").

to satisfy the *Strickland* standard for post-conviction relief due to ineffective assistance of counsel even if counsel's performance breaches the professional standard of care in some respects.

Mr. Jones quotes a selection of statements from OPDA's post-conviction briefing to suggest that OPDA "lauded" the performance of Mr. Jones's counsel. *See* Doc. No. 225-2 at 11–12. It is correct that OPDA did not argue then, and does not argue now, that the performance of Mr. Jones's counsel was deficient in every possible way. For example, OPDA stands by the statement in its 2013 brief that "Mr. Atkins in fact presented a clear theory of misidentification, both through his questioning of the State's witnesses and his presentation of alibi witnesses." Doc. No. 225-7 at 22. Similarly, OPDA stands by the statements in its 2014 brief that Mr. Atkins paid "ample attention . . . to the theory that Robert Jones had been wrongly identified as the perpetrator of a crime committed by Lester Jones"; that "Mr. Atkins emphasized both Lester Jones's connection and Robert Jones's lack of connection to physical evidence of the instant crimes during his closing argument"; and that "Mr. Atkins presented a consistent theory throughout trial that *Lester* Jones was the true culprit." Doc. No. 225-10 at 47–52. Indeed, these statements are consistent with the opinions of OPDA's criminal-defense expert, Frank DeSalvo. In his expert report, Mr. DeSalvo discusses "the evidence introduced at trial potentially implicating Lester Jones, which was emphasized in Mr. Atkins's closing argument." Doc. No. 225-5 at 12. As Mr. DeSalvo explains, "there was no need" to present a "crime spree" theory at trial in an attempt to shift blame to Lester Jones, because Mr. Jones's counsel adequately presented a theory of Lester Jones's guilt using other evidence. *See id.* at 11–12. However, OPDA's previous arguments that Mr. Atkins's strategy and performance were reasonable or defensible in certain specific ways are in no way inconsistent with its current position that Mr. Atkins's performance was incompetent and unreasonable in other ways.

Additionally, courts have held that the capacity in which a party argues a previous position must be considered when determining whether to apply judicial estoppel. For example, the Bankruptcy Appellate Panel of the Ninth Circuit has held that "[a] debtor's different capacities, as debtor and as debtor in possession performing duties of the trustee, must be considered when fashioning a judicial estoppel remedy." *In re An-Tze Cheng*, 308 B.R. 448, 451 (B.A.P. 9th Cir. 2004). Similarly, the District Court for the District of Columbia has held that judicial estoppel cannot apply to an attorney sued for malpractice for statements made in the course of the underlying representation. *See Encyclopedia Britannica,, Inc. v. Dickstein Shapiro, LLP*, 905 F.Supp.2d 150, 155 (D.D.C. 2012) ("Moreover, even if there is no absolute rule that the party being estoped must have been a party at the time it made the statements, it is certainly improper to estop an entity based on statements it made in its prior capacity."). Here, OPDA's positions taken during Mr. Jones's application for post-conviction relief were taken while acting in a representative capacity on behalf of the State of Louisiana. *See* Doc. No. 117 at 7 (finding that "the Code of Criminal Procedure articles clearly recognize [the District Attorney's] role as the attorney for the respondent custodian"). However, OPDA is now acting on its own behalf in defense of a *Monell* claim, and it would be legally improper to deny OPDA the opportunity to present a full defense in this civil case based on judicial estoppel.

Finally, it is important to note that, even assuming that judicial estoppel were apply here and bar OPDA from arguing that Mr. Jones's counsel was "ineffective," that could not justify exclusion of all evidence about what Mr. Atkins did or did not do in connection with his representation, what he could have done with the evidence available to him, and what he might have done if additional evidence had been provided. As explained further below, the role of Mr. Jones's counsel is highly relevant to the causation element that he must prove to establish his claim

in this case. Even if Mr. Atkins is held to be "effective" by operation of judicial estoppel in this case, his actions remain relevant to the causation inquiry.

