## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROBERT JONES**                                    **CIVIL ACTION**

**VERSUS**                                          **NO: 18-503**

**LEON CANNIZZARO, JR.**                            **SECTION "H"**

### ORDER AND REASONS

Before the Court are Defendant's Motions in Limine to Exclude the Expert Testimony of Dr. Allison Redlich (Doc. 217), Dr. Jennifer Dysart (Doc. 222), and Laurie Levenson (Doc. 230); and Plaintiff's Motions in Limine to Exclude the Expert Testimony of Frank DeSalvo (Doc. 226); and Dr. Mary Tramontin (Doc. 227). For the following reasons, the Motions in Limine to Exclude the Expert Testimony of Dr. Allison Redlich and Frank DeSalvo are **DENIED**; and the Motions to Exclude the Testimony of Dr. Jennifer Dysart, Laurie Levenson, and Dr. Mary Tramontin are **GRANTED IN PART.**

1

## BACKGROUND

In March 1996, Plaintiff Robert Jones was found guilty at trial of charges connected to a crime spree based in part on eyewitness identifications. Thereafter, Plaintiff pleaded guilty to four additional crimes (the "Guilty Plea Crimes"). Plaintiff's initial conviction was vacated for *Brady* violations on October 8, 2014 by the Louisiana Fourth Circuit Court of Appeal, and the charges against him were ultimately dismissed. Plaintiff's convictions for the Guilty Plea Crimes were vacated in 2017 based on ineffective assistance of counsel in connection with his guilty pleas. Plaintiff now brings claims against Orleans Parish District Attorney Leon A. Cannizzaro, Jr. ("OPDA") in his official capacity under 42 U.S.C. § 1983 for damages caused by Plaintiff's wrongful conviction and 23-year incarceration.

Before the Court are three Motions in Limine filed by Defendant and two Motions in Limine filed by Plaintiff seeking to exclude testimony by various experts at trial. This Court will consider each motion in turn.

## LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The current version of Rule 702 reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[1] and *Kumho Tire Co. v. Carmichael*.[2]   The threshold inquiry is whether the expert possesses the requisite qualifications to render an opinion on a particular subject matter.[3] Having defined the permissible scope of the expert's testimony, a court next inquires whether the opinions are reliable and relevant.[4]   In undertaking this tripartite analysis, courts must give proper deference to the traditional adversary system and the role of the finder of fact within that system.[5] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[6]   As the "gatekeeper" of expert testimony, the trial court enjoys broad discretion in determining admissibility.[7]

## LAW AND ANALYSIS

Defendant has moved to exclude the expert testimonies of Plaintiff's experts Dr. Allison Redlich, Dr. Jennifer Dysart, and Laurie Levenson. Plaintiff has moved to exclude the expert testimonies of Defendant's experts

---

[1] 509 U.S. 579 (1993).

[2] 526 U.S. 137 (1999).

[3] Wagoner v. Exxon Mobil Corp., 813 F. Supp. 2d 771, 799 (E.D. La. 2011); *see also* Wilson v. Woods, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.").

[4] *See* United States v. Valencia, 600 F.3d 389, 424 (5th Cir. 2010).

[5] *See Daubert*, 509 U.S. at 596.

[6] *Id.*

[7] Wellogix, Inc. v. Accenture, L.L.P., 716 F.3d 867, 881 (5th Cir. 2013).

Frank DeSalvo and Dr. Mary Tramontin. This Court will consider each expert in turn.

### A. Dr. Allison Redlich

Plaintiff intends to introduce the expert testimony of Dr. Allison Redlich, a psychologist and criminology professor at George Mason University, on the prevalence of and reasons for false guilty pleas by innocent persons and whether any of the factors known to increase the risk of a false guilty plea by an innocent person are present in Plaintiff's case. Redlich opines that Plaintiff's guilty plea "bears many of the hallmarks of a false guilty plea," including that he had been convicted at a prior trial, faced a mandatory life sentence, and was unaware of exculpatory evidence that supported his innocence of the charges. Redlich seeks to explain why Plaintiff might have pleaded guilty to crimes he claims he did not commit. Defendant seeks to exclude Redlich's testimony, arguing that it will not assist the trier of fact and is not based on reliable methodology.

