# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT JONES** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-503** |
| **LEON CANNIZZARO ET AL.** | **SECTION "H"** |

## ORDER AND REASONS

Before the Court are six Motions in Limine filed by Defendant (Docs. 250, 251, 252, 253, 254, and 255) and one Motion in Limine filed by Plaintiff (Doc. 256). The Motions are resolved as outlined below.

## BACKGROUND

Plaintiff Robert Jones brings claims against Orleans Parish District Attorney Leon A. Cannizzaro, Jr. ("OPDA") in his official capacity under 42 U.S.C. § 1983 for damages caused by Jones's wrongful conviction and 23-year incarceration on charges connected to a crime spree. Plaintiff's conviction was vacated for *Brady* violations on October 8, 2014 by the Louisiana Fourth Circuit Court of Appeal (the "Post-Conviction Case").[1] The charges against him were ultimately dismissed. In preparation for trial, the parties have filed

---

[1] *See* Jones v. Cain, 151 So. 3d 781, 802 (La. App. 4 Cir. 2014).

numerous motions seeking to exclude certain evidence. The Court will consider each of the six Motions in Limine filed by Defendant and one filed by Plaintiff in turn.

## LEGAL STANDARD

"The essential prerequisite of admissibility is relevance."[2] Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action."[3] Whether a fact is of consequence is a question governed by the substantive law applicable to the case.[4] "A district court 'may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury.'"[5]

## LAW AND ANALYSIS

### A. Motion in Limine on Post-Conviction Brady Violations (Doc. 250)

First, Defendant moves for an order preventing Plaintiff from introducing evidence that Defendant continued to withhold exculpatory evidence after Plaintiff's conviction because it is irrelevant to the claims at issue here. This Court has already held that the post-conviction withholding of evidence is irrelevant to whether Defendant committed a *Brady* violation in this case.[6] However, it declined to decide whether that information may be

---

[2] United States v. Hall, 653 F.3d 1002, 1005 (5th Cir. 1981).

[3] FED. R. EVID. 401.

[4] *Hall*, 653 F.2d at 1005.

[5] Wellogix, Inc. v. Accenture, L.L.P., 716 F.3d 867, 882 (5th Cir. 2013) (alterations in original) (quoting FED. R. EVID. 403).

[6] Doc. 187.

admissible for some other purpose. Plaintiff argues that the information is relevant to (1) OPDA's consciousness of guilt, (2) a pattern or policy of *Brady* violations, and (3) damages.

First, Plaintiff argues that Defendant's post-conviction conduct should be admissible to show that it was aware of its failure to disclose *Brady* evidence to Plaintiff. In the decades after Plaintiff's conviction, Defendant continued to deny the existence of exculpatory evidence despite having such in its possession in "plain sight."[7] Plaintiff argues that this "cover-up" should be admissible to show that Defendant believed its failure to disclose certain information to Plaintiff violated his *Brady* rights.[8] As Defendant correctly points out, however, whether it knew or did not know that it was violating Plaintiff's rights by withholding certain evidence is simply not relevant to the question of its liability. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, *irrespective of the good faith or bad faith of the prosecution.*"[9] Accordingly, evidence of Defendant's post-conviction actions are not admissible on this ground.

Second, Plaintiff seeks to introduce evidence that Defendant continued to withhold exculpatory evidence after Plaintiff's conviction in defense of Defendant's argument that Plaintiff cannot show a pattern of *Brady* violations. Defendant plans to argue that Plaintiff cannot show a pattern of violations in light of the number of cases that OPDA prosecuted each year. In response, Plaintiff seeks to argue that the number of *Brady* violations may actually be

---

[7] Doc. 290 at 10.
[8] *Id.* at 18.
[9] Brady v. Maryland, 373 U.S. 83, 87 (1963).

much higher than what Plaintiff can show given the difficulty in bringing such violations to light—as evidenced by Defendant's twenty-year delay in producing the exculpatory evidence in its possession in this case. Defendant rebuts that this argument is too attenuated and speculative to be relevant. This Court agrees. It is mere speculation to argue that because evidence was withheld from Plaintiff, it must have been withheld from others as well. Accordingly, Plaintiff will not be permitted to admit evidence of Defendant's post-conviction misconduct for this purpose.