**B.** **OPDA's previous positions at issue in this case were never accepted by another court.**

To the extent that any of OPDA's positions in this case are inconsistent with previous positions (they are not), judicial estoppel is still inappropriate because those positions were never accepted by any court.[3] As Mr. Jones's himself argued to the Louisiana Fourth Circuit, the Criminal District Court only addressed some of his claims regarding ineffective assistance of counsel, and its ruling "bore almost no resemblance to the claim before it."[4] Further, the Louisiana Fourth Circuit actually accepted some of Mr. Jones's positions concerning the ineffectiveness of his counsel. For example, the Fourth Circuit concluded that it was not reasonable "trial strategy" for Mr. Atkins not to use the 911 call log, if he had it:

> If, indeed, counsel had the 911 call log at the time of trial, . . . we find it difficult to explain or understand why it would be trial strategy not to use it to impeach the identifications made by T.P. and L.J. . . . Thus, if counsel had this information, it was error not to use it, and the relator would be apparently prejudiced by this failure.

*Jones*, 151 So. 3d at 806. Similarly, the Fourth Circuit concluded that the "failure to investigate Lester's prior robberies and the murder case" was not reasonable trial strategy: "We find it difficult to see how this failure to investigate Lester's prior robberies and the murder case was trial strategy. . . . It is hard to see how the failure to investigate Lester's prior convictions and introduce evidence of the similarities [in the crime spree] did not prejudice the relator."). *Id.* at 807. Accordingly, it is Mr. Jones who is trying in this case to take positions that are different from those that he convinced the Fourth Circuit to accept. The Louisiana Fourth Circuit's holding on the ineffective assistance

---

[3] Importantly, the Fifth Circuit has held that a court's accepting a party's inconsistent position "makes all the difference." *Gabarick*, 753 F.3d at 554.

[4] *See* Alford Declaration, Ex. 2 (Robert Jones Fourth Circuit Writ Application), at 30.

claim was a narrow one, based on finding that the district court's opinion was not "*clearly* wrong" and that Mr. Jones's claim "does not *clearly* have merit." *Id*. (emphasis added). Because Mr. Jones has not shown that any of OPDA's specific positions concerning the effectiveness of Mr. Jones's counsel were accepted by any court, it would be inappropriate to apply judicial estoppel in this case.

### C. Because Mr. Jones cannot identify any unfair advantage to OPDA in this case and because OPDA is a governmental entity, judicial estoppel should not be applied.

According to the Supreme Court, in weighing judicial estoppel, the court should consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 751. But Mr. Jones cannot identify any "unfair detriment" that he would suffer in this lawsuit by OPDA's arguing a similar position that Mr. Jones has taken for two decades. Nor has Mr. Jones identified any "unfair advantage" for OPDA in asserting its position on Mr. Atkins's trial performance and strategy. The fact that OPDA's position in this litigation may make it more challenging for Mr. Jones to prove the elements of his cause of action is not a sufficient reason to prevent OPDA from presenting all available, relevant evidence to the jury in this case. Mr. Jones's fear of the truth is not a basis for applying judicial estoppel.

The Supreme Court has also recognized that the government may not be estopped to the same extent private parties are. "[I]t is well settled that the Government may not be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Serv. of Crawford County*, 467 U.S. 51, 60 (1984) (discussing equitable estoppel); *see also Mingo Logan Coal Co. Inc. v. U.S. Environmental Protection Agency*, 70 F.Supp. 3d 151, 174 (D.D.C. 2014) (applying the same reasoning to judicial estoppel). "Ordinarily the doctrine of estoppel or that part of it which precludes inconsistent positions in judicial proceedings is not applied to states" because "broad

interests of public policy may make it important to allow a change of positions that might seem inappropriate as a matter of merely private interests." *New Hampshire*, 532 U.S. at 755. Applying judicial estoppel to a District Attorney's Office in a civil lawsuit for positions taken in post-conviction proceedings would certainly undermine "broad interest of public policy," because it would encourage district attorney's offices to evaluate applications for post-conviction relief based on the potential civil lawsuits the applicant may bring. Justice is in no way served by allowing Mr. Jones to escape his own admissions concerning Mr. Atkins's performance.