### i.   *Relevance*

First, Defendant argues that Redlich's opinions are not relevant to the issues at trial. In the next breath, however, Defendant admits that Plaintiff's plea to the Guilty Plea Crimes is relevant to damages and causation. Defendant states that "even if Mr. Jones were to succeed in proving a *Brady* violation that caused him to be wrongfully convicted a trial in 1996, that *Brady* violation would not be the actual and proximate cause of his imprisonment because he was independently serving prison sentences based on the Guilty Plea Crimes."[8] It is clear then that Defendant intends to argue that Plaintiff

---

[8] Doc. 217-1 at 6.

would have served time for the Guilty Plea Crimes regardless of any prior *Brady* violation. Redlich's testimony is therefore plainly relevant to rebut this defense. Plaintiff intends to offer Redlich's testimony to show that "OPDA leveraged his wrongful convictions, at a *Brady*-tainted trial, to extract his guilty pleas."[9]

Next, Defendant argues that Redlich's opinions are not helpful to the jury because they do not offer it any assistance in deciding whether Plaintiff is guilty or innocent or what caused him to plead guilty to the Guilty Plea Crimes. The fact that Redlich does not opine on Plaintiff's guilt, innocence, or state of mind—opinions that Defendant would no doubt argue are speculative and impermissible legal conclusions—does not make her opinion unhelpful. Redlich's opinion will assist the jury in understanding why Plaintiff might have pleaded guilty despite his claimed innocence and how the OPDA's actions may have contributed to that decision. Moreover, the Fifth Circuit has noted that the "'helpfulness threshold is low: it is principally . . . a matter of relevance.'"[10] A district court may admit expert testimony to help "the trier of fact to understand the evidence or to determine a fact in issue."[11]

Defendant also complains that Redlich's opinion is unhelpful because she does not opine whether it is more likely than not that Plaintiff's guilty plea was false. In so arguing, Defendant relies on the Fifth Circuit's opinion in *Pipitone v. Biomatrix, Inc.*[12] In *Pipitone*, the Fifth Circuit affirmed the exclusion of an expert's opinion that "it was as likely as not" that a syringe of Synvisc

---

[9] Doc. 240.
[10] Puga v. RCX Sols., Inc., 922 F.3d 285, 294 (5th Cir. 2019) (quoting E.E.O.C. v. Boh Bros. Const. Co., 731 F.3d 444, 459 n.14 (5th Cir. 2013) (en banc)).
[11] Fed. R. Evid. 702(a).
[12] Pipitone v. Biomatrix, Inc., 288 F.3d 239 (5th Cir. 2002).

administered to the plaintiff contained the salmonella bacteria that had infected him.[13] The court stated that the expert's opinion was "not helpful to the fact-finder because of his inability to conclude that it was more likely than not that the Synvisc caused the infection in Pipitone's knee. A perfectly equivocal opinion does not make any fact more or less probable and is irrelevant under the Federal Rules of Evidence."[14]

Defendant reads *Pipitone* to declare that an expert's opinion must find that some outcome is "more likely than not." This Court does not read *Pipitone* to stand for this proposition. Rather, *Pipitone* states that an equivocal position—that something is as likely as something else—is not helpful to the trier of fact because it does not make any fact more or less probable. *Pipitone* is inapplicable here where Redlich's opinion is not equivocal. Redlich's opinion makes it more probable that Plaintiff made a false guilty plea and is therefore helpful to the trier of fact.

    ii.   *Reliability*

Defendant next presents a series of reasons it believes that Redlich's opinions are not based on reliable principles and methods. Most of these complaints amount to a disagreement with her opinion and are best addressed on cross examination. Other objections simply mischaracterize Redlich's opinion. None convincingly challenge the methodology on which Redlich's opinions are based.

First, Defendant complains that many of the factors Redlich has identified that would increase the likelihood of false guilty pleas are (1) not

---

[13] *Id.* at 245.
[14] *Id.*

present in this case or (2) might also increase the likelihood of true guilty pleas. This might be a fair criticism of Redlich's opinion, but it does not bear on the methodology that she used to reach that opinion. A *Daubert* analysis must focus "solely on principles and methodology, not on the conclusions that they generate."[15]

Similarly, Defendant argues that Redlich has no reliable scientific basis to opine that failure to disclose exculpatory evidence is a common characteristic of false guilty pleas. Redlich's report relies on an article she co-authored that found after a review of data from the National Registry of Exoneration that 10% of false guilty pleas involved a failure to disclose exculpatory evidence. Defendant argues that such a low percentage cannot represent a commonality. It also argues that by its nature the prevalence of suppressed exculpatory evidence is unknowable and thus Redlich's opinion is not based on any reliable scientific basis. Defendant's objections do not speak to the reliability of the methods by which Redlich reached her opinion. Rather, they speak to her opinion itself. Defendant may cross examine Redlich on her opinion that a factor present in 10% of cases represents a commonality. Further, the fact that the suppression of favorable evidence is often unknown only bolsters her opinion that the 10% finding might actually be much higher.