Finally, Plaintiff argues that this information is relevant to the issue of damages. He argues that learning that the OPDA had been in possession of exculpatory evidence that it denied existed for decades was emotionally devastating and caused pain and suffering above and beyond his time in prison. Defendant rebuts that it would be inappropriate as a matter of law for the jury to consider this information in its calculation of damages because it was not caused by the specific constitutional violation alleged in this case—*Brady* violations prior to trial. Stated differently, Defendant argues that allegations of wrongdoing in the years after Plaintiff's conviction are "clearly separate and distinct from any alleged *Brady* violation he might have suffered at trial and are not encompassed by the single claim in this case."[10] Defendant argues therefore that Plaintiff cannot receive damages for the injuries caused as a result of Defendant's post-conviction conduct because he has not brought a separate claim arising out of that conduct. Defendant has also previously argued, however, that Plaintiff cannot bring *Brady* claims arising out of its post-conviction conduct because it had no duty to disclose exculpatory evidence

---

[10] Doc. 299 at 9.

after Plaintiff's conviction.[11] Accordingly, under Defendant's theory, Plaintiff has no recourse for the damages caused by Defendant's post-conviction actions.

This Court does not agree. The damages caused by Defendant's initial failure to turn over exculpatory evidence to Plaintiff prior to his trial continued until that evidence was produced. Defendant had the evidence, did not produce it prior to trial, and continued to refuse to produce it for decades thereafter. The increased emotional distress that Plaintiff sustained as a result of Defendant's repeated refusals to turn over the evidence are the continued ill effects of Defendant's initial wrongdoing.[12] Accordingly, Defendant's post-conviction actions are certainly relevant to the issue of damages. Just as it would have been relevant if Defendant had promptly turned over the exculpatory evidence, limiting Plaintiff's time in prison and emotional distress.

That said, the Court is wary of the prejudicial effect of this information and cautions that this evidence shall be admitted solely for the purpose of damages. The Court will issue a limiting instruction thereto and will not allow extensive questioning on this issue. Further, Plaintiff will not be permitted to refer to Defendant's post-conviction misconduct as a "*Brady* violation" or similar. With those caveats in mind, Defendant's motion to exclude evidence of its post-conviction withholding of evidence is **DENIED**.

---

[11] *See* Docs. 118, 187.

[12] *See* Crump v. Sabine River Auth., 737 So. 2d 720, 727–28 (La. 1999) ("[W]e find that the actual digging of the canal was the operating cause of the injury. The continued presence of the canal and the consequent continuous diversion of water from the ox-bow are simply the continuing ill effects arising from a single tortious act.").

**B. Motion in Limine to Prevent Relitigation of *Brady* Claims Rejected by Fourth Circuit (Doc. 255)**

This Court has already held that the Fourth Circuit's finding that Plaintiff's *Brady* rights were violated by Defendant's suppression of certain pieces of evidence should be given res judicata effect.[13] Defendant now moves for a holding that the Fourth Circuit's finding that Plaintiff's *Brady* rights were *not* violated by Defendant's suppression of certain other pieces of evidence should likewise be given res judicata effect. Indeed, Plaintiff does not dispute that he is equally bound by the Fourth Circuit's holdings. Rather, he argues that the *Brady* claims he intends to present in this case are distinct from the ones denied by the Fourth Circuit. This Court will consider each claim in turn.

*i.    Lester Jones's Recantation*

First, Plaintiff seeks to argue that Defendant violated his *Brady* rights when it suppressed the fact that Lester Jones had recanted his entire post-arrest statement inculpating Plaintiff prior to Plaintiff's trial. Defendant contends that the Fourth Circuit has already considered and rejected this claim.

After his arrest, Lester Jones gave a statement to police that he knew Plaintiff and had lent him his car. At a post-conviction hearing in 2007, however, Lester Jones recanted this statement and testified that he did not know Plaintiff, that he had not lent him his car, and that when asked to testify at Plaintiff's trial, he refused and admitted that his earlier statement had been false. This pre-trial recantation was memorialized in a memorandum written by prosecutor Fred Menner (the "Menner Memo"), but this information was not

---

[13] Doc. 117.

provided to Plaintiff prior to his trial. Plaintiff did not receive the Menner Memo until 2015, after the Fourth Circuit had issued its opinion. The Fourth Circuit, therefore, never considered the Menner Memo. In its 2009 opinion on Plaintiff's first application for post-conviction relief, it held that Lester Jones's 2007 testimony was not newly discovered evidence because Plaintiff was personally aware prior to trial that the two men did not know each other.[14] In 2014, the Fourth Circuit again considered Lester's 2007 testimony and the testimony of a detective who admitted that his investigation revealed that the men did not know each other.[15] The Fourth Circuit concluded that there had been no *Brady* violation because "the testimony of Detective Cade and Lester on this point was given years after trial."[16] It also specifically noted that there was no evidence that the State was aware that Lester had been beaten to illicit the false statements.