II. **Evidence of Curklin Atkins's trial performance and strategy are directly relevant to the causation inquiry before the jury of whether the alleged *Brady* evidence was the cause-in-fact and proximate cause of Mr. Jones's conviction and incarceration.**

Mr. Jones correctly recognizes that, to establish his claim, he must prove that a *Brady* violation by OPDA "was a cause in fact and proximate cause of his wrongful convictions and resulting injuries." Doc. No. 225-2 at 16. That causation element requires him to prove "by a preponderance of the evidence" that "he would not have been convicted but for the withholding of evidence." *Drumgold v. Callahan*, 707 F.3d 28, 49 (1st Cir. 2013); *see also Rodriguez v. Woodall*, 189 F.App'x. 522, 527 (7th Cir. 2006) (upholding a district court's jury instruction in a *Brady*-based § 1983 claim that the jury must find the plaintiff "would not have been convicted if this evidence had been disclosed.").

Mr. Jones also argues, and OPDA does not dispute, that he need not prove that a *Brady* violation "was the *sole* cause of his injuries." Doc. No. 225-2 at 17. For example, Mr. Jones cites precedent from this Court holding that "when a plaintiff is subjected to multiple tortious events, ***and each is independently sufficient to cause plaintiff's injury***, the but-for causation test will not work to excuse any single causative factor." *Sheppard v. Liberty Mut. Ins. Co.*, No. 16-cv-2401, 2016 WL 6803530, at *4 (E.D. La. Nov. 17, 2016) (emphasis added); *see* Doc. No. 225-2 at 17. However, from that premise, it certainly does not follow that "Mr. Jones's trial counsel's

performance is irrelevant to the question of whether OPDA's *Brady* violation caused Mr. Jones's injuries." *Id.* Rather, the performance of Mr. Jones's trial counsel is extremely relevant to the question of whether a *Brady* violation was a sufficient, but-for cause of his conviction in the first place.

For example, it is possible that, even if the allegedly suppressed evidence had been disclosed, Mr. Jones's lawyer would not have used it at trial—either because of an intentional strategic decision, or due to negligence or oversight. In such a scenario, disclosure of the evidence obviously would not have changed the outcome of the trial. It is also possible that a decision by Mr. Jones's lawyer to use the evidence at trial might have backfired—for example, by opening the door for the State to introduce prejudicial evidence that would have left Mr. Jones in an even worse position than he was before. In that scenario as well, disclosure of the evidence would not have changed the outcome of the trial. Finally, if Mr. Jones's lawyer had access to evidence that was similar to the allegedly suppressed evidence and could have been used to make the same arguments at trial—yet he failed to use that evidence—a jury could reasonably find that the alleged suppression was not the actual and proximate cause of Mr. Jones's conviction.

Simply put, the causation element of Mr. Jones's claim requires him to prove that if the allegedly suppressed evidence had been disclosed to him, the outcome of his trial would in fact have been different—*i.e.*, he would not have been convicted. The question of what Mr. Jones's lawyer would have done with the evidence if he had it is therefore inseparable from the question of whether suppression of evidence is an actual, but-for cause of his conviction.

### III. A reasonable jury could find Mr. Atkins's trial performance was an independent and superseding cause of Mr. Jones's conviction because his performance was independent of and not related to the allegedly withheld *Brady* evidence.

The Fifth Circuit has held that proximate cause in a § 1983 action is "evaluated under the common law standard" and that a tortfeasor may be relieved of liability if there is a superseding

14

cause that breaks the causal chain between the tort and the injury to the plaintiff. *Murray v. Earle*, 405 F.3d 278, 290-91 (5th Cir. 2005). But the issue of causation is "intensely factual" and should generally be placed before the jury, *see Morris v. Dearborne*, 181 F.3d 657, 673 (5th Cir. 1999), including the issue of whether a third-party actor constitutes an independent superseding cause, since "[t]he issues of proximate causation and superseding cause involve application of law to fact, which is left to the factfinder, subject to limited review." *Becker v. Tidewater, Inc.*, 586 F. 3d 358, 372 (5th Cir. 2009).

When addressing whether an act constitutes an independent superseding cause that shields a party from liability, the Fifth Circuit has held that an intervening act cannot act as a superseding cause when:

> (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or (c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

*Becker v. Tidewater*, 586 F.3d 358, 372 (5th Cir. 2009).