Next, Defendant argues that Redlich has no basis for her opinion that innocent defendants may plead guilty "after experiencing a loss at trial themselves or watching co-defendants lose at trial and be sentenced harshly." However, Redlich's report plainly relies on several cases and a dataset from the National Registry of Exoneration to support her opinion. *Daubert* requires

---

[15] *Daubert*, 509 U.S. at 595.

only that a court "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[16] Defendant has not identified any reason that Redlich's method of reliance on cases, exoneration data, studies, and her own research is unreliable. "Questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[17]

Finally, Defendant argues that Plaintiff should be judicially estopped from suggesting that the OPDA's misconduct caused him to plead guilty when he previously argued that ineffective assistance of counsel was to blame. To be sure, Plaintiff also previously argued that the suppression of evidence caused him to plead guilty. Judicial estoppel prevents a party from asserting a position that is plainly inconsistent with a position previously taken.[18] Here, there is nothing contrary about Plaintiff's position that both ineffective assistance of counsel and the OPDA's misconduct caused him to plead guilty. Defendant's motion to exclude Redlich's testimony fails.

### B. Dr. Jennifer Dysart

Plaintiff intends to introduce the expert testimony of Dr. Jennifer Dysart, a social psychologist and expert in the field of eyewitness identification, to support his contention that he was mistakenly identified. Dysart will opine that several factors exist in Plaintiff's case that have been shown to affect the accuracy of witness identification and that those factors

---

[16] Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).
[17] United States v. Hodge, 933 F.3d 468, 478 (5th Cir. 2019), *as revised* (Aug. 9, 2019).
[18] New Hampshire v. Maine, 532 U.S. 742, 749 (2001).

significantly decrease the likelihood of an accurate identification by the victims in this case. Defendant argues that Dysart's opinion is neither relevant nor reliable.

      *i.*    *Relevance*

Defendant argues that Dysart's testimony is irrelevant because it does not address a fact in issue. Defendant correctly points out that an expert opinion regarding eyewitness identification would not have been admissible during Plaintiff's 1996 criminal trial in light of Louisiana's public policy prohibiting such testimony as inherently unreliable.[19] Accordingly, Dysart's testimony cannot be introduced on the element of causation. Plaintiff must show that the OPDA's *Brady* violations were a proximate cause of his conviction and incarceration. He cannot present Dysart's opinion to undermine the eyewitness testimony that was given at his trial.

Plaintiff argues, however, that Dysart's opinion is relevant to show Plaintiff's innocence of the crimes for which he was convicted, which bears on the issue of damages. Plaintiff contends that the jury award for a factually innocent man will be much higher than the award for a factually guilty one. This Court agrees.

 Defendant rebuts, however, that Plaintiff does not need Dysart's opinion because he already has a significant amount of evidence suggesting his innocence and Dysart's testimony risks jury confusion and the improper application of her opinion to its consideration of cause-in-fact. This Court will permit a limiting instruction to address these concerns.

---

[19] *See* State v. Stucke, 419 So. 2d 939, 945 (La. 1982).

Defendant next argues that Dysart's testimony is unhelpful to the jury because she does not provide the probability that the identifications of Plaintiff were inaccurate. In so arguing, Defendant again relies on the Fifth Circuit's opinion in *Pipitone*. *Pipitone* is again inapplicable. Dysart's opinion is not equivocal. She opines that there is a decreased likelihood of an accurate identification by the victims in this case, making it more probable that Plaintiff is innocent.