Accordingly, it is clear that the Fourth Circuit never considered the fact that Defendant withheld from Plaintiff Lester Jones's pre-trial recantation to prosecutors. Indeed, it appears that Defendant consistently denied the veracity of Lester Jones's testimony that he had recanted his statement to prosecutors. It did not become clear until the discovery of the Menner Memo that Defendant knew that Lester Jones's earlier statements were false *prior* to Plaintiff's trial. Accordingly, res judicata does not bar Plaintiff from asserting a *Brady* claim arising out of the suppression of this information here.

---

[14] Doc. 290-10 at 12.
[15] *Jones*, 151 So. 3d at, 801.
[16] *Id.*

*ii.    T.P.'s Pre-Trial Statement*

Next, Plaintiff seeks to assert a claim that Defendant violated his *Brady* rights by withholding a pre-trial statement by one of the victims, T.P., that could have been used for impeachment purposes. Defendant again contends that the Fourth Circuit has already considered and rejected this claim.

Shortly after the crimes at issue, T.P. stated that she entered her kidnapper's car through the passenger-side door. At trial, however, T.P. testified that she entered the car through the driver's door and climbed across the front seat. The State contended that the passenger door of the car was damaged and inoperable. In his post-conviction application, Plaintiff argued that this information was significant to show that T.P.'s memory of the events, including her identification of the perpetrator, had changed to conform to the State's theory. The Fourth Circuit, however, affirmed the district court's finding that this information was not material, holding that the fact that T.P. changed her testimony regarding which door she used did not clearly show that she had also changed her testimony regarding the identity of the perpetrator to conform to the State's case.[17]

Plaintiff argues that the Fourth Circuit's holding did not address the broader issue of whether this information could have been used to impeach T.P.'s trial testimony in which she identified Plaintiff as her assailant. He seeks to assert that claim now. Plaintiff argues that "[t]his claim is separate and distinct from the *Brady* claim rejected by the Fourth Circuit, which . . . concerned only whether T.P.'s testimony conformed to the evidence that the

---

[17] *Id.* at 797–98.

passenger side door of the perpetrator's car was damaged."[18] Setting aside this Court's difficulty in seeing the fine distinction espoused by Plaintiff, the fact remains that the Fourth Circuit held that T.P.'s prior statement regarding which door she used during her kidnapping was not material.[19] This Court has held that the Fourth Circuit's holdings have res judicata effect.[20] Accordingly, Plaintiff cannot argue that Defendant violated *Brady* by withholding T.P.'s prior statement when the Fourth Circuit has held that statement to be immaterial. Accordingly, Defendant's motion is **GRANTED IN PART**, and Plaintiff will not be permitted to relitigate whether the suppression of T.P.'s statement regarding which door she used to enter her kidnapper's car violated *Brady*.

C. **Motion in Limine to Exclude Court Rulings in Alleged *Brady* Cases (Doc. 251)**

In resolution of a prior motion in limine, this Court held that the 31 state and federal court rulings identified by Plaintiff, which found *Brady* violations by Defendant, could be introduced into evidence as exceptions to hearsay under Federal Rule of Evidence 807.[21] The Court, however, declined to make any finding as to their ultimate admissibility at trial—reserving for another day arguments regarding relevance, authenticity, and prejudice.[22] Defendant now moves for an order excluding these rulings on the ground that their admission creates a serious danger of unfair prejudice.

---

[18] Doc. 290 at 19.
[19] *Jones*, 151 So. 3d at 797–98.
[20] Doc. 117.
[21] *Id.*
[22] *Id.*

Federal Rule of Evidence 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Fifth Circuit has held that Rule 403 should be used sparingly because it "is an extraordinary measure [that] permits a trial court to exclude concededly probative evidence."[23]

Defendant argues that the admission of judicial findings and conclusions poses a danger that the jury might give those rulings unfair weight. In so arguing, Defendant cites to cases that this Court finds easily distinguishable. The courts in the cases relied on by Defendant addressed the admissibility of judicial opinions that involved identical conduct between the same parties or decided precise issues before the jury.[24] Here, the judicial opinions at issue are merely evidence supporting Plaintiff's argument that Defendant had a pattern or policy of *Brady* violations. They do not involve the facts of this case, and they do not answer any question before the jury. Accordingly, there is not the same danger of undue reliance here as in the cases cited by Defendant.

In addition, Defendant's Motion does not address the substantial probative value of the evidence at issue. This Court has already found that

---

[23] Shepherd v. Dall. Cnty., 591 F.3d 445, 456–57 (5th Cir. 2009).