Contrary to Mr. Jones's assertions, the *Becker* factors do not bar OPDA from presenting evidence to the jury that Mr. Atkins's trial performance and strategy was a superseding cause that breaks the causal chain between any allegedly withheld *Brady* evidence and Mr. Jones's conviction and incarceration. First, there is no reason that OPDA "should have realized" that a privately hired and experienced criminal defense attorney would fail to use reasonably available evidence at trial, particularly when that evidence was publicly available from the high profile murder trial of the co-defendant of his client.[5] Second, an ineffective trial strategy that is not connected with the alleged

---

[5] Importantly, Curklin Atkins represented Robert Jones on his indictment for the murder of Julie Stott, the case in which Lester Jones was a co-defendant.

withholding of favorable evidence is certainly "highly extraordinary," as even the Supreme Court has acknowledged "the law's presumption that counsel will fulfill the role in the adversary process." *Strickland*, 486 U.S. at 688. Finally, Mr. Atkins's trial performance would certainly not be a "normal consequence" of any allegedly deficient *Brady* policy if the performance and strategy were not dependent on or influenced by OPDA's *Brady* policy.

Additionally, the Fifth Circuit's decisions on the independent intermediary doctrine would *support* a jury's finding that Mr. Atkins's trial performance was a superseding cause of Mr. Jones's incarceration. "An independent intermediary breaks the chain of causation unless it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988); *see also Winfrey v. Johnson*, 766 F.App'x 66, 71 (5th Cir. 2019) (holding that the independent intermediary doctrine applies if all "relevant information" is given to the intermediary). If OPDA can establish that Mr. Atkins's trial strategy and performance were not tainted by OPDA's actions, either because he had access to the allegedly withheld *Brady* evidence through other means or would not have used the evidence even if he had it, then the jury may reasonably determine that Mr. Atkins's performance was a superseding cause of Mr. Jones's conviction. OPDA is legally entitled to defend itself in this matter, and Mr. Jones is improperly using the motion *in limine*.

Further, all of the district court cases cited by Mr. Jones are easily distinguishable from the facts of this case because they involve claims of fabricated evidence that were central to defense counsel's strategy. In *Rodriguez v. City of Houston*, the city's crime laboratory presented false evidence at trial that DNA testing demonstrated that another suspect could not have committed the rape with which the plaintiff had been charged. 2009 WL 10679669 at *5. In *Sanford v. Russel*, the court was addressing a particularly egregious case in which police officers coerced a juvenile

with a learning disability into making a false confession and then presented false testimony on how the confession was obtained. *See* No. 17-13062, 2018 WL 6331342, *2-3 (E.D. Mich. Dec. 4, 2018) (ruling on defendants' motion to dismiss that discusses the facts of the case). Finally, in *Nnodimele v. Derienzo*, the court was addressing a case in which the defendant officers fabricated two false confessions to multiple robberies from the plaintiff. No. 13-CV-3461, 2016 WL 3561708, *12 n. 8 (E.D.N.Y. June 27, 2016).

But Mr. Jones has not and cannot allege that OPDA fabricated evidence that Mr. Atkins had to contend with when representing Mr. Jones at trial. On the contrary, there is an evidentiary basis from which a jury may conclude that Mr. Atkins's trial performance and strategy were *independent of and uninfluenced by* OPDA's alleged withholding of *Brady* evidence. In other words, a reasonable jury could clearly find Mr. Atkins's performance to be an independent superseding cause that breaks the causal chain between the alleged withholding of exculpatory evidence and Mr. Jones's alleged constitutional injury. It would be legally improper for this Court to deprive the jury of such an "intensely factual" determination. *See Morris*, 181 F.3d at 673.