### ii. *Reliability*

Defendant next argues that Dysart's report seeks to offer opinions on issues that are outside her area of expertise including police lineups and crime scene reconstruction. These arguments misconstrue Dysart's opinion. Dysart does not opine on the constitutionality, efficacy, or reliability of the photo lineup used by the NOPD to obtain pretrial identifications from the witnesses in this case. Likewise, she does not seek to reconstruct the crime scene. Instead, Dysart offers opinions on how the facts of Plaintiff's case may have affected the accuracy of witness identification. Dysart relies on a body of research and her experience in the field of eyewitness identification to opine on how the witness identification in this case was influenced by the lineup procedures actually used and the opportunities that the witnesses had to see the perpetrator.

That said, there are portions of Dysart's opinion in which her commentary on these issues goes beyond that necessary to support her opinion. For instance, several time Dysart mentions that the lineups conducted by the NOPD fell below the standard of care. In addition, she offers a detailed discussion of why the victim's statement that she sees better in the dark is

inconsistent with the science of vision. These comments are outside of Dysart's area of expertise, and she will not be permitted to offer these opinions. The remainder of her opinion is relevant, reliable, and proper. Defendant's motion to exclude Dysart's testimony is granted in part as outlined above.

## C. Laurie Levenson

Plaintiff intends to introduce the expert testimony of Laurie Levenson, a legal professor and expert in the field of criminal law and ethics, to opine on whether the OPDA's policies, practices, and customs complied with the requirements of *Brady*. Defendant raises several objections to Levenson's report.[20] This Court will address each in turn.

### i.   *Qualifications*

First, Defendant complains that Levenson has not identified a valid field of expertise or established her expertise with respect to issues addressed in her report. This Court finds these arguments disingenuous. Levenson is clearly qualified to give the opinions contained in her report. She has practiced in the field of criminal law and ethics as a prosecutor, professor, and author for more than thirty years. In addition, she has published several articles relating specifically to *Brady* law and is regarded in the field as an expert in that area.

Second, Defendant complains that Levenson's report reads like a brief written by a zealous advocate, rather than an objective expert. Defendant objects to the tone of Levenson's report as too adversarial and argues that she credits facts in the record that support her conclusion and discredits those that

---

[20] Plaintiff's acknowledgement that Levenson will not offer opinions on causation, deliberate indifference, constitutionality, whether a *Brady* violation occurred, or how the facts of this case compare to the court's opinions in *Connick* and *Truvia* moot several of the arguments initially lodged by Defendant.

contradict it. This is not a valid criticism under Rule 702 and is best addressed on cross examination.

ii.  *Reliability*

Defendant next argues that Levenson's opinions are not grounded in an accepted body of learning or experience and that she has not explained how her experiences led to those conclusions. Ironically, in defense of its own legal expert, Defendant argued that "the reliability of an expert attorney's conclusions based on experience can readily be evaluated by the Court and counsel for the parties without elaborate explanation, due to their familiarity with the subject matter."[21] Here too, it is clear how Levenson's experience and knowledge in the legal field led to her opinions. Overall, this Court finds Levenson's opinions sufficiently reliable.

Specifically, Levenson's opinions regarding the adequacy of OPDA's policies are reliably based on her experience and her exhaustive review of the facts of this case, opinions of other courts, and standards of professional legal organizations. Defendant's continued insistence on mathematical calculations of likelihood is again improper.[22] Further, this Court does not find that her opinion that OPDA's policy contained misstatements offers an impermissible legal conclusion. Levenson's testimony will help the jury understand the adequacy of OPDA's *Brady* policy. She does not opine on whether the OPDA

---

[21] Doc. 243 at 20.

[22] Defendant's arguments that this opinion is not relevant were not raised until its reply brief. "Arguments raised for the first time in a reply brief are generally waived." Jones v. Cain, 600 F.3d 527, 541 (5th Cir. 2010).

was deliberately indifferent or whether its policies were constitutional. Accordingly, she does not offer an opinion on a conclusion of law.[23]

In addition, this Court finds no merit in Defendant's argument that Levenson cannot testify regarding *Brady* violations found by other courts or claimed in other cases.[24] Levenson's opinion offers a synthesis of the available case law that will assist the jury in its consideration of the history of findings and allegations of *Brady* violations by the OPDA. While a court opinion offers the most concise description of the facts of a case, it may still be too complex for a lay person to decipher, understand, synthesize, and appreciate its relevance to the facts of this case. Further, Levenson's opinion about the opportunities that the OPDA would have had to learn about court decisions finding *Brady* violations is not an impermissible legal conclusion or opinion on Defendant's state of mind.