[24] Carter v. Burch, 34 F.3d 257, 265 (4th Cir. 1994) (holding that probative value of judicial opinion finding *Brady* violation would be substantially outweighed by the danger of unfair prejudice because the judge's opinion decided the precise issue before the jury); United States v. Benjamin Brandon Grey, 891 F.3d 1054, 1059 (D.C. Cir. 2018) (holding that civil judgment was prejudicial where it involved virtually identical conduct as that involved in criminal case before jury); U.S. Steel, LLC, v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001) (holding that judicial opinion was prejudicial where "the jury, not Judge Garrett, was charged with making factual findings on Appellees' allegations in this case").

these rulings are far more probative of Defendant's *Brady* violations in other cases than "requiring Plaintiff to put on dozens of mini-trials to show each of those violations, especially in light of the time that has passed since many of these violations."[25] Accordingly, Defendant has not shown that the probative value of the judicial opinions identified by Plaintiff is outweighed by unfair prejudice. Its motion is **DENIED**.

**D.** **Motion in Limine Concerning Evidence of Alleged Policies or Deliberate Indifference after Plaintiff's Convictions (Doc. 253)**

To succeed on his § 1983 claim, Plaintiff must show that: (1) an official policy or custom existed; (2) a policymaker knew or should have known about the policy or custom; (3) the policymaker was deliberately indifferent; and (4) the policy or custom was the moving force leading to the constitutional violation.[26] Defendant requests a ruling barring Plaintiff from introducing evidence of Defendant's policies or deliberate indifference if that evidence occurred after April 1996—the date of Plaintiff's sentencing. Plaintiff agrees to forego the introduction of evidence postdating the end of former Harry Connick, Sr.'s tenure as OPDA in January 2003 but argues that he should be permitted to introduce evidence occurring from 1996 to 2003 as proof of OPDA's *Brady* policy, practice, or custom and deliberate indifference.

*i.    Evidence of Policy, Practice, or Custom*

Defendant argues that because the violation of Plaintiff's *Brady* rights necessarily occurred before his trial, the only relevant policies are those that

---

[25] Doc. 117; *compare* Johnson v. Colt Indus. Operating Corp., 797 F.2d 1530, 1534 (10th Cir. 1986) (holding that admission of opinion showing similar accident was error when evidence of the similar accident could have been produced in another form).

[26] Pattern Civ. Jury Instr. 5th Cir. 10.5 (2020).

were in place during that same time period. Defendant is correct that to prove a pattern of unconstitutional conduct, a plaintiff must show "similarity, specificity, and sufficiently numerous *prior* incidents."[27] However, the cases cited by Defendant do not, as it suggests, stand for the proposition that subsequent incidents are never admissible or relevant as proof of a policy, pattern, or custom.[28] As Plaintiff correctly points out, "[t]he fact that similar *Brady* violations continued unabated in the years after the *Brady* violation in Mr. Jones's case, under the *same* policymaker, enforcing the *same Brady* policy, constitutes powerful circumstantial evidence of the unconstitutional policy, practice, or custom in place at OPDA during Mr. Jones's prosecution."[29] Indeed, other courts have reached the same conclusion.[30] Further, this Court does not find compelling Defendant's suggestion that the probative value of this evidence is outweighed by its prejudicial effect or propensity to confuse the

---

[27] Davidson v. City of Stafford, Tex., 848 F.3d 384, 396 (5th Cir. 2017), as revised (Mar. 31, 2017); *see* Connick v. Thompson, 563 U.S. 51, 63, 131 S. Ct. 1350, 1360 (2011) ("[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the cit[y] and the opportunity to conform to constitutional dictates.'").

[28] *See Davidson*, 848 F.3d at 396 (holding that three cases over three-and-a-half years was insufficient to form a pattern); Truvia v. Connick, 577 F. App'x 317, 322 (5th Cir. 2014) (holding that evidence of discovery requests made in other cases was insufficient to show a policy where plaintiffs had not "pointed to case law preceding their convictions that held the DA's office responsible for committing *Brady* violations or that upheld other criminal defendants' claims of *Brady* violations").

[29] Doc. 289 at 9.