## IV. There is no basis for granting summary judgment on OPDA's Fifth Affirmative Defense.

In the final section of his memorandum, Mr. Jones seeks summary judgment on OPDA's Fifth Affirmative Defense on the ground that "comparative fault principles do not apply to § 1983 claims." But Mr. Jones plainly misconstrues the Fifth Affirmative Defense as seeking a reduction of any damages award in a manner that is inconstant with joint and several liability under 42 U.S.C. § 1983. The Fifth Affirmative Defense addresses the issues of causation; nowhere does it demand a reduction of a damages award in a manner that is inconsistent with governing law.[6]

---

[6] By contrast, in *Burge v. Parish of St. Tammany*, No. 91-cv-2321, 1995 WL 317125, at *3 (E.D. La. 1995), the "comparative fault" defense addressed by Magistrate Judge Wilkinson on a discovery motion concerned the plaintiff's fault and contended that "Mr. Burge's alleged

Mr. Jones argues that evidence and consideration of the conduct of third parties is irrelevant in any case in which a defendant's liability is joint and several.[7] That argument is wrong, and not a single case that he cites supports it. Even when a tortfeasor can be made to pay more than his share of fault because of the operation of joint and several liability, a factfinder can still consider and quantify the fault of other potentially responsible parties. Indeed, in *Hinshaw v. Doffer*, 785 F.2d 1260 (5th Cir. 1986), which is cited in Mr. Jones's own memorandum, the Fifth Circuit held that the plaintiff could recover its full damages award from a defendant that the jury found to be only 65% at fault. Although the court enforced joint and several liability, nowhere did it indicate that the district court erred in applying "percentage causation in a constitutional tort case." *See id*. at 1269; *see also Missouri v. Jenkins*, 495 U.S. 33, 54 (1990) ("42 U.S.C. § 1983…is authority enough to require each tortfeasor to pay its share of the cost of the remedy if it can, and apportionment of the cost is part of the equitable power of the District Court."); *Mairena v. Foti*, 816 F.2d 1061, 1065 (5th Cir. 1987) (reflecting that the jury in a § 1983 claim had assessed fault among multiple allegedly responsible parties). And the court certainly did not hold that evidence of third-party fault is irrelevant in any action brought under 42 U.S.C § 1983.

It follows that, even if Mr. Jones can the collect the full amount of any damages award from ODPA *if* the jury finds it to be at fault, the jury must be permitted to consider not casting OPDA in judgment in the first place (*i.e.*, a finding of no fault) based on evidence that third-parties

---

participation in the murder will **bar or reduce** Mr. Burge's **recovery** of damages . . . ." (Emphasis added.). OPDA's Fifth Affirmative Defense does not purport to seek a reduction in Mr. Jones's recovery based on his own fault.

[7] As Mr. Jones notes in his motion, the Court has previously determined that the motion for summary judgment is not the appropriate vehicle for the evidentiary ruling he seeks here. *See* Doc. No. 225-2 at 2 n.1.

caused Mr. Jones's alleged damages. There is no legal basis for dismissing OPDA's Fifth Affirmative Defense.

## CONCLUSION

For the reasons explained above, Mr. Jones's motion *in limine* to exclude the any testimony regarding Mr. Atkins' trial performance and motion for summary judgment on OPDA's Fifth Affirmative Defense should be denied.

| | |
|---|---|
| | */s/ W. Raley Alford, III* |
| Robert L. Freeman, Jr., 21596 | Richard C. Stanley, 8487 |
| Donna R. Andrieu, 26441 | W. Raley Alford, III, 27354 |
| Office of the District Attorney, | Matthew J. Paul, 37004 |
| Parish of Orleans | STANLEY, REUTER, ROSS, THORNTON |
| 619 South White Street |   & ALFORD, LLC |
| New Orleans, Louisiana 70119 | 909 Poydras Street, Suite 2500 |
| Telephone: (504) 822-2414, ext. 2877 | New Orleans, Louisiana 70112 |
| Facsimile: (504) 827-6393 | Telephone: (504) 523-1580 |
| | Facsimile: (504) 524-0069 |
| Thomas J. Barbera, 18719 | rcs@stanleyreuter.com |
| 3330 Lake Villa Drive, Suite 202 | wra@stanleyreuter.com |
| Metairie, Louisiana 70002 | mjp@stanleyreuter.com |
| Telephone: (504) 931-0662 | |

*Counsel for Leon Cannizzaro (in his official capacity
as Orleans Parish District Attorney)*