Further, her opinion that the actual number of *Brady* violations by the OPDA is likely much larger than the number that has been documented in court decisions is fully supported by reliable sources and the facts in the record. The fact that she does not purport to estimate the number of undocumented violations does not make her opinion less reliable.

 That said, the Court finds that one of Defendant's objections to Levenson's opinions has merit. The Court finds the method by which Levenson calculated and compared the *Brady* violations in other cities to those committed by the OPDA to be unreliable. Levenson seeks to opine that the

---

[23] The Federal Rules of Evidence do not "allow an expert to render conclusions of law." *Porter v. Lear*, 751 F. App'x 422, 433 (5th Cir. 2018).
[24] Defendant's objection to Levenson's improper use of the term "*Brady* violation" shall be considered on a case-by-case basis at trial.

number of *Brady* violations by the OPDA "far eclipse those of comparable prosecutor's offices." In reaching this opinion, Levenson determined the number of *Brady* violations in four cities by searching the Westlaw database, news coverage, and "the National Registry of Exonerations and local Innocence Projects websites." This sort of ad hoc review fails to take into consideration the number of cases prosecuted in each city and the accuracy and completeness of the databases reviewed. Further, Levenson has not shown that such a method is commonly used or accepted in her field. Accordingly, Levenson will not be permitted to offer testimony on this comparison. Her testimony is otherwise reliable, relevant, and proper. Accordingly, Defendant's motion to exclude her testimony is granted in part as outlined above.

### D. Frank DeSalvo

Defendant seeks to introduce the expert opinion of criminal lawyer Frank DeSalvo as to what Plaintiff's trial counsel, Curklin Atkins, would have done if he had received the allegedly suppressed evidence and how it would have affected Plaintiff's trial. Plaintiff seeks to exclude DeSalvo's opinion testimony because (1) it is unhelpful in light of this Court's res judicata ruling and (2) it is not sufficiently reliable because it is based on insufficient facts and his personal experience as an attorney only.[25]

First, Plaintiff argues that because most of DeSalvo's opinions conflict with holdings of the Fourth Circuit—which this Court has held are res judicata[26]—they are unhelpful and irrelevant. While the Court agrees that

---

[25] Plaintiff also argues that DeSalvo's opinions should be excluded in light of the doctrine of judicial estoppel. These arguments were considered and rejected in the Court's Order and Reasons on Plaintiff's Motion in Limine and Partial Motion for Summary Judgment on Defendant's Fifth Affirmative Defense.

[26] Doc. 117.

some of DeSalvo's opinions contradict statements made by the Fourth Circuit, these statements are not holdings that merit application of the doctrine of res judicata. "Issue preclusion requires the issue to be precluded to have been a dispositive issue which the prior court must have considered in a contest between the same parties."[27]

First, Plaintiff complains that DeSalvo's assumption that Atkins received an incident report that included a description of the perpetrator's appearance conflicts with the Fourth Circuit's statement that Atkins did not have that information. Although the Fourth Circuit found a *Brady* violation for the suppression of the victims' descriptions found in other documents, the issue of whether the incident report was suppressed was not litigated. Accordingly, the court simply did not consider the issue.

Further, DeSalvo opines that Atkins would not have used several pieces of suppressed evidence even if they had been disclosed. While this opinion undercuts the Fourth Circuit's materiality holding, the issue of what Atkins would have done with the suppressed evidence was not litigated. More importantly, DeSalvo's opinions are relevant to the issue of whether the suppression of *Brady* evidence caused Plaintiff's conviction.[28] Accordingly, DeSalvo's opinion is both helpful and relevant.

As to reliability, Plaintiff argues that DeSalvo's opinions are insufficiently reliable because they are based only on his personal experience and an incomplete review of the critical documents in the case. First, Plaintiff

---

[27] Goodman v. Spillers, 686 So. 2d 160, 167 (La. App. 2 Cir. 1996).

[28] That said, DeSalvo's opinion is limited by the Court's prior holding precluding Defendant from arguing that Atkins's ineffective assistance was a cause of Plaintiff's conviction. *See* Order and Reasons on Plaintiff's Motion in Limine and Partial Motion for Summary Judgment on Defendant's Fifth Affirmative Defense.

complains that DeSalvo does not base his opinions on any professional standard or methodology. Rather, he states that his opinions are based solely on his work as a criminal defense lawyer. Further, he fails to explain how that experience informed his opinions in this case. As with Plaintiff's expert, Levenson, this Court finds DeSalvo's more than forty years of experience as a criminal defense lawyer sufficiently reliable, and this Court can readily see how that experience led to his opinions in this matter.