[30] Chepilko v. City of New York, No. 06-CV-5491, 2012 WL 398700, at *15 (E.D.N.Y. Feb. 6, 2012) ("Subsequent or contemporaneous conduct can be circumstantial evidence of the existence of preceding municipal policy or custom."); *see also* Grandstaff v. City of Borger, Tex., 767 F.2d 161, 171 (5th Cir. 1985) ("The policymaker's disposition, his policy on the use of deadly force, after August 11 was evidence of his disposition prior to August 11. . . . [T]he subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy."); Bordanaro v. McLeod, 871 F.2d 1151, 1167 (1st Cir. 1989) ("Post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right.").

jury. Defendant's motion is therefore denied as to post-conviction evidence of policy, pattern, or custom, including the 17 cases specifically identified in its motion.[31]

  *ii. Evidence of Deliberate Indifference*

  To show deliberate indifference, Plaintiff must show that Defendant was "aware of facts from which the inference could be drawn that a substantial risk of . . . a violation of constitutional rights exist[ed]," and it must have drawn the inference.[32] Defendant argues that events occurring after Plaintiff's 1996 conviction could not have put it on notice for the need to improve its *Brady* policies before Plaintiff's conviction and are therefore irrelevant in proving deliberate indifference. Plaintiff argues that post-conviction events are evidence of Defendant's "longstanding indifference to its recurrent practice of violating *Brady*."[33]

  Plaintiff offers several illustrations of evidence he intends to introduce to show the longstanding conscious indifference of Defendant to *Brady* rights. Each of these illustrations are acts or statements of the OPDA Harry Connick, Sr. in which he expressed disdain for *Brady* rules, failed to discipline subordinates for *Brady* violations, and failed to revise Defendant's *Brady* policy. This evidence of the policymaker's state of mind after Plaintiff's conviction makes it more probable that Defendant was deliberately indifferent to the violation of *Brady* rights prior to Plaintiff's conviction. The Court has no trouble seeing the relevance of this evidence.

---

[31] Doc. 253 at 8.

[32] Pattern Civ. Jury Instr. 5th Cir. 10.5 (2020).

[33] Doc. 289 at 11.

Plaintiff does not, however, explain the relevance of the "40 cases involving OPDA *Brady* violations or suppression that were resolved after 1996" that it seeks to introduce as evidence of deliberate indifference. This Court fails to see how this evidence shows that Defendant was on notice of the risk of constitutional violations prior to Plaintiff's conviction.[34] Indeed, the fact that Defendant violated the *Brady* rights of others *after* Plaintiff's conviction does not make it more probable that it was aware of the risk of constitutional violations prior to Plaintiff's conviction. Subsequent conduct cannot provide notice and the "opportunity to conform to constitutional dictates."[35] Accordingly, Defendant's Motion is **GRANTED IN PART**, and the 40 cases identified by Defendant in its Motion may not be admitted as evidence of deliberate indifference.[36]

### E. Motion in Limine Concerning Dissimilar Alleged Brady Violations (Doc. 254)

Next, Defendant seeks a ruling barring Plaintiff from introducing alleged *Brady* violations in other cases that are not sufficiently similar to the violations at issue here. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference."[37] Further, a pattern of similar constitutional violations may be admissible to show that there existed "a persistent, widespread practice of city officials or employees that is so common and well settled as to constitute a

---

[34] *Id.* at 10.

[35] *Connick*, 563 U.S. at 63.

[36] *See* Doc. 253 at 6, n.7. This holding does not alter the admissibility of some of these cases for the purposes discussed above.

[37] *Connick*, 563 U.S. at 62.

custom that fairly represents municipal policy."[38] Defendant has identified ten cases that it deems insufficiently similar to be admissible as evidence of a pattern of similar constitutional violations.[39]

The Fifth Circuit has said that a prior incident must be "fairly similar" to the specific violation in question to be admissible to prove a pattern of constitutional violations.[40] "Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question. . . . While the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired."[41] This Court rejects Defendant's suggestion that the Fifth Circuit has recently promulgated a new more demanding "very similar" test. In *Jason v. Tanner*,[42] the Fifth Circuit described the Supreme Court's opinion in *Connick v. Thompson*[43] as requiring that violations be "very similar" to justify a pattern. The Supreme Court in *Connick*, however, never espoused such a test, and the court in *Jason* did not indicate that it was adopting a new test. Indeed, the Court in *Connick* indicated that the failure to disclose "physical or scientific evidence *of any kind*" would be sufficiently similar to constitute a pattern with respect to the

---

[38] Hicks-Fields v. Harris Cty., Tex., 860 F.3d 803, 810 (5th Cir. 2017).

[39] Defendant initially identified 13 cases that it deemed dissimilar. Plaintiff, however, agreed not to seek to admit cases that took place after the end of Harry Connick, Sr.'s tenure as OPDA as evidence of a pattern, policy, or custom. Therefore, the cases involving Henry Bruer, Jeremey Burse, and Jamaal Tucker are no longer at issue. Plaintiff also agrees that he will not offer evidence of the suppression of forensic evidence in John Thompson's case as proof of a pattern or policy.