Plaintiff next complains that in reaching his opinion DeSalvo failed to review the entire case file, instead relying on defense counsel to provide him with documents to review. Plaintiff points out that DeSalvo failed to review pertinent documents—such as the "Menner Memo" and deposition transcripts of significant witnesses—prior to rendering his opinion. The Court does not find this argument compelling. DeSalvo reviewed sufficient information in the record to form a reliable opinion, and his opinion need not address every issue. Accordingly, Plaintiff's motion to exclude his testimony fails.

### E. Dr. Mary Tramontin

Finally, Defendant seeks to introduce the expert testimony of Dr. Mary Tramontin, a clinical psychologist, to opine that (1) Plaintiff does not suffer from PTSD and (2) Plaintiff's plea was voluntarily entered. Plaintiff seeks to exclude Tramontin's opinion for four distinct reasons.[29]

First, Plaintiff argues that Tramontin's testimony should be excluded due to Defendant's failure to record her entire examination of Plaintiff, in

---

[29] Plaintiff's motion asserts other reasons for exclusion, including that Tramontin should not be allowed to testify as to psychopathy, conduct disorder, anti-social personality disorder, malingering or that Plaintiff's life was improved by his time in incarceration. However, Defendant has stated that Tramontin does not intend to offer testimony on any of these issues.

violation of a court order. Defendant argues that it never offered, and was not ordered, to record the portions of Plaintiff's examination that involved written test taking. It states, however, that the entirety of Plaintiff's interview with Tramontin was recorded. It notes that Plaintiff does not argue that anything occurred during the unrecorded portions of the examination that undermines Tramontin's conclusions. This Court agrees. Plaintiff—who was obviously present for the duration of the examination—has not identified any prejudice from Tramontin's failure to record its entirety. Further, the court order that Plaintiff references simply memorialized the parties' agreement to video tape the examination.[30]

Next, Plaintiff argues that the portions of the examination that were recorded reveal that Tramontin's report is rife with inaccuracies and misrepresentations, making it unreliable. As Defendant points out, however, the inaccuracies identified by Plaintiff are more aptly described as disagreements with Tramontin's interpretations of the statements made to her by Plaintiff in his interview. These discrepancies are best addressed on cross examination.

Third, Plaintiff argues that Tramontin should not be permitted to opine on the voluntariness of Plaintiff's guilty plea because she is not qualified to offer such an opinion. Plaintiff complains that Tramontin has no expertise on the subject of guilty pleas and points out that she is not familiar with any case law concerning what constitutes a voluntary plea, has never attended a plea hearing, has not studied or researched the topic, and does not consider herself an expert on the psychology of guilty pleas. This Court agrees. Tramontin's

---

[30] Doc. 168.

expertise in the field of clinical and forensic psychology does not qualify her to opine on the voluntariness of Plaintiff's guilty plea. She is only qualified to opine that he did not suffer from a mental defect at the time he entered his guilty plea.

Finally, Plaintiff seeks to prevent Tramontin from testifying that her report is "peer reviewed." Tramontin's report states that it has been peer reviewed and is signed by three of Tramontin's colleagues with whom she discussed the report and who provided a "final scrub" of the report. Plaintiff argues that the use of the phrase "peer review" is misleading and prejudicial. This Court agrees. The phrase "peer review" impermissibly implies that other experts agree with her opinion and that her opinion has undergone a thorough, academic review that it has not. Accordingly, Tramontin will not be permitted to testify that her report has been peer reviewed. Plaintiff's motion to exclude her testimony is granted in part as outlined above.

## CONCLUSION

For the foregoing reasons, the Motions in Limine to Exclude the Expert Testimony of Dr. Allison Redlich and Frank DeSalvo are **DENIED**; and the Motions in Limine to Exclude the Testimony of Dr. Jennifer Dysart, Laurie Levenson, and Dr. Mary Tramontin are **GRANTED IN PART** as outlined herein.

New Orleans, Louisiana this 21st day of January, 2021.

_____

**JANE TRICHE MILAZZO**
UNITED STATES DISTRICT JUDGE

18