[40] Estate of Davis ex rel. McCully v. City of N. Richland Hills, 406 F.3d 375, 383 (5th Cir. 2005).

[41] *Id.*

[42] 938 F.3d 191, 198 (5th Cir. 2019).

[43] 563 U.S. 51, 62 (2011).

15

plaintiff's claim that the OPDA had failed to turn over a blood test crime lab report.[44]

With this standard in mind, the Court examines the cases that Defendant argues lack similarity. First, Defendant alleges that the cases of James Carney, Trenedad East, Tyronne Smith, and Troy Wilkerson are dissimilar because the sole piece of suppressed evidence in each case was a cooperation agreement that could have been used to impeach the testimony of a witness. In the cases of Dwight Labran and Wilbert Parker, the suppression concerned the criminal history of a victim or witness. In the cases of Dan Bright and Clarence Smith, the suppression concerned the criminal history of a witness, as well as evidence showing a witness's motive to cooperate. Defendant argues that because Plaintiff has not alleged the suppression of a cooperation agreement or criminal history, these cases are insufficiently similar. Plaintiff argues that its allegation that the OPDA suppressed inconsistent witness statements is sufficiently similar because in each case the OPDA suppressed impeachment evidence bearing on witness credibility. This Court agrees with Plaintiff and finds that under the standard set forth in *Connick* impeachment evidence—be it cooperation agreements, criminal histories, or inconsistent witness statements—is fairly similar to establish a pattern of constitutional violations.[45]

Next, Defendant seeks to exclude as evidence of a pattern the case of Norman Clark in which the OPDA suppressed the fact that the state had made unavailable a witness with exculpatory information regarding the defendant—

---

[44] *Id.* (emphasis added).
[45] *See Connick*, 563 U.S. at 62.

specifically, that the defendant had not been in the room during a drug sale. This Court finds that this is fairly similar to Plaintiff's allegation that Defendant suppressed Lester Jones's statement that he did not know Plaintiff. In each case, the OPDA suppressed a witness statement that contradicted its theory of the case. Accordingly, Norman Clark's case is sufficiently similar to Plaintiff's allegations here to serve as evidence of a pattern.

Finally, Defendant alleges that the case of Ronald Monroe concerns allegations of post-conviction suppression of a confession and is therefore insufficiently similar. This Court agrees. In Monroe's case, the OPDA suppressed the fact that, a few months after Monroe's trial, another man had confessed to Michigan police to the crime for which Monroe was convicted. Plaintiff likens this to Defendant's suppression of evidence implicating Lester Jones. This Court does not find a confession sufficiently similar to other exculpatory evidence that might point to a different suspect. Accordingly, Defendant's Motion is **GRANTED IN PART**, and evidence of the suppression of evidence in the case of Ronald Monroe is excluded as insufficiently similar to constitute a pattern of constitutional violations.

**F.** **Motion in Limine Concerning Alleged *Brady* Violations or Misconduct in Connection with Guilty Pleas (Doc. 252)**

Finally, Defendant moves to exclude evidence of its "misconduct or wrongdoing" in connection with the charges to which Plaintiff pleaded guilty, arguing that such evidence is irrelevant and prejudicial. After he was convicted at his 1996 trial for robbery, kidnapping, and rape, Plaintiff pleaded guilty to a murder and three armed robberies. Plaintiff was sentenced to 21 years for the murder and 25 years for the armed robberies. Plaintiff contends that he

17

chose to plead guilty in part because the prosecutor, Fred Menner, falsely informed him that he could be convicted of murder at trial and face a second life sentence. Plaintiff contends that this statement was false because Menner also contemporaneously acknowledged in the Menner Memo that Defendant did not have sufficient evidence to sustain a conviction against Plaintiff for the murder. Defendant moves to exclude evidence of Menner's alleged false representations from trial.

It is undisputed that Defendant intends to argue that Plaintiff's imprisonment was caused by the guilty pleas—not the pre-trial *Brady* violations. Plaintiff contends that evidence of Menner's wrongdoing is relevant in defense of this argument. Specifically, he argues that he intends to show that Menner's statement "contributed to causing his plea."[46] But, as Defendant points out, what caused his guilty plea is not at issue in this case. Rather, the only causation question at issue is whether Plaintiff's imprisonment was proximately caused by the Defendant's *Brady* violations. Plaintiff expressly states that he intends to argue that Defendant's suppression of evidence caused his wrongful trial conviction, which caused his decision to plead guilty to the other crimes and ultimately his imprisonment. Menner's statements to Plaintiff prior to his guilty plea are not relevant to this chain of causation. Indeed, they do not tend to make any fact in issue more or less probable. Accordingly, Defendant's Motion is **GRANTED**, and evidence of its misconduct prior to Plaintiff's guilty pleas is excluded.

---

[46] Doc. 288 at 10.

## G. **Plaintiff's Motion in Limine to Exclude Evidence of Bad Acts (Doc. 256)**

Plaintiff now moves for an order excluding evidence of his prior bad acts from trial. These include (1) evidence of his involvement in the sale of drugs prior to his arrest; (2) evidence that he was arrested for other armed robberies; (3) evidence that he was arrested for possession of a sawed-off shotgun; and (4) evidence that he failed to pay taxes on the proceeds of his illegal drug sales. This Court will consider each piece of evidence in turn.

### i.    *Evidence of Drug Sales*

From an early age, Plaintiff began selling drugs in the Desire Housing Project where he lived.[47] Between the ages of 16 and 18, he was arrested five times for possession and distribution of drugs. He was also arrested for possession of a concealed weapon, stolen vehicle, and contributing to the delinquency of a minor. He was, however, never charged with these crimes. After his release from prison on the charges at issue here, he published a book describing his time as a drug dealer and the "lavish lifestyle" he enjoyed during that time.

Defendant argues this information is relevant to the claims at issue here for five reasons: (1) it demonstrates that Plaintiff, like Lester Jones, was connected to the Desire Housing Project; (2) Lester Jones's admitted connection to Plaintiff involved drugs; (3) some of Plaintiff's contradictory alibies for the rape involved the sale of drugs; (4) Plaintiff's habit of borrowing cars in connection with his drug sales is relevant to his allegation that Lester

---

[47] By the time the crimes at issue occurred, Plaintiff had moved out of the Desire Housing Project.

Jones's car was used in the rape; (5) damages; and (6) his character for truthfulness. This Court will consider each in turn.

A key *Brady* claim in this case is the suppression of the victim's statement that prior to the rape, her attacker stated that he was bringing her to his "neck of the woods." Plaintiff has argued that this statement implicates Lester Jones who lived just one block away from where the rape occurred, while Plaintiff lived more than two miles away. Defendant contends that information that Plaintiff spent substantial amounts of time selling drugs in the Desire Housing Project prior to the rape is therefore relevant to rebut this implication and to explain why it may have been "strategically unwise" to introduce the "neck of the woods" comment at trial. Indeed, introduction of this defense might have opened the door for prosecutors to present evidence of Plaintiff's connections to the Desire area—including evidence of drug dealing and arrests. Plaintiff contends that evidence of his connection to the Desire Housing Project can be introduced at this trial without reference to his drug dealing activities and notes that he does not contest his connection to the area. This Court agrees with Plaintiff and grants his motion to exclude evidence of his involvement in drug dealing on this basis.

Another key issue in this case is the fact that Plaintiff and Lester Jones did not know each other. Defendant presents evidence that Lester Jones admitted that he met Robert Jones once when a mutual friend brought Plaintiff to Lester to buy drugs from him. Plaintiff argues that this brief sighting is irrelevant to the issues here, and Defendant can easily introduce evidence of it without mentioning drugs. Again, this Court agrees with

Plaintiff. Mention of Plaintiff's drug dealing in this context is more prejudicial than probative.

Next, Defendant contends that it is necessary to mention Plaintiff's drug sales in the contradictory stories regarding what he was doing at the time of the rape. Plaintiff has long contended that he was at his son's birthday party at the time of the rape. Defendant points to contradictions regarding where Plaintiff slept on the night before the rape, suggesting that Plaintiff was selling drugs in the Desire Housing Project the night before. This information does not, however, contradict his alibi at the time of the rape and is therefore not relevant to the issues in this case.

Defendant also intends to present evidence that Plaintiff often sold drugs in exchange for use of the buyer's car. It argues that this information is relevant to rebut Plaintiff's contention that the fact that the car involved in the rape and kidnapping belonged to Lester Jones points to Lester as the perpetrator. Plaintiff argues that because there is no evidence that Plaintiff ever borrowed a car from Lester Jones, the fact that he sometimes borrowed other cars in exchange for drugs is not relevant. This Court agrees, and this evidence is excluded.

Defendant next contends that Plaintiff's involvement in drug dealing is relevant to the issue of damages. Plaintiff intends to argue that he suffers from Post-Traumatic Stress Disorder from his time in incarceration and the regular threats of violence he endured during that time. Defendant rebuts that Plaintiff would already have been acquainted with regular acts of violence from his time in the drug trade. Indeed, in Plaintiff's book he writes that people he knew were "dying everyday around" him. Defendant has not, however,

submitted any evidence that Plaintiff has Post-Traumatic Stress Disorder from his time dealing drugs. Accordingly, this is mere speculation, and evidence of Plaintiff's drug dealing will not be admitted for this purpose.

Finally, Defendant contends that evidence of his arrests speak to his character for truthfulness because he testified at his 1996 trial that he had "never been in trouble before." Plaintiff contends that his comment referred to the fact that he had never been convicted of a crime before and therefore was not untruthful. This Court agrees and finds that this evidence would be more prejudicial than probative.

### ii.  *Additional Robbery Arrests*

Defendant also seeks to admit evidence that Plaintiff was arrested, but not prosecuted, for five additional armed robberies around the time that he was arrested for the crimes at issue here.[48] Defendant argues that these arrests are relevant to Plaintiff's allegations regarding the suppression of evidence of Lester Jones's crime spree. The Fourth Circuit found Defendant suppressed evidence that Lester Jones committed a series of crimes around the same time and in the same area as the offenses for which Plaintiff was charged and that officers believed that one person was responsible for all of the "crime spree crimes." Defendant argues that Plaintiff's arrests should be admissible to show that there were more crimes being investigated than just the "crime spree crimes" and that the implication otherwise is misleading. Plaintiff counters that the robberies for which Plaintiff was arrested occurred months prior to the "crime spree crime" or in a different area and are therefore

---

[48] Plaintiff contends that he was identified as a suspect in these additional robberies only after he received significant media attention surrounding his arrest in this case.

irrelevant. This Court agrees. The robberies for which Plaintiff was arrested do not seem to have any connection to the "crime spree crimes," and his arrests for them do not make any fact in issue more or less probable. Even assuming these facts have some minor relevance, their prejudice far outweighs their probative value. Evidence of Plaintiff's prior armed robbery arrests is therefore excluded.

### iii.    Possession of Sawed-off Shotgun

Defendant also seeks to admit the fact that when Plaintiff was arrested for the charges at issue, he was found to be in possession of a sawed-off shotgun. Defendant argues that this information is important to "provide essential context for the police investigation" and to contradict the implication that detectives concluded at the time of their investigation in 1992 that Plaintiff was innocent.[49] This logic does not follow, however, where a sawed-off shotgun was not used in any of the crimes for which he was charged. Even assuming this fact has some minor relevance, its prejudice far outweighs its probative value. Accordingly, evidence that Plaintiff was in possession of a sawed-off shotgun at the time of his arrest is excluded from trial.

### iv.    Failure to Pay Taxes

Finally, Defendant contends that it should be allowed to introduce as evidence of Plaintiff's character for truthfulness the fact that, as a teenager, Plaintiff failed to report his drug sale income for tax purposes. Defendant is correct that the Fifth Circuit has held that the failure to report income for taxes purposes is relevant to the issue of truthfulness.[50] Here, however, the probative

---

[49] Doc. 287.
[50] United States v. Bustamante, 45 F.3d 933, 946 (5th Cir. 1995).

value of this information is far outweighed by its prejudicial effect. The fact that Plaintiff, now 47, did not report illegal source income when he was a teenager says little about his character for truthfulness close to 30 years later. It does, however, present prejudicial information about Plaintiff's prior bad acts. This Court agrees with Plaintiff that this is merely an attempt to admit evidence of Plaintiff's involvement in the drug trade through the backdoor. Accordingly, this evidence is excluded, and Plaintiff's Motion in Limine is granted.

## CONCLUSION

For the foregoing reasons, Defendant's Motion in Limine on Post-Conviction Brady Violations (Doc. 250) is **DENIED**; Motion in Limine to Prevent Relitigation of Brady Claims Rejected by Fourth Circuit (Doc. 255) is **GRANTED IN PART**; Motion in Limine to Exclude Court Rulings in Alleged Brady Cases (Doc. 251) is **DENIED**; Motion in Limine Concerning Evidence of Alleged Policies or Deliberate Indifference after Plaintiff's Convictions (Doc. 253) is **GRANTED IN PART**; Motion in Limine Concerning Dissimilar Alleged Brady Violations (Doc. 254) is **GRANTED IN PART**; and Motion in Limine Concerning Alleged Brady Violations or Misconduct in Connection with Guilty Pleas (Doc. 252) is **GRANTED**. Plaintiff's Motion in Limine to Exclude Evidence of Bad Acts (Doc. 256) is **GRANTED.**

New Orleans, Louisiana this 21st day of January, 2021.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**